UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
TONY HARRISON,

                PLAINTIFF,

            V.

NYC DEPT. OF CORRECTIONS,
JUDGE ANNE FELDMAN,
JUDGE JO ANN FERDINAND,
STATE OF NEW YORK,
C.O. HODGE,
C.O. NELSON,
C.O. STEWARD,
NYC POLICE DEPT.
DETECTIVE SANCHEZ,
DETECTIVE KENNEDY,
DETECTIVE MULHALL,
BROOKLYN D.A. CHARLES HYNES,
BROOKLYN A.D.A. NANCI SLATER,
LEGAL AID SOCIETY ROBERT C. NEWMAN,
18-B ATTORNEY GREGORY C. CLARKE,
COMPLAINANT SONIA RODRIQUEZ,
COMPLAINANT--SHIRLEY CAREL
COMPLAINANT--SONY ALLIN,

               DEFENDANTS.
----------------------------------------X

**NOTICE OF MOTION: TO VACATE THE JUDGEMENT, PURSUANT TO: FED.R.CIV.P. 60 (B),(6)...**

FILED SP 2/15/24
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ FEB 14 2024 ★
BROOKLYN OFFICE

DOCKET NO.# 96-CV-1445 (S.J.)

YOUR EXCELLENCY: THE HONORABLE STERLING JOHNSON:

    PLEASE TAKE NOTICE: That upon annexed affidavit of Plaintiff, Tony Harrison, hereby sworn under the penalty of perjury, along with the supporting exhibits as proof of evidence, and attached is a brief memorandum of law in support of motion; including herein, and made a part hereto proceedings heretofore.

    This motion to vacate the judgement, is pursuant to: FED.R.CIV.P. 60 (B),(6); which is to RE-OPEN a prior judgement by a Eastern District Federal Senior Judge name Mr. Sterling Johnson; the decision was rendered on April 21, 1997, in which it dismissed Plaintiff's 42 U.S.C.§ 1983 Complaint against two-Judges as above Defendants.

(1).

CONT...<u>NOTICE OF MOTION</u>....

This motion will prove that the trial judge, the trial attorney, and the trial prosecutor committed an abuse of discretion when they declined to recuse and disqualify themselves from defendant here once they had been served prior by the U.S. Marshall with defendant's civil action complaint pursuant to: Title 42 of the United States Code Section 1983; filed against them...

This motion will be made to the County Of Kings, The United States District Courthouse, located at: 225 Cadman Plaza East, Brooklyn, N.Y. 11201, On the *1ST* day of *MARch* 2024, at 10:00 a.m. or as soon as thereafter as the Plaintiff can be heard for an "<u>ORDER</u>", pursuant to: FED.R.CIV.P. 60 (B),(6), and also for an "<u>ORDER</u>", GRANTING a hearing uder "<u>EXTRA ORDINARY CIRCUMSTANCES</u>".

DATED: *1 / 4 / 24*

RESPECTFULLY SUBMITTED,

PLAINTIFF, TONY HARRISON   x

TO: DISTRICT ATTORNEY OFFICE
    RENAISSANCE PLAZA
    350 JAY STREET
    BROOKLYN, N.Y. 11201

(2).

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------X
TONY HARRISON,

                      PLAINTIFF,                    AFFIDAVIT IN SUPPORT: <u>TO VACATE</u>
                                                <u>THE JUDGEMENT, PURSUANT TO:</u>
                                                  <u>FED. R. CIV. P. 60 (B),(6)</u>.....

                      V.
NYC DEPT OF CORRECTIONS,
JUDGE ANNE FELDMAN,
JUDGE JO ANN FERDINAND,
STATE OF NEW YORK,
CITY OF NEW YORK,
C.O. HODGE,
C.O. NELSON,
C.O. STEWARD,                              DOCKET NO.#<u>96-CV-1445(SJ)</u>..
NYC POLICE DEPT.,
DETECTIVE SANCHEZ,
DETECTIVE KENNEDY,
DETECTIVE MULLHALL,
BROOKLYN D.A. CHARLES HYNES,
BROOKLYN A.D.A. NANCI SLATER,
LEGAL AID ATTORNEY ROBERT C. NEWMAN,
18-B ATTORNEY GREGORY C. CLARKE,
COMPLAINANT SONIA RODRIQUEZ,
COMPLAINANT SHIRLEY CAREL,
COMPLAINANT SONYA ALLIN,
                        DEFENDANTS.
------------------------------------------X
STATE OF NEW YORK))))
                 SS:
COUNTY OF DUTCHESS)))

    I, Plaintiff, Tony Harrison, being duly sworn, deposes and say under the penalty of perjury, that all of the statements and facts provided herein are true, correct and complete:

1. I am the Plaintiff in the above entitled captioned proceedings and action herein.

2. That I am also familiar with all of the facts and circumstances described within this intrument here.

3. Which is based upon personal information and experience of the same facts described in detail here.

                            (3).

CONT. AFFIDAVIT IN SUPPORT OF MOTION

ACTUAL & FACTUAL FACTS OF INNOCENCE

4. In September of 1995, Plaintiff Tony Harrison, was the unfortunate participant engulfed in extra ordinary circumstances; which has led to his exile from society, for the pass 28 years.

