UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

NOT FOR PUBLICATION

------------------------------------------------------------------x

TONY HARRISON,

              Plaintiff,

          -against-

NYC DEP'T OF CORRECTIONS; NEW YORK CITY
POLICE DEPARTMENT; CITY OF NEW YORK;
CORRECTIONAL OFFICER HODGE, *Shield # 11923*;
CORRECTIONAL OFFICER STEWARD, *Kings
County Hospital*; CORRECTIONAL OFFICER
NELSON, *Kings County Hospital*; JOHN DOE
CORRECTIONAL OFFICERS OF KINGS COUNTY
HOSPITAL # 1-9; DECTECTIVE HECTOR L.
SANCHEZ, *77th Precinct*; JOHN DOE MEDICAL
EXAMINER; JUDGE ANNE FELDMAN, *Brooklyn
Supreme Court Part 5*; JUDGE JOANN FERDINAND,
*Brooklyn Supreme Court Part 4*; NEW YORK STATE
UNIFIED COURT SYSTEM; THE STATE OF NEW
YORK; NEW YORK CITY POLICE DEPARTMENT,
*Brooklyn, 71st Precinct*; DETECTIVE SGT.
KENNEDY; DETECTIVE MULHALL; DISTRICT
ATTORNEY CHARLES HYNES; A.D.A. NANCI 1
SLATER; ROBERT C. NEWMAN, *Legal Aid Society of
Brooklyn*; GREGORY C. CLARKE, *Brooklyn 18-B
Attorney*; SONIA RODRIGUEZ; SHIRLEY CAREL;
and SONYA ALLIN,

              Defendants.

------------------------------------------------------------------x

**MEMORANDUM AND ORDER**

96-CV-1465 (PKC)

PAMELA K. CHEN, United States District Judge:

       This action comes to the Undersigned on Plaintiff Tony Harrison's February 13, 2024

motion to vacate the Court's April 21, 1997 Order dismissing this action. For the reasons that

---

1

follow, the motion to vacate is denied. The Amended Complaint is dismissed, with leave to amend the claims related to inadequate medical treatment and excessive force.

## BACKGROUND

### I.    Procedural History

Plaintiff Tony Harrison ("Plaintiff" or "Harrison"), currently incarcerated at Green Haven Correctional Facility, originally filed this *pro se* action on March 29, 1996. The Honorable Sterling Johnson, Jr., the judge originally assigned to this action, granted Plaintiff's request to proceed *in forma pauperis* on May 15, 1996. (Dkts. 1, 4.) Plaintiff filed an Amended Complaint on September 5, 1996. (Amended Complaint ("Am. Compl."), Dkt. 8.)

### A.    Amended Complaint

The Amended Complaint describes the circumstances of Plaintiff's arrest on September 16, 1995, when he was observed following a woman near Prospect Park and was subsequently identified by the New York City Police Department ("NYPD") and the media as the suspected "Park Slope Serial Rapist." (*Id*. at ECF[2] 3-4.)[3] Upon arrival at the NYPD's 71st Precinct, "[Plaintiff] began to get sick because [he] had not taken [his] medication for seizures." (*Id*. at ECF 3.) Plaintiff was allowed to call his mother to request his medication (although the Amended

---

[2] "ECF" refers to the pagination generated by the Court's electronic docketing system and not the document's internal pagination.

[3] Given that Plaintiff seeks to vacate the April 1997 Order dismissing this case prior to discovery, the Court applies the standard for resolving motions to dismiss, and "accept[s] as true all factual allegations [in the Amended Complaint] and draw[s] from them all reasonable inferences[.]" *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).  The Court, however, does not "credit conclusory allegations or legal conclusions couched as factual allegations." *Id*.

Complaint does not indicate whether he ever received it). (*Id.*) Plaintiff "suffered seizures and Detectives denied Plaintiff immediate medical attention[.]" (*Id*. at ECF 10.) Plaintiff claims he was denied medical attention so that the detectives could "conduct illegal line ups." (*Id.*) Plaintiff was "traumatized and dizzy from seizure attack [he] caught while in custody of Police Officers." (*Id.* at ECF 11.) Emergency Medical Services ("EMS") were called, but detectives told EMS "to wait on taking plaintiff because Detective stated, 'it would take all day.'" (*Id.*) Plaintiff does not describe any further medical concerns or indicate whether he needed or received additional treatment at that time, but claims that he suffered "bodily injury." (*Id.* at ECF 7.)[4]

After Plaintiff's indictment, Assistant District Attorney ("ADA") Nanci Slater applied for a court order for a blood sample for DNA testing on the basis of law enforcement suspicion that the same individual was responsible for a series of rapes with a similar modus operandi, and one victim's description of her attacker. (*Id.* at ECF 8-9, 16.) Plaintiff asserts that the prosecutor did not adequately demonstrate probable cause to support the court order, as required by *Matter of Abe A.*, 437 N.E.2d 265, 266 (N.Y. 1982) (considering a Fourth Amendment challenge and holding that "a court order to obtain a blood sample of a suspect may issue provided the People establish (1) probable cause to believe the suspect has committed the crime, (2) a 'clear indication' that relevant material evidence will be found, and (3) the method used to secure it is safe and reliable"). (*Id.* at ECF 8.) Plaintiff further claims that Judge Anne Feldman failed to "[investigate] the

---

[4] Despite explaining that "serious bodily injury" consists of "bodily injury which creates a substantial risk of death or which cause[s] serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ[,]" (*id.* at ECF 7), Plaintiff does not appear to allege that he suffered serious or permanent injuries as a result of the alleged denial of medical treatment on the day of his arrest.

evidence and [probe] below the surface of the shallow evidence" and "allowed ADA Slater to get a court order by another woman Judge JoAnn Ferdinand months into the case." (*Id.* at ECF 4, 18.)