Plaintiff was arrested on September 16, 1995 at 5:10 am; while he was on his way to Prospect Park, (located a few blocks from his apartment), for his daily workout; at which time he was approached by a bunch of detectives from Special Victims squad, in a belligerent and antagonizing manner, saying he was following a woman. But there were no such woman in front of him or behind him as detectives alleged.

5. Detectives detained him against his will and dragged him down Union street, (between Prospect Park west and plaza street), in front of a woman and another detective. He asked this woman did he do anything to her and she replied, "NO"!, and shook her head no"! Detectives told me to shut up and shoved him against a car. While he was held against this car a detective seem to be speaking to this woman in another language.

6. He became frustrated and asked these detectives what was going on, and their response was for him to shut up. At this time these detectives turned him around and proceeded to handcuff me with several other law an enforcement officers; who came for nowhere and grabbed his neck and arms, and he was then thrown in back of a police truck, and taken to the 71st precinct.

(4).

CONT. <u>AFFIDAVIT IN SUPPORT OF MOTION</u>

CONT. <u>ACTUAL & FACTUAL FACTS OF INNOCENCE</u>

7. Upon his arrival at the precinct, he was placed in a holding cell all morning, not knowing what he was in there for. While he was in the holding cell he began to get sick; because he had not taken his medication for seizures, (medication which he normally takes every morning after he works-out)...At this point he blanked out.

8. When he awoke, he was traumatized, dizzy, and spitting saliva all over myself. E.M.S. workers and several detectives were standing over him asking him a lot of questions. The E.M.S. personnel demanded to take him to the hospital; due to my seizures attacks. The detectives said to them, "that if he is taken to the hospital, the process would take all day, and they are going to conduct several line-ups first".

9. Detectives dragged him into an interrogation room, and there were several other people in the room with numbers on their chest. He was not physical able to put up a struggle with the detectives; so he complied with their orders. After the line-ups, the media-playing detectives re-emerged later saying, "that they have a suspect for the series of rapes in the ParkSlope and BoerumHill community.

10. The detectives dragged him out of the 71st precinct in front of the media cameras and labeled me as the Parkslope and BoerumHill rapist. Instead of the Brooklyn' District Attorney's office investigating the corruption by the police department sex crimes unit of the 77th, 78th, 71st & 84th precinct in Brooklyn New York.

(5).

CONT. <u>AFFIDAVIT IN SUPPORT OF MOTION</u>

CONT. <u>ACTUAL & FACTUAL FACTS OF INNOCENCE</u>

11. Plaintiff was indicted illegally when the District Attorney's office; did not allow the Grand Jurors to know that I was placed in seven line-ups; and was picked out only one time by one complainant; who had also picked out someone else very different from Plaintiff in physical characteristics, (almost two months prior to Defendant's arrest).

12. Plaintiff was arraigned in front of a judge, who ironically lived in the same community these crimes took place. This Judge was so bias in this situation, the judge violated any rights that the defendant's had as the accused. Instead of the judge investigating the evidence, and probing below the surface of shallow evidence of the District Attorney's office; the judge had let the District Attorney's office taint and/or go on a fishing expedition in charging defendant with another uncharged crime.

13. This judge also allowed the District Attorney's office to get a court order from another judge; months into the original indictment. This Court order was for blood samples for uncharged crimes; without any probable cause. The District Attorney's office claimed they had forensic evidence from another crime scene, and plainly ignores the facts of my innocence; for the alleged crime that i was indicted for, against Shirley Carel. The District attorney's office just wanted my blood for a fishing expedition in-order to cover up their lack of evidence, and also so they can mis-lead and taint the evidence with my genetic make up. This was to establish a alleged M.O....

(6).

CONT...AFFIDAVIT IN SUPPORT OF MOTION

CONT...ACTUAL & FACTUAL FACTS OF INNOCENCE

14. In 1996 is the year , that Defendant sought an action against Judge Anne G. Feldman for her participation in the events surrounding Plaintiff arrest and subsequent criminal proceedings; especially, in her involvement in her injustices in obtaining defendant's blood for uncharged crimes, SEE: <u>ATTACHED AS EXHIBIT (A),</u> <u>A CIVIL ACTION LAW SUIT, PURSUANT TO : 42 U.S.C. 1983, HARRISON V. NYC DEPT OF</u> <u>CORRECTION, JUDGE ANNE FELDMAN, EL. ET., 1997 WL 218211</u>....

15. Now pointing out the ineffective assistance of trial counsel in preparation before trial, trial counsel failed to interview complainant witness Shirley Carel, who vaguely picked defendant out of line up, and trial counsel failed to interview all the women who did not pick defendant out of line ups. Trial counsel also failed to interview police officers who handled the investigation of Shirley Carel picking out another man as her attacker, two months prior to picking defendant out of line up.

16. At trial, trial counsel learned during his cross examination  that a roommate was a so-call credible eye witness to the outcry and condition of Shirley Carel, a after alleged incident...Also trial counsel learned during cross examination, that complainant witness Shirley Carel went on a trip to the Poconos, 4½ hours later after alleged incident, (for the whole weekend), without going to hospital or clinic, and not actually reporting this alleged incident to police, for a month, and four(4) days, SEE: ( <u>T. pgs. 91- 117</u>....