Plaintiff was taken to Kings County Hospital on February 15, 1996.[5] (*Id.* at 4.) There, he was informed that "there was a Court Order to produce body for blood sample." (*Id.* at 5.) Plaintiff told the officers that it was against his religion to give blood during Ramadan, and asked for an imam and a lawyer to be present. (*Id.* at ECF 4-5.) Plaintiff "was handcuffed and shackled up by correctional officers because [he] refused to comply." (*Id.* at ECF 4.) Plaintiff "was pushed in another room with about nine other officers; the officers commenced into grabbing [his] neck and arms, pulled up the sleeve of [his] right arm and allowed arresting Officer Detective Hector L. Sanchez . . . and a man in plain clothes, who had a needle, sticking [Plaintiff] in right arm as many times as he wanted. The man in plain clothes could not catch a vein, so [Plaintiff] was stuck at least nine times, in which the needle popped and broke off in [his] arm." (*Id.* at ECF 5.) A piece of the needle "broke off in Plaintiff['s] right arm and moved down to lower right hand." (*Id.* at ECF 6, 19.) Plaintiff asserts that during this incident, the "named defendants" "inflicted serious bodily harm[,] . . . which indicates an unjustified disregard for the likelihood of serious body [sic] injury and extreme indifference to the value of human life." (*Id.* at ECF 7.) He also claims that Defendants Correctional Officers Hodge, Steward, and Nelson, "Nine John Does Correctional Officers" of Kings County Hospital, and a "John Doe Medical Examiner" "inflict[ed] cruel and unusual punishment by puncturing holes in Plaintiff's right arm, while he was chained up, handcuffed, and shackled." (*Id.* at ECF 19-20.)

---

[5] Plaintiff also refers to February 15, 1995, but it seems clear from the context that the incident occurred in 1996.

Plaintiff claims that the blood draw also impaired his freedom of religion, because it occurred during Ramadan, "a month in which [he is] required not to give up blood because of fasting," and because his request for "the presence of a Correctional Imam" was denied. (*Id.* at ECF 4, 5, 20.)

Plaintiff also claims that the prosecution failed to follow New York State procedures for presentation to the grand jury, and that the felony complaint was not supported by legally sufficient evidence. (*Id.* at ECF 12.) He asserts that Judges Ferdinand and Feldman "had no legal jurisdiction to commence any proceeding in matter now known as IND. # 12017/95 and the charges therein," because of the "defective and illegal felony complaint." (*Id.* at ECF 14-16.) He also claims that Judge Feldman was biased because she lived in the community in which the crimes were committed. (*Id.* at ECF 17-18.) In addition, he alleges that his appointed attorneys, Robert C. Newman and Gregory C. Clarke, provided inadequate representation throughout the state court criminal proceedings, (*id.* at ECF 6, 17-19), and that the civilian witnesses named as Defendants gave false statements, (*id.* at ECF 20-21.)

The Amended Complaint requests $1 million in damages from each Defendant and liens against their income, investigation of Plaintiff's allegations, injunctive relief related to the conditions of his pre-trial detention, and nine hours of law library access daily. (*Id.* at ECF 22.)

**B.    Dismissal of the Amended Complaint**

On November 5, 1996, Defendants Judges Feldman and Ferdinand filed a motion to dismiss the Amended Complaint. (Dkts. 12-14.) Judge Johnson granted that motion, finding that the District Court did not have jurisdiction to review challenges to state court decisions, including the order directing collection of Plaintiff's blood for DNA analysis, and because judges have absolute immunity from liability for damages for acts performed in their judicial capacities.

5

*Harrison v. N.Y.C. Dep't. of Corr.*, No. 96-CV-1465 (SJ), 1997 WL 218211, at *2 (E.D.N.Y. Apr. 21, 1997). On January 22, 1998, Defendants New York State and the New York State Unified Court System also filed motions to dismiss. (Dkts. 26, 27.) Judge Johnson granted that motion on November 4, 1998, finding that the Eleventh Amendment barred Plaintiff's claims against the State of New York and the New York State Unified Court System. (Dkt. 31.)

On January 21, 1999, Plaintiff moved for a default judgment against Defendants the New York City Department of Corrections; the NYPD; Corrections Officers Steward, Nelson, and Hodge; District Attorney ("DA") Charles Hynes and ADA Slater; the City of New York; and NYPD Officers Kennedy and Mulhall, all of whom had been served with summonses but had not responded. (Dkt. 33.) Shortly thereafter, on February 1, 1999, despite the absence of a court order dismissing the Defendants named in Plaintiff's default judgment motion, the Clerk of Court issued final judgment dismissing the entire case. (Dkt. 34.) Plaintiff filed a timely Notice of Appeal. (Dkt. 35.) The Court of Appeals for the Second Circuit issued a mandate on May 13, 1999, noting that the District Court's orders had disposed of the claims against only four of the Defendants, and directed the District Court to dispose of the claims against the remaining Defendants. (Dkt. 37.) And then, nothing happened in *this* case for nearly 25 years, until February 14, 2024, when Plaintiff filed the instant motion to vacate.