CONT. <u>AFFIDAVIT IN SUPPORT OF MOTION</u>

COTN. <u>ACTUAL & FACTUAL FACTS OF INNOCENCE</u>

17. Even after trial counsel learned all of this at trial, during his cross examination of Shirley Carel, the judge still gave him the opportunity to file a application to have Shirley Carel's roommate's name disclosed, so the roommate can testify to the actual outcry of Shirley Carel allegations, SEE: (T.pg. 95); and also police reports proves, that roommate knew the identity of the true assailant.

18. But trial counsel fail short of his so-call strategy, when he was frustrated in his ill-conceived efforts to impeach Shirley Carel's credibility. He inexplicably failed to request an unfavorable interference charge, when the prosecutor did not produce Ms. Carel's roommate. Also when the court ask trial counsel, "is there any charge that he would like for the Plaintiff he plainly failed to ask for a missing witness charge, for all missing potential key witnesses in Plaintiff's trial.

19. Further, in another case that was consolidated and tried together with Shirley Carel's case; in-order to strengthen the prosecution's theory of guilt, in the indictment pertaining to a complainant name Sonya Allin; who did not pick Plaintiff out in line ups and who testifies, "that she was sexually assaulted by a unknown assailant.

(8).

CONT. <u>AFFIDAVIT IN SUPPORT OF MOTION</u>

CONT. <u>ACTUAL & FACTUAL FACTS OF INNOCENCE</u>

20. The trial counsel knew that the prosecution rest there entire case on circumstantial evidence, not bearing directly on facts, no weapon; and most of all, no motive. Trial counsel failed to do anything in investigating the alleged forensic evidence, that was allegedly seizes from Sonya Allin's apartment.

21. Trial counsel did not file a discovery demand on forensic evidence seized from Ms. Allin's apartment; in-order to put in pre-trial motions to challenge the chain of custody of the alleged forensic evidence, and the comparable assurance that the condition of the forensic evidence had not been materially altered in the interval between the crime and time it was handled by the police and serologist.

21. If trial counsel would have put in a discover demand in-order to challenge the chain of custody before trial, 1. he would have learned the gap in the chain of custody of the forensic evidence, 2. he would have learned the proper procedures were not followed in handling the forensic evidence, 3. he would have learned who the actual vouchering, and testing of forensic evidence, 4. he would have learned that the prosecutor cut corners in the bagging of a conviction, by using perjured, fabricated and falsified forensic evidence, and also, 5. he would have seen the willingness of police officers, serologists, and Lab. Corp. personnel; had cut corners to back the prosecutor's data to it's hypothesis of guilt.

(9).

CONT. AFFIDAVIT IN SUPPORT OF MOTION

CONT. ACTUAL & FACTUAL FACTS OF INNOCENCE

22. Now I would like to point out that the serology Exhibited as a foundation of D.N.A. by alleged chemist SONIA BASILES; as fraud by the prosecution. During Plaintiff's trial, Mary Quigg, (a supervising chemist), with the New York City police Department Laboratory; was called to testify for the prosecution in regards to a chemist by the name of SONIA BASILES: Lab test of physical evidence, which was a rape kit, a used condom; and a woman's shirt. According to Mary Quigg, SONAI BASILES HAD TESTED THIS EVIDECE FOR PRESENCE OF D.N.A., WHICH WAS SUBMITTED AT TRIAL, AS EXHIBIT (8); by the prosecution.

23. Mary Quigg also testified that she was SONIA BASILES direct supervisor, and over saw SONIA BASILES lab work, and checked her reports. Based upon Mary Qigg's testimony; evidence was introduced and exhibited to the jury, as a foundation to D.N.A. testing, SEE: TRIAL MINUTES ATTACHED AS EXHIBIT (B) .....

24. After reasonable and strenuous due diligence of submitting post-conviction motion by the defendant, as a laymen of law; all his collateral review came to no avail. In August of 2003, Defendant pursued FREEDOM OF INFORMATION LAW (F.O.I.L.), and requested copies of chemist SONIA BASILES lab reports, from the District Attorney's office. When the request was denied, Defendant commenced a motion to the Brooklyn Civic Court, on a Article 78 application; in-order to compel the District

(10).

CO

CONT'T. AFFIDAVIT IN SUPPORT OF MOTION

CONT...ACTUAL & FACTUAL FACTS OF INNOCENCE

Attorney's office to disclose it's lab report by chemist SONIA BASILES, which was used as EXHIBIT EIGHT(8) in prosecution evidence as pertaining to the serology foundation of D.N.A. testing of the alleged forensic evidence, SEE: ORDERS FROM THE HONORABLE LAURA JACOBSON, ATTACHED AS EXHIBIT (C)....