C.    **Subsequent State Court Proceedings**

In the interim, a Kings County jury convicted Plaintiff of two counts of rape in the first degree, two counts of sodomy in the first degree, and harassment in the first degree, and he was sentenced to four consecutive terms of 25 years to life imprisonment as a persistent felony offender, under Indictment Number 12017/95. Plaintiff filed appeals and collateral attacks in state court. *See People v. Harrison*, 681 N.Y.S.2d 38, 38 (N.Y. App. Div. 1998) (affirming the judgment

and sentence and finding that probable cause existed to grant the order for drawing blood and DNA testing); *People v. Harrison*, 710 N.E.2d 1100 (N.Y. 1999) (leave to appeal denied); *People v. Harrison*, 775 N.Y.S.2d 871 (N.Y. App. Div. 2004) (denying a writ of error *coram nobis* to vacate on the ground of ineffective assistance of appellate counsel); *People v. Harrison*, 816 N.E.2d 574 (N.Y. 2004) (denying leave to appeal denial of writ of error *coram nobis*); *People v. Harrison*, No. 12017/1995, 2009 WL 2029562, at *1 (N.Y. Sup. Ct. Apr. 21, 2009) (describing Plaintiff's multiple motions to vacate the judgment of conviction pursuant to C.P.L. § 440.10 and challenging his sentence pursuant to C.P.L. § 440.20 and denying his motion for reconsideration).

Plaintiff also challenged this conviction in federal court. On November 14, 2000, he filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pet., *Harrison v. Senkowski*, No. 00-CV-6830 (JBW) (E.D.N.Y. Nov. 14, 2000). The petition was denied on May 8, 2001 and judgment was entered on May 16, 2001. *Harrison*, No. 00-CV-6830 (E.D.N.Y. May 2001), Dkts. 18-20. Plaintiff's appeal was dismissed on February 21, 2003. *Harrison*, No. 00-CV-6830 (E.D.N.Y. Feb. 21, 2001), Dkt. 27. His request to file a second or successive petition was denied on March 20, 2007. *Harrison*, No. 00-CV-6830 (E.D.N.Y. March 20, 2007), Dkt. 32. On July 6, 2007 and July 18, 2011, he filed two motions pursuant to Rule 60(b) of the Federal Rules of Civil Procedure requesting the Court to vacate the May 16, 2001 judgment.[6] Both motions were transferred to the Second Circuit, but the Court of Appeals denied leave to file successive petitions. *Harrison*, No. 00-CV-6830 (E.D.N.Y.), Dkts. 52, 74; *Harrison v. Senkowski*, 247 F.R.D. 402, 404

---

[6] As part of the habeas proceedings that resulted in the May 16, 2001 judgment, Plaintiff was appointed pro bono counsel, and non-evidentiary hearings were held by the Honorable Jack B. Weinstein. *Harrison*, No. 00-CV-6830 (E.D.N.Y.), Dkts. 35-70.

(E.D.N.Y. 2008) (denying Rule 60(b) motion challenging the denial of the original habeas petition and transferring the remaining claims to the Court of Appeals).[7]

On February 14, 2024, Plaintiff filed a Rule 60(b) motion to vacate the April 21, 1997 Order dismissing the two state court judges from this action. (Dkt. 39 at ECF 1.) The case was reassigned to the Undersigned on February 20, 2024, and I directed that the case be reopened, in light of the unresolved Mandate issued by the Second Circuit in May 1999. (2/21/24 Docket Order.) Having carefully reviewed the procedural history of this case and related proceedings and Plaintiff's instant motion, the Court hereby denies Plaintiff's Rule 60(b) motion, reviews the previously unresolved claim against the remaining defendants, and dismisses the action, with leave to amend.

## II.    The Instant Motion

Plaintiff's February 14, 2024 motion to vacate (the "Motion") reiterates his previous allegations about the circumstances of his arrest and indictments and the court-ordered blood draw for DNA testing. (Dkt. 39 at ECF 4-6.) Plaintiff repeats his claim that the arraignment judge lived

---

[7] Plaintiff was also convicted on similar charges in New York Supreme Court, New York County, and filed multiple motions challenging that conviction as well. *See People v. Harrison*, 803 N.Y.S.2d 5, 6 (N.Y. App. Div. 2005) (affirming June 30, 2003 judgment of the New York Supreme Court, New York County convicting defendant, after a jury trial, of three counts of sodomy in the first degree, two counts of rape in the first degree, robbery in the first degree and burglary in the first degree, and sentencing him, as a second violent felony offender, to consecutive terms of 25 years on each conviction), *leave to appeal denied*, 843 N.E.2d 1162 (N.Y. 2005); *Harrison v. Walsh*, No. 06-CV-13328 (RMB) (AJP), 2007 WL 1576265, at *1 (S.D.N.Y. June 1, 2007), *R. & R. adopted*, 2007 WL 2844867 (S.D.N.Y. Sept. 27, 2007) (denying petitioner's writ of habeas corpus challenging his June 30, 2003 conviction); *Harrison v. Walsh*, No. 06-CV-13328 (RMB), 2022 WL 4951543, at *1 (S.D.N.Y. Oct. 4, 2022) (transferring Rule 60(b) motion to the Court of Appeals as a successive petition).