25. The district attorney's office finally responded to the Honorable Laura Jacobson orders of Defendant's request for the identity of lab. reports and analysis reports by chemist SONIA BASILES. On letter from district attorney's office to the honorable Laura Jacobson, Dated: August 18, 2005, states: IN ANY EVENT ACCORDING TO RESPONDENT'S FILE RELATING TO THE PETITIONER'S CRIMINAL CASE CHEMIST SONIA BASILES DID NOT COMPLETE ANY LAB. REPORTS RELATING TO THE PETITIONER'S CRIMINAL CASE, SEE: LETTER FROM DISTRICT ATTORNEY'S OFFICE, ATTACHED AS EXHIBIT (D)...

DATED: 12/26/23

RESPECTFULLY SUBMITTED,

_Tony Harrison_ X
TONY HARRISON, DEFENDANT, PRO-SE

SWORN TO BEFORE ME ON

THIS 26 DAY OF Dec , 2023

_Kathleen Bowman_

KATHLEEN BOWMAN
Notary Public - State of New York
No. 01BO0003467
Qualified in Dutchess County
My Commission Expires 03/23/2027

KATHLEEN BOWMAN
Notary Public - State of New York
No. 01BO0003467
Qualified in Dutchess County
My Commission Expires 03/23/2027

(11).

## MEMORANDUM OF LAW OF FED. R. CIV. P. 60 (B),(6)

This motion Fed. R. Civ. P. 60(B) to vacate the judgement for Trial Judge Anne G. Feldman, trial attorney Gregory C. Clark, and trial trial Assisstant District Attorney failure to recuse or rather disqualify themselves is brought properly through this re-open under extra ordinary circumstances; which provides that...'the court may relieve a party... from a final judgement, order or proceedings.' SEE: Canini V United States, Dep't Of justiceFed. Bureau Of prisons, No. 04 Civ. 9049 (CSH), 2008 WL 818696, at *2 (S.D.N.Y. Mar. 26, 2008) (quoting Fed. R. Civ. P. 60 (b)).

Whereas, here in this case at bar, the Plaintiff specify which sub-sections of Rule 60(b), on which Plaintiff relies on the catch-all provision of Rule 60(b),(6), SEE: New York City Dist. Council Of Carpenters Pension Fund V. G & M Drywall Systems Inc., No. 07 Civ. 1969 (CM), 2010 WL 2291690, AT *1(S.D.N.Y. June 1, 2010).

Nevertheles, the Court must find that the only subsection in Rule 60 (b), is only subsection (6), that is relevant here, SEE: Polit V. Global Foods Int'l Corp., NO. 14 Civ. 7360 (JP)), 2016 WL 632251, at *1 (S.D.N.Y.) Feb. 17, 2016) (finding relief warranted under Rule 60 (B),(6), where no OTHER SUBSECTION APPLIES TO PLAINTIFF, IF NOT APPLIED, THE PLAINTIFF WOULD CONTINUE TO SUFFER EXTREME HARDSHIP, IF RELIEF IS DENIED...

While Plaintiff undoubtedly exhibited a pattern of neglect prior to the dismissal of his case, he does not argue that his neglect was excusable and that therefore, this Court should re-open his case; rather, Plaintiff asserts that his case should be re-open in the interest of justice......... Accordingly, the Court does not find that Plaintiff's motion is fairly premised on grounds raised in subsection (1) through (5), and proceeds to analyze this request under Rule 60 (b),(6)...

(12).

CONT....<u>MEMORANDUM OF LAW OF FED,R,CIV.P. 60 (B),(6)</u>.

Rule 60 (B).(6), permits "courts to vacte judgements whenever necessary to accomplish justiuce," SEE: <u>Aczell V. Labonia, 584 F.3d 52,61</u>. While Rule 60 (B),(6), is a grand reservoir of equitable power to do justice in a particular case," SEE: <u>Materese V. Lefevre, 80 F.2d 98,106</u>," That reservoir isnot bottomless," SEE: <u>Stevens V. Miller, 676 F.3d 62,67</u>.

Thus, "relief under Rule 60 (B),(6), is only available in extra-ordinary circumstances, SEE: <u>Buck V. Davis, 137 S.Ct. 759,777-78,</u>(quoting Gonzalez V. Cosby, 545 U.S. 524,535), In determining whether extraordinary circumstances exist, a court may consider a wide range of factors, including "risk of injustice to the plaintiff", and "the risk of undermining the public's confidence in the judicial process," SEE: <u>Liljeberg V. Health Sers. Acquisition Corp., 486 U.S. 857-64</u>," SEE ALSO: <u>Radack V. Norwegian America Line agency, INC., 318 F.2d 538,542,</u>"("The rule should be liberally con-strued when substantial justice will thus be served".)

Genereally, the Second Circuit requires that a movant: (1) support it's motion with highly convincing evidence, (2), show good cause for it's failure to act sooner, and,(3) prove that granting the motion will not impose any undue hardship on the other parties, SEE: <u>Kotlicky V. U.S. Fid & Guar. CO., 817 F.2d 6,9; Green Ex Rel Estate Of green V. Advanced Cardiovascular Imaging, NO. 07 CIV. 314 (JCF),(2009 WL 31544317, at*2; Broadway, 2003 WL 2109635, at*3.</u>

(13).