in the same community in which the crimes occurred and alleges that "[t]his Judge was so bias[ed] in this situation." (*Id.* at ECF 6.) Among his exhibits, Plaintiff includes a 2011 letter from his originally assigned counsel, in which the attorney says that telling Plaintiff that the judge lived in the same community as where the alleged crime took place—which "[y]ou [i.e., Plaintiff] later used . . . to try to get the judge removed from the case"—was "the biggest mistake in my professional life." (*Id.* at ECF 18.) Plaintiff also re-asserts his claim that the state court order for blood collection was issued "without any probable cause" and "for uncharged crimes" because the "District Attorney's office claimed they had forensic evidence from another crime scene." (*Id.* at ECF 6-7.) The Motion renews Plaintiff's claims against his appointed attorneys and asserts new claims about their inadequate preparation, trial strategy, and performance. (*Id.* at ECF 7-9.) Plaintiff also asserts that trial testimony related to laboratory testing of physical evidence is contradicted by a 2005 letter regarding the identity of the chemist. (*Id.* at ECF 10-11.)

Plaintiff brings the Motion pursuant to Rule 60(b)(6) and requests that the Court re-open this case "in the interest of justice." (*Id.* at ECF 12.)

## STANDARD OF REVIEW

Rule 60(b) of the Rules of Civil Procedure permits a litigant to seek relief from a final judgment for a list of specified reasons including: "mistake, inadvertence, surprise, or excusable neglect"; "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)"; and "any other reason that justifies relief." Fed. R. Civ. P. 60(b). The standard for granting a motion to reconsider is strict. Reconsideration will generally be denied unless the moving party can point to either controlling decisions or factual matters that the court overlooked, and which, had they been considered, might have reasonably altered the result before the court. *See Shrader v. CSX Transp., Inc.*, 70 F.3d 255,

257 (2d Cir. 1995). "A Rule 60(b) motion is properly denied where it seeks only to relitigate issues already decided." *Maldonado v. Local 803 I.B. of T. Health & Welfare Fund*, 490 F. App'x 405, 406 (2d Cir. 2013) (citing *Zerman v. Jacobs*, 751 F.2d 82, 85 (2d Cir. 1984)). A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998) (considering motions pursuant to Rule 59); *Moreno-Cuevas v. Huntington Learning Ctr.*, 501 F. App'x 64, 66 (2d Cir. 2012) ("[B]oth a Rule 60(b) motion and a motion for reconsideration are properly denied where they seek only to relitigate issues already decided. . . . A motion for reconsideration is justified only where the defendant identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." (internal quotation marks and citations omitted)).

## DISCUSSION

The Court finds that Plaintiff has failed to demonstrate any basis for reconsidering the dismissal of the two judicial Defendants,[8] and that Plaintiff's claims against the other remaining Defendants—which were not actually dismissed via a court decision—should be dismissed as well.

## I.    Claims Against the Individual Judicial Defendants

To the extent that Plaintiff seeks to relitigate his claims against the individual judicial Defendants who were already dismissed from this case—Judges Ferdinand and Feldman—his

---

[8] The Motion does not seek reconsideration of Judge Johnson's November 4, 1998 Order dismissing Defendants New York State or the New York State Unified Court System based on Eleventh Amendment immunity. (*See* Dkt. 31.)

motion is denied. Judge Johnson's April 21, 1997 Order dismissed these defendants because judges have absolute immunity from liability for suits for damages for acts performed in their judicial capacities, and "the alleged wrongdoing of these defendants was an act performed in a judicial capacity." *Harrison*, 1997 WL 218211, at *2.

The Motion does not identify legal issues or factual matters that the Court overlooked. Plaintiff merely repeats his unsubstantiated claims that Judge Feldman was biased because of where she lived and reiterates his disapproval of the order issued by Judge Ferdinand authorizing the collection of a blood sample from Plaintiff for DNA testing. Arraignments and court orders are clearly acts within Judges Feldman's and Ferdinand's judicial capacity. Plaintiff has not alleged that these judges were acting outside of their judicial capacity or "in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). Plaintiff's claims against the judicial Defendants were properly dismissed because the judges are immune from suit, pursuant to 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B)(iii).

Accordingly, this Court denies Plaintiff's Motion to vacate the dismissal of Defendants Feldman and Ferdinand from this action.

## II.   Claims Against the Remaining Defendants

While Plaintiff's Motion seeks reconsideration of the dismissal of his claims against all of the Defendants, his claims against most of the remaining Defendants were not previously resolved by Judge Johnson. The Court turns now to these claims. In addition to the Amended Complaint, the Court has also considered the subsequent proceedings and the claims contained in the Motion.