## CONCLUSIION

Here, the Court should find "THAT THE INTEREST OF JUSTICE" will dictate re-opening this case, SEE: <u>Jackson V. Refined Sugars Inc.</u>, 24 F. Supp.2d 322, given that the Courts view the Rule 60 (B) motions Favorably where, as here, so "<u>GRANTED</u>" this motion will permit an adjudication on the merits, SEE: <u>P.T. Basana Idamann Nurani V. Mairissa By GHR Industries Trading</u>, 151 F.D.R. 32,36, they should be persuaded that the circumstances are sufficiently extra-ordinary to invoke relief under <u>Rule 60 (B),(6)</u>.

<u>I DECLARE OR STATE UNDER THE PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT</u>,,,

AND THAT THIS MOTION FOR THE VACATING OF THE JUDGEMENT, WAS PLACE IN THE PRISON MAILING SYSTEM ON _1 / 4 / 24_ .

EXCUTED SIGNED ON _1 / 4 / 24_ ....

RESPECTFULLY SUBMITTED,

_Tony Harrison_ X

<u>PLAINTIFF, TONY HARRISON</u>

(14).

# Exhibit A

Harrison v. NYC Dep't. of Corrections, Not Reported in F.Supp. (1997)

1997 WL 218211
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Tony HARRISON, Plaintiff,

v.

NYC DEP'T OF CORRECTIONS, Judge Anne
Feldman, Justice Jo Ann Ferdinand, State of
New York, City of New York, Correction Officers
Hodge, Nelson, and Stewart, NYC Police Dep't,
NYC Police Officers Sanchez, Kennedy, and
Mullhall, Brooklyn District Attorney, Assistant
D.A. Nanci Slater, Robert C. Newman, Gregory C.
Clarke, The Legal Aid Society, Sonia Rodriguez,
Shirley Carel, and Sonya Allin, Defendants.

No. 96 CV 1465(SJ).
|
April 21, 1997.

**Attorneys and Law Firms**

Tony Harrison, East Elmhurst, NY, Pro Se.

Dennis C. Vacco, Attorney General of State of New York by
Joseph D. Mirabella, Assistant Attorney General, New York
City.

**Opinion**

JOHNSON, District Judge:

*1 Two defendants in this action, the Honorable Jo Ann
Ferdinand, Acting Justice of the Supreme Court of the State
of New York, Kings County, and the Honorable Anne G.
Feldman, Judge of the New York State Court of Claims,
have moved to dismiss the complaint against them for lack
of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)
(1) and for failure to state a claim upon which relief can be
granted pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons
stated below, defendants' motion is granted, and the claims
against them are dismissed.

**BACKGROUND**

Plaintiff Tony Harrison ("Harrison" or "plaintiff") was
arrested on September 16, 1995 in connection with a series of
rapes that had occurred in the Park Slope area of Brooklyn.
Complaint at Acknowledgment No. 1. Plaintiff has brought

this action pursuant to 42 U.S.C. § 1983 against numerous
New York City and State defendants for their participation
in the events surrounding his arrest and subsequent criminal
proceeding.

In particular, plaintiff alleges that Judge Feldman conspired
with defendant Assistant District Attorney Nanci Slater
("A.D.A.Slater") to prosecute defendant without cause.
Complaint ¶ 33. Plaintiff alleges that Judge Feldman is biased
against him, and based on that bias, has repeatedly denied
his motions for reassignment of counsel and dismissal of the
indictment. Complaint ¶¶ 34–35. Finally, plaintiff claims that
Justice Ferdinand conspired with Judge Feldman and A.D.A.
Slater by signing an order for plaintiff's blood to be drawn,
despite the lack of legal or factual support for such an order.
Complaint ¶¶ 36–37.

Based on these allegations, plaintiff claims that Judge
Feldman and Justice Ferdinand violated his constitutional
rights. He therefore seeks one million dollars in damages from
each defendant, orders of protection and restraining orders
against each defendant, an investigation into his entire case by
the United States Justice Department, and liens against both
defendants' paychecks and pensions.

**DISCUSSION**

*I. Subject Matter Jurisdiction.*

Plaintiff's complaint against the two defendant judges must
be dismissed, in part, because of this Court's lack of subject
matter jurisdiction to consider his claims. "The jurisdiction
possessed by the District Courts is strictly original." *Rooker
v. Fidelity Trust Company,* 263 U.S. 413, 416, 44 S.Ct.
149, 68 L.Ed. 362 (1923). District courts therefore "do not
have jurisdiction ... over challenges to state court decisions
in particular cases arising out of judicial proceedings even
if those challenges allege that the state court's action was
unconstitutional." *District of Columbia Court of Appeals v.
Feldman,* 460 U.S. 462, 486, 103 S.Ct. 1303, 75 L.Ed.2d
206 (1983). The doctrine arising out of these two Supreme
Court cases, "[t]he so-called *Rooker–Feldman* doctrine,
generally stated, is that inferior federal courts have no subject
matter jurisdiction over cases that effectively seek review
of judgments of state courts and that federal review, if any,
can occur only by way of a *certiorari* petition to the United
States Supreme Court." *Moccio v. N.Y. State Office of Court
Administration,* 95 F.3d 195, 197 (2d Cir.1996). In short,
district courts do not have the power to review state court
proceedings. *Feldman,* 460 U.S. at 483 n. 16 (citing *Atlantic*

*Coast Line R. Co. v. Engineers,* 398 U.S. 281, 296, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970) ( "[L]ower federal courts possess no power whatever to sit in direct review of state court decisions.")).