### A.   Legal Standards

#### 1.   Federal Rule of Civil Procedure 12(b)(6)

11

In order to survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).   The plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal citation omitted).   Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (internal citation omitted). "In addressing the sufficiency of a complaint, [the court] accept[s] as true all factual allegations and draw[s] from them all reasonable inferences; but [the court is] not required to credit conclusory allegations or legal conclusions couched as factual allegations."  *Rothstein*, 708 F.3d at 94.

### 2.    *Pro Se* Litigants

A document filed *pro se* is to be liberally construed, and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," the court must grant leave to amend the complaint. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Under 28 U.S.C. § 1915A, a district court is required to review "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or employee of a governmental entity." 28 U.S.C. § 1915A. Upon review, a district court shall dismiss a prisoner complaint *sua sponte* if the complaint is "frivolous, malicious, or fails to state a claim upon which

relief may be granted; or seeks monetary relief from a defendant who is immune from such relief." *Id.* § 1915A(b). Moreover, pursuant to the *in forma pauperis* statute, a district court must dismiss a case if the court determines that the complaint "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." *Id.* § 1915(e)(2)(B).

### B.    Claims Challenging Plaintiff's Conviction

Plaintiff asserts the Court's jurisdiction under 42 U.S.C. § 1983, which allows plaintiffs to file lawsuits against state officials alleged to have violated constitutional rights. The Amended Complaint alleges that Defendants violated Plaintiff's constitutional rights in the course of his 1995 arrest and then pending criminal prosecution. At the time Plaintiff filed the Amended Complaint, the claims would likely have been barred pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), which requires federal courts to abstain from interfering in pending state court criminal prosecutions, absent some extraordinary circumstance such as bad faith prosecution, patently unconstitutional laws, or the lack of an adequate process in state court for protecting the rights of the accused. Although Plaintiff was subsequently convicted on those charges, he continues to assert that the circumstances of his arrest and prosecution violated his constitutional rights.

Plaintiff's Section 1983 claims that relate to witness statements, his initial arrest, his prosecution, and the presence or actions of his counsel are precluded by *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that "in order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a

13

federal court's issuance of a writ of habeas corpus." 512 U.S. at 486-87. "[A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005). Where a prisoner seeks to challenge his conviction or custody as violating his civil rights, he must rely on habeas corpus and not on a civil rights action pursuant to 42 U.S.C. § 1983. *See Preiser v. Rodriguez*, 411 U.S. 475, 488-90 (1973) ("Congress has determined that habeas corpus is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement, and that specific determination must override the general terms of § 1983.").

*Heck*'s favorable termination rule clearly applies in this case. Plaintiff was convicted at trial. He is directly attacking the legality of that conviction by challenging the circumstances of his arrest, the investigation, and the prosecution. He originally sought both damages and injunctive relief. These are precisely the types of claims that are precluded by *Heck* and its progeny. *See McDonough v. Smith*, 588 U.S. —, 139 S. Ct. 2149, 2156-57 (2019) (*Heck* applies to cases alleging fabricated evidence); *D.S. v. City of N.Y.*, 736 F. App'x 284, 287 (2d Cir. 2018) (*Heck* bars claims under the Sixth Amendment right to counsel); *Warren v. Fischl*, 674 F. App'x 71, 73 (2d Cir. 2017) (applying *Heck* to preclude prisoner's claim against police officers and prosecutors for unreasonable search and seizure and fabrication of evidence).

Plaintiff has not alleged that the conviction has been overturned or otherwise invalidated, despite his many efforts to challenge the conviction in state and federal courts. If Plaintiff were to succeed on his civil rights claims in this case, he would be calling into question the validity of the conviction, which has not been reversed or vacated. Accordingly, *Heck*'s favorable termination

14

rule precludes all of Plaintiff's Section 1983 claims related to his arrest and prosecution. This includes all of his claims related to probable cause for the arrest, identification procedures, witness statements, criminal investigation, grand jury proceedings, court orders, and access to and actions of counsel. These claims are therefore dismissed with prejudice.

### C.    Claims Alleging Delayed Medical Treatment

Plaintiff's Amended Complaint also suggests claims for inadequate medical attention and excessive force during his pretrial confinement. These claims are not barred by *Heck*, because success on these claims would not necessarily imply the invalidity of his conviction.

Plaintiff asserts that, on the morning of his arrest, he had not taken his anti-seizure medication and that he suffered seizures after his arrest. Although he was treated by EMS technicians at the 71st Precinct, he alleges that further treatment was delayed so that he could be placed into a line-up for possible identification by victims of his alleged assaults.

People who are imprisoned or detained have constitutionally protected rights to be held under humane conditions of confinement, including access to adequate food, clothing, shelter, medical care, and security. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Humane conditions of confinement post-conviction are guaranteed by the Eighth Amendment's prohibition against cruel and unusual punishment, while the Due Process Clause of the Fourteenth Amendment protects pretrial detainees held in state custody. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) ("A pretrial detainee's claims are evaluated under the Due Process Clause because pretrial detainees have not been convicted of a crime and thus may not be punished in any manner—neither cruelly and unusually nor otherwise. A detainee's rights are at least as great as the Eighth Amendment protections available to a convicted prisoner." (internal alterations, quotation marks, and citations omitted)). Inadequate medical treatment may give rise to a constitutional deprivation where a

prisoner alleges "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (establishing the standard applicable to treatment of convicted prisoners under the Eighth Amendment); *see Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (applying the same standard to pretrial detainees under the Fourteenth Amendment). A plaintiff must show that he was "actually deprived of adequate medical care," and that "the inadequacy in medical care is sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006). He must also show that the official "knows that inmates [or detainees] face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 825.