*2 Plaintiff has requested this Court to review his claim that the defendant judges have unconstitutionally refused to grant his motions for reassignment of counsel and dismissal of the indictment, and have unconstitutionally granted the state's motion for an order to draw plaintiff's blood. Plaintiff is effectively requesting this Court to substantively review the state court orders. Because this Court lacks the power to review those orders, however, plaintiff's claims against the two named judges for issuing their orders must be dismissed for lack of subject matter jurisdiction.

### II. Failure to State a Claim.

Plaintiff's remaining claim against Judge Feldman and Justice Ferdinand, for conspiring with A.D.A. Slater to prosecute a criminal action against him without cause, must also be dismissed for failure to state a claim upon which relief can be granted.

Judges have absolute immunity from liability for damages for acts performed in their judicial capacities. *Stump v. Sparkman,* 435 U.S. 349, 356, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Pierson v. Ray,* 386 U.S. 547, 553–55, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Oliva v. Heller,* 839 F.2d 37, 39 (2d Cir.1988). As the alleged wrongdoing of these defendants was an act performed in a judicial capacity, plaintiff's claim

against defendants is foreclosed by absolute immunity and is subject to dismissal because it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

To the extent that the defendant judges might not be immune to suit, plaintiff fails to allege facts sufficient to show the existence of any conspiracy on the part of the defendant judges that is designed to deprive him of his rights. *See Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977). Plaintiff makes conclusory statements that Judge Feldman and Justice Ferdinand must be conspiring with A.D.A. Slater, but fails in any way to specify facts that might support such a conspiracy. Granting plaintiff's complaint the liberal reading required by *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), he still fails to state a claim for conspiracy against defendants Judge Feldman and Justice Ferdinand.

### CONCLUSION

For the reasons stated above, Judge Feldman and Justice Ferdinand's motion to dismiss the complaint against them is granted.

SO ORDERED.

**All Citations**

Not Reported in F.Supp., 1997 WL 218211

End of Document

© 2020 Thomson Reuters. No claim to original U.S. Government Works.



**THE LEGAL AID SOCIETY**

199 WATER STREET  NEW YORK, NY 10038  TEL: 212-577-3300  FAX: 212-509-8481  www.legal-aid.org

Richard J. Davis
*Chairman*

Blaine (Fin) V. Fogg
*President*

Steven Banks
*Attorney-in-Chief*

February 7, 2011

Mr. Tony Harrison
97-A-1299
Sullivan Correctional Facility
P.O. Box 116
Fallsburg, N.Y. 12733

Dear Mr. Harrison:

I have just received your letter requesting assistance in preparing an affidavit for a 440 motion.

Of course I remember you. How could I forget? Your case led to the biggest mistake in my professional life. This happened when, because I initially trusted you and believed in your innocence, I told you that the judge lived in the community where the crimes took place. You later used this fact to try to get the judge removed from the case. The judge became so angry that I had to get off your case, so that the judge would not be prejudiced against you because of what I had done.

The judge brought a complaint against me, and several years later I had to explain the situation when I tried, unsuccessfully, to become a judge myself.

Under these circumstances I cannot possibly get involved in your case again. If a judge ordered a hearing on a 440 motion and I were subpoenaed to testify, I would testify truthfully, except that I would not testify to any material protected by the attorney-client privilege unless you first waived the privilege.

While I am not God and I will never know with certainty whether you are guilty or innocent, I will point out that I haven't heard of a case in New York State yet, where a man was convicted of rape based on DNA evidence and later cleared because the Police or prosecution mishandled the DNA evidence or lied about that evidence. So you've got a pretty tough road ahead of you, especially when you have two convictions based on separate lab analyses on separate occasions.

Of course your probable cause issue was argued unsuccessfully on appeal. I happen to know your appellate lawyer, William Loeb, and I believe he is an excellent lawyer, so it's hard for me to believe that any other appellate lawyer would have gotten a better result.

Later this year my office is conducting advanced training on DNA evidence. If one of the lecturers says anything that would indicate some newly available basis for re-opening your case I will let you know.

Very truly yours,

Robert C. Newman
Staff Attorney, Special Litigation Unit

# Exhibit B

```
 1                    Quigg — Redirect                    235

 2   no?

 3        A    My complete paperwork, yes.

 4        Q    So I take it, it was somebody else's

 5   paperwork that's not here today?

 6        A    It's the evidence desk.

 7                  MR. CLARKE:  No further questions.

 8                  MS. SLATER:  Can I have a couple of

 9             minutes, Judge?

10                  THE COURT:  Sure.

11                  ( Brief pause in proceedings )

12   REDIRECT EXAMINATION

13   BY MS. SLATER:

14        Q    Miss Quigg, can you tell us who analyzed the

15   rape kit and the condom?

16        A    A chemist by the name of Sonia Basiles.

17        Q    Does that person still work for the New York

18   City Police Department laboratory?

19        A    No.

20        Q    Were you her direct supervisor?

21        A    Yes.

22        Q    Did you oversee her work?

23        A    Yes.

24        Q    Did you check her reports?

25        A    Yes.
```

FORM CSR - LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

Quigg — Redirect                                    236

1

2    Q    Do you have the report here that she prepared

3  with regard to the rape kit and the condom?