In this case, Plaintiff alleges only that he "was traumatized and dizzy from seizure attack," that EMS was involved, and that detectives told EMS technicians not to take him to the hospital immediately because detectives wanted to conduct identification procedures. These allegations are insufficient to show that Plaintiff was "actually deprived of adequate medical care," or that he suffered any serious or permanent injuries as a result of any action or inaction by police officers. *See Salahuddin*, 467 F.3d at 279-80. Thus, Plaintiff's claim for inadequate medical care while in custody following his arrest is dismissed without prejudice for failure to state a claim pursuant to 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B)(ii).

### D.    Claims Related to the Collection of Blood

Liberally construing the Amended Complaint, Plaintiff might be asserting four potential claims relating to the collection of his blood pursuant to a state court order as part of the DA's investigation into other crimes of which Plaintiff was a suspect. These potential claims are: (1) excessive force; (2) unconstitutional blood collection; (3) right to counsel; and (4) religious freedom.   The Court addresses each of these in turn.

1.    <u>Excessive Force</u>

The claim that Plaintiff most clearly seems to be asserting is one for excessive force related to the compelled collection of blood as authorized by a court order while Plaintiff was detained after being indicted. Plaintiff previously challenged the basis for issuance of the order, and the state courts found that probable cause existed to support the order.  Therefore, any further challenge to that order is precluded by *Heck*. However, the separate claim related to the amount of force used in collection of blood is reviewable by this Court. *See Luck v. Westchester Med. Ctr.*, No. 17-CV-9110 (NSR), 2020 WL 564635, at *8 (S.D.N.Y. Feb. 4, 2020) (holding that "insofar as Plaintiff seeks damages arising from injuries unrelated to her conviction and incarceration, resulting from the blood draw itself . . . , her claims are not barred"). However, Plaintiff has failed to state a claim based on the force used to collect the blood sample under either the Fourth or Fourteenth Amendments.[9]

"The Fourth Amendment guards the right of the people to be secure in their persons against unreasonable searches." *Mitchell v. Wisconsin*, 588 U.S. ---, 139 S. Ct. 2525, 2534 (2019) (internal quotation marks, alternations, and citations omitted). The reasonableness of the search "depends

---

[9] As another Judge of this Court has helpfully explained:

> There are three standards for excessive force depending on when the alleged violation occurred. If excessive force was allegedly used before arraignment, the Fourth Amendment standards govern. If the alleged violation occurs after arraignment but before conviction, then the Fourteenth Amendment applies. Allegations of excessive force occurring after conviction are subject to an Eighth Amendment analysis.

*Lemmo v. McKoy*, No. 08-CV-4264 (RJD), 2011 WL 843974, at *4 (E.D.N.Y. Mar. 8, 2011) (citations omitted). However, these clear demarcations are less clear here, given that Plaintiff was in pretrial custody after arraignment, but law enforcement was conducting the investigation, i.e., the blood draw, pursuant to a court order.

on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *Skinner v. Ry. Lab. Execs. Ass'n*, 489 U.S. 602, 619 (1989) (quotation marks and citation omitted). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotation marks and citations omitted). Thus, whether law enforcement officers' use of force is "excessive" must be judged by "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation," and recognizing that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

"Although blood tests are 'searches' under the Fourth Amendment, the Fourth Amendment only proscribes those searches that are unreasonable." *Luck*, 2020 WL 564635, at *12 (citations omitted) (dismissing plaintiff's Fourth Amendment claims because "[a] blood test at the direction of law enforcement with probable cause, exigent circumstances, and a reasonable examination procedure is not unreasonable"); *see also Schmerber v. California*, 384 U.S. 757, 771-72 (1966) (dismissing Fourth Amendment claim where the blood test was performed in a reasonable manner—"taken by a physician in a hospital environment according to accepted medical practices"); *Roe v. Marcotte*, 193 F.3d 72, 77 (2d Cir. 1999) ("[W]e need only decide whether the statutorily required blood test at issue comports with the Fourth Amendment's mandate that a search be reasonable."). "[L]aw enforcement may constitutionally obtain DNA samples pursuant to a valid warrant." *Simmons v. Mason*, No. 17-CV-8886 (KMK), 2019 WL 4525613, at *4

18

(S.D.N.Y. Sept. 18, 2019) (citing *Mitchell*, 139 S. Ct at 2544; *Birchfield v. North Dakota*, 579 U.S. 438, 136 S. Ct. 2160, 2172 (2016) (holding that a search warrant is the preferable basis for collection of blood, while identifying circumstances when warrantless blood draws are also constitutionally permissible)).