4    A    Yes.

5    Q    Was that report made in the ordinary course

6  of business of the police laboratory?

7    A    Yes.

8    Q    Is it the business of the lab to prepare

9  those reports after doing certain tests?

10   A    Yes.

11   Q    Is one of the duties of a chemist or a

12  serologist to do tests and to prepare that report?

13   A    Yes.

14        MS. SLATER:  I ask that be moved into

15  evidence as People's Eight.

16        MR. CLARKE:  Where is the exhibit?

17        THE COURT:  Show it to him, please.

18        MS. SLATER:  He has a copy.

19        MR. CLARKE:  I want to see the piece of

20  paper.

21        MS. SLATER:  Surely.

22        ( Exhibit handed to counsel )

23        MR. CLARKE:  No objection.

24        THE COURT:  Without objection.

25        ( So marked )

Quigg — Recross                        238

1

2  serologist to personally hand the property to someone

3  who picks it up to be sent to a lab?

4      A    No.  If I'm not in the office, it's up to one

5  of my chemists to sign over the property.

6      Q    Is that done on a routine basis?

7      A    Yes, it is.

8              MS. SLATER:  I have nothing further.

9  RECROSS EXAMINATION

10 BY MR. CLARKE:

11     Q    You talked about one of the employees you

12 supervised testing the condom for sperm and finding it

13 positive that there was sperm with the condom, right?

14     A    Yes.

15     Q    Where was the sperm?

16     A    I have no idea.

17     Q    So it could have been inside the condom?

18     A    Yes.

19     Q    It could have been outside the condom?

20     A    Yes.

21             MR. CLARKE:  No further questions.

22             MS. SLATER:  Nothing further.

23             THE COURT:  You may step down.

24             Thank you.

25             ( Witness withdrew  )

# Exhibit C

At Part 21 the Supreme Court of the
of the State of New York, County of Kings
located at 15 Willoughby Street, Brooklyn,
New York on the 16th day of March 2004

PRESENT:

            HON. LAURA JACOBSON
                    Justice

_____

Tony Harrison


                    Petitioner

        against                                    Order

Jonathan E. Rubin, Record Access Officer of the
District Attorney's Office, Morgan J. Dennehy, Assistant
District Attorney & Foil Appeals Officer, Charles Hynes
District Attorney

                Respondents                    Index No. 43421/03

_____

The following papers numbered 1 to 3 read on this petition:

            Papers                                Numbered
Order to Show Cause and Affidavit Annexed         1-2
Notice of Petition                                3

Petitioner moved to renew his application to compel respondents to provide records pursuant to a
FOIL request. Petitioner failed to submit the determinations issued by respondents on his first
application. Respondent has not appeared in this proceeding.

The petition states that petitioner's ability to pursue a collateral review of his conviction is
impaired by respondent's blanket denial of his FOIL request pursuant to the Public Officers
Law. Petitioner requested a copy of the Aided Report connected to complaint no. 8969 and the
analysis and lab reports of chemist Sonia Basiles. In a response dated August 27, 2003,
petitioner's request was denied stating that disclosure of records containing the identity of a
victim of a sex offense was prohibited pursuant to Civil Rights Law §50-b(1) and redaction was
not a meaningful option. Petitioner appealed the determination and in a letter dated September
11, 2003 the appeal was denied stating the same reasons.

Petitioner states that respondents must show that each requested document contains identifying

stating the same reasons.

Petitioner states that the respondents must show that each requested document contains identifying information. In Fappiano v. New York City Police Department 95 NY2d 738 (2001) the Court stated that a particularized showing is required "where there is a legitimate dispute as to whether the information contained in any given documents tends to identify the victim." It is evident that the aided report would identify the victim but respondents have not identified with any particularity what lab reports are contained in the file in this case. Therefore, there is no way to determine, for example, if there were reports that were specific to petitioner.

Accordingly, respondents are directed to identify the lab reports and analysis reports relevant to petitioner's request and state with particularity why they cannot be disclosed with 90 days of the date of this decision.

This constitutes the decision and order of this Court.

ENTER:

LAURA JACOBSON, JSC

HON. LAURA JACOBSON

At IAS Part 21 of the Supreme Court of the
of the State of New York, County of Kings
located at 360 Adams Street, Brooklyn,
New York on the 23rd day of June 2005

PRESENT:

HON. LAURA JACOBSON
Justice

---

Tony Harrison

Plaintiff

Amended
Decision/Order

against

Jonathan E. Rubin; Record Access Officer of the
District Attorney's Office, Morgan J. Dennehy, Assistant
District Attorney & Foil Appeals Officer, Charles Hynes
District Attorney

Defendants                                    Index No.43421/03

---

The following papers numbered 1 to 3 read on this Motion:

| Papers | Numbered |
|---|---|
| Order to Show Cause and Affidavit Annexed | 1-2 |
| Notice of Petition | 3 |

This Order vacates and supercedes the Order of this Court dated March 16, 2004 which was mis-dated.