In this case, Plaintiff's blood was drawn pursuant to a court order. Since the officers and hospital personnel acted pursuant to a court order, his challenge is limited to whether the amount of force used to obtain the sample was reasonable. As discussed, the substantive due process component of the Fourteenth Amendment protects pretrial detainees from unconstitutional conditions of confinement, including the excessive use of force. *Darnell*, 849 F.3d at 29. "A pretrial detainee may establish a § 1983 claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate indifference to the challenged conditions." *Id*. In an excessive force claim, the plaintiff must show that (1) "the use of force is deliberate—i.e., purposeful or knowing"—or reckless; and (2) that the amount of force used is objectively unreasonable under the circumstances. *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015). "A court (judge or jury) cannot apply this standard mechanically. Rather, objective reasonableness turns on the facts and circumstances of each particular case." *Id.* at 397 (internal quotation marks and citations omitted). Some of the factors the court may consider include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id*.

By his own account, Plaintiff was subject to a court order to provide a DNA sample, yet refused to comply with the order. (*See* Am. Compl., at ECF 4-5 (Plaintiff told the officers he could

not give blood because it was Ramadan, and was "handcuffed and shackled up by correctional officers because [he] refused to comply").) As a result, multiple officers and/or hospital personnel had to restrain Plaintiff in order to forcibly collect his blood pursuant to the court authorization. (*Id*.) It was in that context that a "man in plain clothes" (presumably the hospital worker identified as Defendant "John Doe Medical Examiner") tried nine times to "catch a vein," which resulted in a needle breaking off and being left inside Plaintiff's arm. Neither Plaintiff's description of the circumstances surrounding the incident nor the injuries he sustained show that the amount of force was greater than necessary to overcome his resistance. Thus, Plaintiff has not shown that the amount of force used to collect his blood, pursuant to a court order, was unreasonable under the circumstances. *See Carter v. Huterson*, 831 F.3d 1104, 1109-10 (8th Cir. 2016) (affirming dismissal of plaintiff's Fourth Amendment excessive force claim where defendants conducted a warrantless collection of blood and plaintiff's injuries "resulted from his resistance to the defendants' efforts to obtain a blood sample"); *Larez v. Tafoya*, No. 99-CV-880 (MV) (KBM), 2000 WL 36739764, at *5 (D.N.M. July 25, 2000) ("It is well-settled law that officers are entitled to use force to secure the fingerprints or blood of an arrestee who is resisting. Only when the level of force is objectively unreasonable under all of the circumstances will the force amount to a constitutional violation."); *Duran v. Mandujano*, No. 15-CV-2745 (DMS) (WVG), 2017 WL 835534, at *6 (S.D. Cal. Jan. 31, 2017) (dismissing plaintiff's Fourth and Eighth Amendment excessive force claims, where defendants forcibly restrained plaintiff and collected his blood pursuant to a search warrant because plaintiff failed to show that the amount of force used was excessive when Plaintiff actively resisted), *R. & R. adopted*, 2017 WL 822187 (S.D. Cal. Mar. 2, 2017).

Accordingly, the Court finds that Plaintiff has failed to state a claim for excessive force under the Fourth and Fourteenth Amendments related to the court-ordered blood collection, so this claim is dismissed without prejudice pursuant to 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B)(ii).[10]

2.     Constitutionality of the Blood Draw Order

Plaintiff has not established that drawing his blood without his consent violated any other constitutional rights. Collecting blood for investigatory purposes does not violate the right to privacy or the right against self-incrimination. *See Winston v. Lee*, 470 U.S. 753, 762 (1985) ("[S]ociety's judgment [is] that blood tests do not constitute an unduly extensive imposition on an individual's personal privacy and bodily integrity."); *South Dakota v. Neville*, 459 U.S. 553, 563, (1983) ("The simple blood-alcohol test is . . . safe, painless, and commonplace."); *Schmerber*, 384 U.S. at 759-65 (dismissing Fourteenth Amendment claims related to a "sense of justice" and the privilege against self-incrimination, finding that "the blood test evidence, although an incriminating product of compulsion, was neither petitioner's testimony nor evidence relating to some communicative act or writing by the petitioner, it was not inadmissible on privilege grounds").

---

[10] In other contexts, courts have held that forcibly collecting blood from a person who is in custody pursuant to a conviction does not violate the Eighth Amendment. *See Amaker v. Goord*, No. 03-CV-1003, 2008 WL 2732699, at *2 (N.D.N.Y. July 10, 2008) (dismissing Eighth Amendment excessive force claims stemming from a blood draw, where plaintiff refused to cooperate with a court order and there was no evidence "that the officers applied more force than was necessary to restrain him and pry open his fist, actions which they were legally justified in performing"); *Hamilton v. Brown*, 630 F.3d 889, 897 (9th Cir. 2011) (analyzing incarcerated plaintiff's claim under Eighth Amendment and finding that plaintiff had not alleged that he was subjected to physical force in connection with the taking of the blood sample beyond being handcuffed and then restrained in a chair or the infliction of pain beyond the needle stick and the discomfort of the temporary restraint).

3.    Sixth Amendment Right to Counsel

To the extent Plaintiff is claiming that his Sixth Amendment right to counsel was violated because his lawyer was not present for the blood collection, that claim is barred by *Heck*, and, in any case, "Defendants were simply not required to take a sample of plaintiff's DNA in the presence of counsel. *Yusov v. Martinez*, No. 00-CV-5577 (NRB), 2000 WL 1593387, at *5 (S.D.N.Y. Oct. 24, 2000) (citing *United States v. Wade*, 388 U.S. 218, 227-28 (1967) (holding preparatory steps such as "systematized or scientific analyzing of the accused's fingerprints, blood sample, clothing, hair, and the like" are not "critical stages at which the accused has the right to the presence of his counsel")).