Petitioner moved to renew his application to compel respondents to provide records pursuant to a FOIL request. Petitioner failed to submit the determinations issued by respondents on his first application. Respondent had not appeared in this proceeding.

The petition states that petitioner's ability to pursue a collateral review of his conviction is impaired by respondent's blanket denial of his FOIL request pursuant to the Public Officers Law. Petitioner requested a copy of the Aided Report connected to complaint no. 8969 and the analysis and lab reports of chemist Sonia Basiles. In a response dated August 27, 2003, petitioner's request was denied stating that disclosure of records containing the identity of a victim of a sex offense was prohibited pursuant to Civil Rights Law §50-b(1) and redaction was not a meaningful option. Petitioner appealed the determination and in a letter dated September 11, 2003 the appeal was denied

information. In <u>Fappiano v New York City Police Department</u> 95 NY2d 738 (2001) the court stated that a particularized showing is required " where there is a legitimate dispute as to whether the information contained in any given documents tends to identify the victim". It is evident that the aided report would identify the victim but respondents have not identified with any particularity what lab reports are contained in the file in this case. Therefore, there is no way to determine, for example, if there were reports that were specific to petitioner.

Accordingly , respondents are directed to identify the lab reports and analysis reports relevant to petitioner's request and state with particularity why they cannot be disclosed with 90 days of the date of this decision.

This constitutes the decision and order of this court.

ENTER:

LAUREL JACOBSON, JSC

HON. LAURA JACOBSON

# EXHIBIT D

CHARLES J. HYNES
*District Attorney*

RENAISSANCE PLAZA at 350 JAY STREET
BROOKLYN, N.Y. 11201-2908
(718) 250-2000

August 18, 2005

Hon. Laura Jacobson
Supreme Court of the State of New York
Kings County
360 Adams Street
Brooklyn, New York  11201

Re:   Article 78 Petition
      Harrison v. District
      Attorney's Office
      Index Number
      43421/03

Dear Judge Jacobson:

      I am writing in response to the Court's order directing the respondent to identify the lab reports relevant to the petitioner's request and explain why those reports cannot be disclosed.  First, respondent notes that the Court's order states that "Respondent had not appeared in [the Article 78] proceeding" (Order at 1).  However, a review of respondent's records reveals that respondent never received petitioner's Article 78 petition.  Thus, respondent was unaware of the necessity of responding in writing or in person to the petition.

      In any event, according to respondent's file relating to the petitioner's criminal case, chemist Sonia Basiles did not complete any lab reports relating to the petitioner's criminal case.  Rather, Meghan E. Clement, Assistant Director, Forensic Identity Testing completed three lab reports relating to the petitioner's criminal case.  The first, dated April 5, 1995, is entitled Preliminary Certificate of Analysis.  The second, dated May 29, 1995, is entitled Certificate of Analysis.  The third, dated July 5, 1996, is entitled Supplemental Certificate of Analysis.

      Each of those reports contains the DNA test results and personal information relating to the victim of a sex offense.  Thus, the lab reports are not disclosable under the Freedom of Information Law.  See Civil Rights Law § 50-b(1); Public Officers Law § 87(2)(a); see also Fappiano v. New York City Police Dep't, 95 N.Y.2d 738 (2001) (documents not disclosable where they contain information tending to identify victim of sex offense, goal to protect identity of such victims is not

August 18, 2003
Page 2

negated by fact that defendant knows identity of his victim).  Respondents could be held liable for damages should such information be disclosed wrongfully in violation of the civil rights of the victim of a sex offense.  See Civil Rights Law § 50-c.  In addition, redaction of the identifying information "is not a meaningful option" because references to the victim's identity appear throughout the records.  See In re Horace, 168 Misc. 2d 981 (Sup. Ct. Monroe County 1996).  Neither does the statute allow for redaction.  See Civil Rights Law § 50-b.

Thus, the respondent requests that the petitioner's Article 78 petition be denied.

Sincerely,

Tziyonah M. Langsam
Assistant District Attorney
FOIL Appeals Officer

cc:    Mr. Tony Harrison
       Inmate Number 97-A-1299
       Shawangunk Correctional Facility
       P.O. Box 700
       Wallkill, New York  12589

TONY HARRISON 97-A-1299
GR&
P.O. BOX 4000
STORMVILLE, N.Y. 12582-

(HONORABl
{ MR. STE
EASTERN
225 C
BROOKLYN

— LEGAL MAIL —

NEOPOST
02/07/2024
US POSTAGE $002.59⁰

HAVEN
CORRECTIONAL
FACILITY
GREEN

ZIP 12582
041M11466608

DISTRIST JUDGE
RLING JOHNSON
DISTRICT OF NEW YORK
ADMAN PLAZA EAST
, N.Y. 11201

USMS

Tony Harrison #97-A-1299
Green Haven Correctional Facility
P.O. Box 4000
Stormville, N.Y. 12582-4000

—Legal

MAIL—