4.    Religious Freedom

To the extent that Plaintiff intended to state a religious freedom claim in his Amended Complaint, he failed to do so. *See Kravitz v. Purcell*, 87 F.4th 111, 128 (2d Cir. 2023) (in assessing free exercise claims in the state prison context, the court must assess: "(1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers legitimate penological objectives." (internal quotation marks, alterations, and citations omitted)); *Gardner-Alfred v. Fed. Rsrv. Bank of N.Y.*, No. 22-CV-1585 (LJL), 2023 WL 6214863, at *15 (S.D.N.Y. Sept. 25, 2023) (dismissing plaintiffs' challenge to vaccination requirements where plaintiffs failed to establish that their religious beliefs regarding the vaccine were sincerely held).   As the Ninth Circuit has explained:

> To prevail under [the Religious Freedom Restoration Act], defendant must first (1) articulate the scope of his beliefs, (2) show that his beliefs are religious, (3) prove that his beliefs are sincerely held and (4) establish that the exercise of his sincerely held religious beliefs is substantially burdened. If defendant successfully demonstrates all this, the government must then prove that the burden on

> defendant's exercise of religion is nonetheless permissible because (1) it furthers a compelling governmental interest (2) through the least restrictive means.

*United States v. Zimmerman*, 514 F.3d 851, 853 (9th Cir. 2007) (considering claim opposing blood draw for DNA testing).

The Court notes that, even if Plaintiff had sufficiently alleged a religious freedom claim, it is plausible to infer based on the allegations in the Amended Complaint that the State had a compelling interest in identifying the perpetrator of a series of violent crimes and that blood collection was the least restrictive means to accomplish that end (*see* Am. Compl., at ECF 8-9, 16 (court order obtained for Plaintiff's blood sample for DNA testing based on law enforcement suspicion that the same individual was responsible for a series of rapes with a similar modus operandi and based on one victim's description of her attacker)), which would constitute a defense to Plaintiff's religious freedom claim. *See Tabbaa v. Chertoff*, 509 F.3d 89, 106 (2d Cir. 2007) (applying the strict scrutiny test and finding that "fingerprinting and photographing[] was a narrowly tailored means of achieving the government's compelling interest in protecting against terrorism"); *United States v. Kavoukian*, No. 01-CR-017, 2006 WL 2039995, at *4 (N.D.N.Y. July 20, 2006) (finding that the "DNA Act does not violate [d]efendant's right to free exercise of religion under the First Amendment" where defendant "does not contend that the object of the DNA Act is to burden a religious practice and the courts have consistently found that the object of the DNA Act is to establish a federal DNA database to assist in the identification, arrest, and prosecution of criminals"); *Kaemmerling v. Lappin*, 553 F.3d 669, 680 (D.C. Cir. 2008) ("The DNA Act serves the compelling governmental interest in accurately and expeditiously solving past and future crimes in order to protect the public and ensure conviction of the guilty and exoneration of the innocent.").

Accordingly, Plaintiff's Free Exercise claim is dismissed without prejudice pursuant to 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B)(ii).

## III.   Leave to Amend

In light of the Court's duty to liberally construe the pleadings of *pro se* litigants, Plaintiff is granted leave to amend the Amended Complaint, limited to his claims for inadequate medical treatment, excessive force, and religious freedom. Should he choose to amend, he must name only the individuals whom he believes to have been directly responsible for the alleged deprivations of his constitutional rights. Even if plaintiff does not know the names of these individuals, he may identify each of them as John Doe Correctional Officer or Jane Doe Hospital Worker or the like and provide any identifying information.[11] He must also provide specific dates and locations for each incident and describe what each individual did or failed to do in violation of his constitutional rights.

## CONCLUSION

For the reasons set forth above, Plaintiff's Rule 60(b) motion for reconsideration of the Court's April 21, 1997 Order is denied. In belated response to the May 13, 1999 Mandate of the Court of Appeals for the Second Circuit, the Court has considered the claims against the remaining Defendants and finds that most of Plaintiff's claims are barred by *Heck v. Humphrey* and must be dismissed pursuant to 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B)(ii). The Court finds that amendment of these claims would be futile, unless Plaintiff's conviction is terminated in his favor. However, Plaintiff's claims alleging inadequate medical treatment, excessive force, and religious

---

[11] The Court is cognizant of the difficulties in identifying and serving proper defendants so many years after the events.

freedom are dismissed pursuant to 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B)(ii), with leave to amend these claims.

Plaintiff is granted thirty (30) days within which to file a second amended complaint limited to his claims for inadequate medical treatment, excessive force, and religious freedom and naming only the defendants involved in these claims. The submission must be captioned "Second Amended Complaint" and bear the same docket number as this order. If Plaintiff fails to file a second amended complaint within 30 days, the action shall be dismissed without prejudice and judgment shall enter. No summons shall issue at this time, and all further proceedings shall be stayed for 30 days.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is requested to mail a copy of this Order to Plaintiff and note the mailing on the docket.

SO ORDERED.

*/s/ Pamela K. Chen*

PAMELA K. CHEN
United States District Judge

Dated: Brooklyn, New York
        March 29, 2024