96-CV-1465 (PKC) (LB)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

TONY HARRISON,

Plaintiff,

-*against*-

CORRECTIONAL OFFICER HODGE; CORRECTIONAL
OFFICER STEWARD; DETECTIVE SANCHEZ;
DETECTIVE SGT. KENNEDY; and DETECTIVE
MULLHALL,

Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

### MURIEL GOODE-TRUFANT

*Corporation Counsel of the City of New York*
*Attorney for Defendants Detective Sanchez,*
*Detective Kennedy, and Detective*
*Mullhall*
*100 Church Street*
*New York, N.Y. 10007*

*By:  Joseph Zangrilli*
*Tel: (212) 356-2657*

*Michael Futral & Jack McLaughlin*
*Tel: (212) 356-1643/2670*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT .......................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 1

STANDARD OF REVIEW .................................................................................................. 4

ARGUMENT

    POINT I

        PLAINTIFF'S CLAIM FOR FOR INADEQUATE MEDICAL TREATMENT SHOULD BE DISMISSED . ................................................................................ 5

        A.  Plaintiff Did Not Suffer A Sufficiently Serious Deprivation Of Medical Care ................................................. 6

            (a)  *Plaintiff Was Not Actually Deprived Of Adequate Medical Care* ........................................... 6

            (b)  *Any Inadequacy In Medical Care Was Not Sufficiently Serious* ........................................... 7

        B.  Plaintiff Fails To Establish That Defendants Had A Sufficiently Culpable State Of Mind ........................ 9

        C.  Plaintiff Allege Personal Involvement By Individual Defendants In The Alleged Medical Deprivation ..................................................................... 10

    POINT II

        PLAINTIFF PLAINTIFF'S EXCESSIVE FORCE CLAIM SHOULD BE DISMISSED BECAUSE THE BLOOD DRAW AND AMOUNT OF FORCE USED TO CONDUCT THE BLOOD DRAW WERE REASONABLE ........................................................... 11

        A.  Plaintiff's Blood Draw Was Reasonable Under The Fourth Amendment ................................................. 12

**Page**

B.  The Amount Of Force Used In Conducting Plaintiff's Blood Draw Was Not Objectively Unreasonable Under The Fourth Or Fourteenth Amendment ................................................................... 13

C.  Plaintiff Fails To Allege Personal Involvement By Individual Defendants In The Alleged Excessive Use Of Force ..................................................... 15

POINT III

DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY FROM PLAINTIFF'S CLAIMS ........................................ 16

A.  Legal Standard For Qualified Immunity ............................................ 16

B.  Defendants Are Entitled To Qualified Immunity On The Deliberate Indifference To Medical Needs Claim ................................................................. 17

C.  Defendants Are Entitled To Qualified Immunity On The Excessive Force Claim ......................................... 19

CONCLUSION ................................................................................. 20

CERTIFICATION ............................................................................. 21

**Statutes**                                                                 **Pages**

<u>**TABLE OF AUTHORITIES**</u>

<u>**Cases**</u>                                                              **Pages**

*Ashcroft v. al-Kidd*,
   563 U.S. 731 (2011) ................................................................ 16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................ 4, 11

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................ 4

*Breithaupt v. Abram*,
   352 U.S. 432 (1957) ................................................................ 12

*Brosseau v. Haugen*,
   543 U.S. 194 (2004) ................................................................ 17

*Bumpus v. Canfield*,
   495 F. Supp. 2d 316 (W.D.N.Y. 2007) ............................... 8-9

*Campbell v. City of Yonkers*,
   No. 19 Civ. 2117 (VB), 2020 U.S. Dist. LEXIS 169258 (S.D.N.Y. Sept. 16, 2020) ............... 7

*Carter v. Huterson*,
   831 F.3d 1104 (8th Cir. 2016) ...................................... 13-14

*Charles v. Orange Cnty.*,
   925 F.3d 73 (2d Cir. 2019) ..................................................... 7

*Chavis v. Chappius*,
   618 F.3d 162 (2d Cir. 2010) ................................................... 4

*Constantino v. DiStefano*,
   No. 18-cv-5730 (BMC)(LB), 2020 U.S. Dist. LEXIS 9855 (E.D.N.Y. Jan. 21, 2020) ....... 8, 9

*Darby v. Greenman*,
   14 F.4th 124 (2d Cir. 2021) ................................................. 10

*Darnell v. Pineiro*,
   849 F.3d 17 (2d Cir. 2017) ................................................... 18

*Davila v. Gutierrez*,
   330 F. Supp. 3d 925 (S.D.N.Y. 2018) ................................... 5

*Davila v. UConn Med. Ctr.*,
   353 F. App'x 490 (2d Cir. 2009) ......................................... 7

iii

**Page**

*Duran v. Mandujano*,
No. 15-CV-2745 (DMS) (WVG), 2017 U.S. Dist. LEXIS 229908 (S.D. Cal. Jan. 31, 2017)
.................................................................................................................................... 14

*Est. of Richards* by Stephens *v. City of New York*,
No. 18 Civ. 11287 (MKV), 2024 U.S. Dist. LEXIS 136610 (S.D.N.Y. July 31, 2024) ...... 6-7

*Estelle v. Gamble*,
429 U.S. 97 (1976) ....................................................................................................... 5-6

*Evans v. Bonner*,
196 F. Supp. 2d 252 (E.D.N.Y. 2002) ............................................................................ 9

*Farmer v. Brennan*,
511 U.S. 825 (1994) ......................................................................................... 6, 10, 17, 18

*Farrell v. Burke*,
449 F.3d 470 (2d Cir. 2006) .......................................................................................... 15

*Ferguson v. Cai*,
No. 11 Civ. 6181 (PAE), 2012 U.S. Dist. LEXIS 97049 (S.D.N.Y. Jul 12, 2012) ................. 8

*Graham v. Connor*,
490 U.S. 386 (1989) ................................................................................................. 11, 13

*Harrison v. Barkley*,
219 F.3d 132 (2d Cir. 2000) ....................................................................................... 7, 8

*Harrison v. Senkowski*,
247 F.R.D. 402 (E.D.N.Y. 2008) ............................................................................. 1, 2, 3

*Hayes v. Perotta*,
751 F. Supp. 2d 597 (S.D.N.Y. 2010) ........................................................................... 5

*In re Harrison*,
638 N.Y.S.2d 314 (App. Div. 1996) ............................................................................... 3

*Johnson v. City of New York*,
No. 15 Civ. 8195, 2017 U.S. Dist. LEXIS 81359 (S.D.N.Y. May 26, 2017) ............ 10, 11, 16

*Jones v. Parmley*,
714 F. App'x 42 (2d Cir. 2017) .................................................................................... 10

*Kingsley v. Hendrickson*,
576 U.S. 389 (2015) ..................................................................................................... 13

*L-7 Designs, Inc. v. Old Navy, LLC*,
647 F.3d 419 (2d Cir. 2011) ........................................................................................... 5

**Page**

*Larez v. Tafoya*,
    No. 99-CV-880 (MV) (KBM), 2000 U.S. Dist. LEXIS 24311 (D.N.M. July 25, 2000) ....... 14

*Lemmo v. McKoy*,
    No. 08-CV-4264 (RJD), 2011 U.S. Dist. LEXIS 23075 (E.D.N.Y. Mar. 8, 2011) ............... 11

*Lombardo v. City of St. Louis*,
    Missouri, 594 U.S. 464 (2021) ........................................................................................ 13

*Luck v. Westchester Med. Ctr.*,
    No. 17-cv-9110 (NSR), 2020 U.S. Dist. LEXIS 18988 (S.D.N.Y. Feb. 4, 2020) .................. 12

*Lynch v. Ackley*,
    811 F.3d 569 (2d Cir. 2016) .......................................................................................... 17

*Mullenix v. Luna*,
    577 U.S. 7 (2015) (per curiam) ..................................................................................... 17

*Pearson v. Callahan*,
    555 U.S. 223 (2009) ..................................................................................................... 16

*People v. Harrison*,
    681 N.Y.S.2d 38 (App. Div. 1998) ................................................................................... 3

*Press v. Primavera*,
    685 F. Supp. 3d 216 (S.D.N.Y. 2023) ............................................................................. 5

*Rasmussen v. City of New York*,
    766 F. Supp. 2d 399 (E.D.N.Y. 2011) .......................................................................... 6, 7

*Salahuddin v. Goord*,
    467 F.3d 263 (2d Cir. 2006) ........................................................................................... 6

*Schlosser v. Droughn*,
    No. 3:19-cv-1445 (SRU), 2020 U.S. Dist. LEXIS 1287 (D. Conn. Jan. 6, 2020) ................... 8

*Schmerber v. California*,
    384 U.S. 757 (1966) ........................................................................................... 12, 13, 19

*Skinner v. Ry. Lab. Executives' Ass'n*,
    489 U.S. 602 (1989) ..................................................................................................... 12

*Smith v. Carpenter*,
    316 F.3d 178 (2d Cir. 2003) ........................................................................................... 8

*Stephenson v. Doe*,
    332 F.3d 68 (2d Cir. 2003) ........................................................................................... 19

**Page**

*United States v. Knights*,
 534 U.S. 112 (2001) ................................................................................. 12

*Weyant v. Okst*,
 101 F.3d 845 (2d Cir. 1996) ...................................................................... 6

*White v. Pauly*,
 580 U.S. 73 (2017) (per curiam) ......................................................... 16-17

*Youngblood v. Artus*,
 No. 10-cv-752 (MAD) (DRH), 2011 U.S. Dist. LEXIS 145470 (N.D.N.Y. Dec. 19, 2011) ... 8

**Statutes**

42 U.S.C. § 1983 ........................................................................... 1, 10, 15

Fed. Rule Civ. Pro. 12(b)(6) ..............................................................1, 4, 11

## PRELIMINARY STATEMENT

Plaintiff Tony Harrison was arrested in connection to a series of rapes that terrorized Brooklyn in 1995. At the Precinct following his arrest, Plaintiff, having forgotten to take his medication before stalking his victim, passed out and woke up dizzy. After being indicted, Assistant District Attorney ("ADA") Nanci Slater obtained a court order for Plaintiff's blood sample for DNA testing to determine his responsibility for a rape with a similar modus operandi.

Plaintiff brings this action challenging the medical treatment he received at the police precinct and the force used to obtain his blood sample at Kings County Hospital. Plaintiff brings claims under 42 U.S.C. § 1983 for delayed medical treatment against defendants Detectives Sanchez, Sergeant Kennedy, and Mullhall, and excessive force against Detectives Sanchez and Mullhall and Correction Officers Hodge and Steward (collectively "Defendants"). Both of those claims are legally unfounded and should be dismissed.

Defendants now move to dismiss Plaintiff's Second Amended Complaint ("SAC"), pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(6). The SAC should be dismissed with prejudice on the grounds that: (1) all of Plaintiff's claims are deficient; (2) Plaintiff was provided with proper medical care and did not have a sufficiently serious medical need; (3) both Plaintiff's blood draw and the amount of force used to conduct the blood draw were reasonable; and (4) Defendants are entitled to qualified immunity.

## STATEMENT OF FACTS

At approximately 3:00 a.m. on March 4, 1995, Plaintiff followed Sonia Allin home from a subway stop in Brooklyn, crept into her home, and raped her at knife point. (*See Harrison v. Senkowski*, 247 F.R.D. 402, 404 (E.D.N.Y. 2008); Docket Sheet for *Harrison v. Senkowski*, 00-cv-6830 (JBW), ECF No. 42.) He then dragged her up five flights of stairs and raped her again. (*Id.*) Weeks later, at approximately 3:00 a.m. on June 23, Plaintiff stalked Shirley Carel home from

the same subway station, followed her inside her building, and sodomized her in the stairwell at knifepoint. (*Id.*)

Following these rapes, the New York City Police Department ("NYPD") began surveilling the area.[1] (*Id.*) On September 16, 1995, at 5:10 a.m., Plaintiff—while stalking Sonia Rodriguez—was arrested by a team of NYPD officers, which included Defendant Detectives Sanchez, Sergeant Kennedy, and Mullhall ("Defendant Detectives"). (*See* SAC at 2; *Harrison*, 247 F.R.D. at 404.)

After his arrest, Defendant Detectives transported Plaintiff to the NYPD 71st Precinct and placed him in a holding cell. (SAC at 2.) Upon arrival, Plaintiff began to "get sick" as he had forgotten to take his medication for his "mild seizure disorder." (SAC at 2). According to Plaintiff's First Amended Complaint ("FAC"),[2] while at the Precinct, he "asked an officer if [he] could call his mother because [he] needed [his] medication," and "was allowed to make [his] phone call." (*See* FAC at 3; *see also* ECF No. 43 at 2.) Despite this, Plaintiff "paased out [sic]" and "woke up traumatized, dizzy and … spitting saliva all over the place." (SAC at 2.) In response, Defendant Detectives called Emergency Medical Services ("EMS"), and EMS workers, who were present when Plaintiff woke up, proposed he be taken to the hospital. (SAC at 3.) Detectives told the EMS workers to wait, as they needed to first conduct a line-up. (SAC at 3.)

Months later, after Plaintiff was indicted for the rape and aborted incident that occurred on June 23 and September 16, respectively, ADA Slater sought a court order to obtain a blood sample from Plaintiff for DNA testing in relation to the March 4th attack. (*See* SAC at 4; ECF Nos. 8-9, 43; *Harrison*, 247 F.R.D. at 404-05.) On December 22, 1994, the state trial court found that

---

[1] *See also* Ronald Smothers, Suspect Is Arrested in Brooklyn Rapes, N.Y. TIMES (Sept. 17, 1995), https://www.nytimes.com/1995/09/17/nyregion/suspect-is-arrested-in-brooklyn-rapes.html.

[2] *See* ECF No. 8.

probable cause existed to require Plaintiff to provide a blood sample for comparison with evidence obtained from the March 4th attack on Ms. Allin. (*See* SAC at 5; ECF No. 20-4 at 10.) [3]

On February 15, 1996,[4] subject to the court order, Plaintiff was transported to Kings County Hospital for his blood sample to be taken. (SAC at 4; *see also* ECF No. 43.) However, at the Hospital, Plaintiff "refused to comply" and told Detectives Sanchez and Mullhall and Correction Officers Hodge and Steward that he would not give them his blood. (*See* SAC at 4; ECF No. 8 at 4; ECF No. 43 at 19-20.) "As a result, multiple officers and/or hospital personnel had to restrain Plaintiff" using handcuffs and shackles to forcibly collect his blood pursuant to the court authorization.[5] (*See* ECF No. 43 at 19-20 (citing FAC at 4-5); SAC at 4.) Due to Plaintiff's refusal to comply, the phlebotomist struggled to "catch a vein," necessitating multiple attempts to draw his blood. (SAC at 4; ECF No. 43 at 4, 19-20; FAC at 5-6.) It was in this context that a fragment of the phlebotomy needle broke off in Plaintiff's arm. (SAC at 4; ECF No. 43 at 4, 20.)

---

[3] Plaintiff's SAC incorporates a particular portion of the Court's March 29, 2024 Order (ECF No. 43), which notes that "probable cause existed to grant the order for drawing blood and DNA testing." *See also* Plaintiff's FAC (ECF No. 8 at 4) (admitting his blood collection was pursuant to a court order); *Harrison*, 247 F.R.D. at 405 (noting Plaintiff's blood collection was pursuant to a court order with probable cause); *People v. Harrison*, 681 N.Y.S.2d 38, 38 (App. Div. 1998) (holding that the state trial court "properly granted the People's request to obtain a blood sample from the defendant for the purpose of performing DNA testing, as probable cause existed to believe that he had raped another victim on an earlier date"); *In re Harrison*, 638 N.Y.S.2d 314, 314 (App. Div. 1996) (denying Harrison's petition to prohibit "enforcing an order … of the Supreme Court, dated December 22, 1995, authorizing the taking of [his] blood sample.")

[4] Plaintiff alleges that he was taken to Kings County Hospital on "the 25th day of 1996." (*See* SAC at 4.) However, according to his earlier filings and this Court's March 29, 2024 Order, "Plaintiff was taken to Kings County Hospital on February 15, 1995." (*See* ECF No. 43 at 4.)

[5] Plaintiff, at the time, was repeatedly described as being at least six feet tall and weighing approximately 220 pounds. (*See* ECF No. 20-1 at 2, 86; 20-2 at 76, 86; *Harrison*, 247 F.R.D. at 404.)

## STANDARD OF REVIEW

When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That tenet, however, is "inapplicable to legal conclusions." *Id*. Hence, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

While it is not necessary for a complaint to contain detailed factual allegations, the complaint must nonetheless contain sufficient factual material to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Hence, a pleading that merely contains "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" will not suffice. *Iqbal*, 556 U.S. at 678. Similarly, "naked assertions devoid of further factual enhancement[s]" are insufficient. *Twombly*, 550 U.S. at 557. "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions … a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

Courts construe a *pro se* plaintiff's complaint "liberally and interpret it to raise the strongest arguments that it suggests." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal marks omitted). "Even in a *pro se* case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (internal quotation marks omitted). Thus, although a Court is "obligated to draw the most favorable inferences" that the complaint supports, it "cannot invent factual allegations that [the plaintiff] has not pled." *Id.* "[D]ismissal of a pro se complaint is appropriate where a plaintiff has clearly failed to meet the

minimum pleading requirements." *Davila v. Gutierrez*, 330 F. Supp. 3d 925, 934 (S.D.N.Y. 2018) (internal marks omitted).

On a motion to dismiss, "the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'" *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009)); *see also Press v. Primavera*, 685 F. Supp. 3d 216, 224 (S.D.N.Y. 2023) ("Courts in this District routinely take judicial notice, on a motion to dismiss, of … filings made on court dockets.").

In particular, where a plaintiff's complaint "omits a number of material facts," courts may take judicial notice from other "court proceedings (including transcripts and judicial opinions)." *Hayes v. Perotta*, 751 F. Supp. 2d 597, 599 (S.D.N.Y. 2010) (citing *In re Morgan Stanley Info. Fund Sec. Litig.,* 592 F.3d 347, 354 n.5 (2d Cir. 2010); *Staehr v. Hartford Fin. Servs. Grp., Inc.,* 547 F.3d 406, 425 (2d Cir. 2008)).

"A complaint is [also] deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *L-7 Designs, Inc.*, 647 F.3d at 422 (quoting *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004)).

## ARGUMENT

### POINT I

### PLAINTIFF'S CLAIM FOR INADEQUATE MEDICAL TREATMENT SHOULD BE DISMISSED

To sufficiently plead a claim for inadequate medical treatment under the Fourteenth Amendment, a plaintiff must plausibly allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976)

(establishing the standard applicable to treatment of convicted prisoners under the Eighth Amendment); *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (applying the same standard to pretrial detainees under the Fourteenth Amendment). To do so, a plaintiff must establish two elements: (1) that, in objective terms, the deprivation of medical care was "'sufficiently seriously,'" *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 844, (1994)); and (2) the defendant acted or failed to act with a "sufficiently culpable state of mind," *Farmer*, 511 U.S. at 834 (citations omitted). Here, Plaintiff fails to plausibly allege that any deprivation of medical care was sufficiently serious or that any of the Defendants had a sufficiently culpable state of mind.

**A.     Plaintiff Did Not Suffer A Sufficiently Serious Deprivation Of Medical Care.**

A deprivation in medical care is sufficiently serious if (1) the detainee "was actually deprived of adequate medical care," and (2) "the inadequacy in medical care is sufficiently serious." *Salahuddin*, 467 F.3d at 279-80.

**(a) *Plaintiff Was Not Actually Deprived Of Adequate Medical Care.***

With respect to whether a plaintiff suffers an actual deprivation, it is well established that an "official's duty is only to provide reasonable care." *Id.* at 279 (citing *Farmer*, 511 U.S. at 844-47). Thus, "officials who act reasonably . . . cannot be found liable," as only officials who fail to "'to take reasonable measures' in response to a medical condition'" may be. *Id.* at 280 (quoting *Farmer*, 511 U.S. at 847).

To that end, police officers are not obligated to play doctor. Courts in this Circuit have routinely held that "[t]he obligation of the police to provide necessary medical treatment upon request by a detainee or based upon the obvious need for treatment is satisfied when the police summon medical assistance." *See Rasmussen v. City of New York*, 766 F. Supp. 2d 399, 414 (E.D.N.Y. 2011) (citations omitted); *see also Est. of Richards by Stephens v. City of New York*,

No. 18 Civ. 11287 (MKV), 2024 U.S. Dist. LEXIS 136610, at *39 (S.D.N.Y. July 31, 2024) (holding the same); *Campbell v. City of Yonkers*, No. 19 Civ. 2117 (VB), 2020 U.S. Dist. LEXIS 169258, at *29 (S.D.N.Y. Sept. 16, 2020) (same). Indeed, "the only action the police are obligated to take upon a detainee's assertion of medical needs is . . . to obtain the intervention of a qualified medical professional as quickly as the detainee appears to need it." *Rasmussen*, 766 F. Supp. 2d at 414; *see also Davila v. UConn Med. Ctr.*, 353 F. App'x 490, 493 (2d Cir. 2009) (holding that plaintiff-appellant was not actually deprived of adequate medical care he received the "appropriate and reasonable care given his actual medical condition."). Thus, even in "extreme" situations, officers "have no duty to provide that assistance themselves." *Rasmussen*, 766 F. Supp. 2d at 414.

Here, by Plaintiff's own account, Defendant NYPD Detectives summoned trained emergency medical technicians ("EMTs"), who had arrived and were already evaluating Plaintiff around the time he "woke up." (SAC at 3.) Further, as this Court has already noted, Plaintiff's prior filings attest to the fact that Defendant Detectives allowed Plaintiff to "call [his] mother to request [his] medication." (*See* ECF No. 43 at 2.) On this basis alone, Defendant Detectives satisfied their obligations and did not deprive Plaintiff of adequate medical care, and any delay of instantaneous care falls far short of the days generally required to maintain such a claim, *see infra* Point I.A(b).

Thus, Plaintiff was not actually deprived of adequate medical care, but received appropriate and reasonable care in light of his particular situation. Therefore, Plaintiff's failure to satisfy this element alone is sufficient to dismiss his claim for a deprivation or delay of adequate medical care.

### (b) *Any Inadequacy In Medical Care Was Not Sufficiently Serious.*

Inadequacy in medical care is "sufficiently serious" where there is "a condition of urgency," such as one that "may produce death, degeneration, or extreme pain." *Charles v. Orange Cnty.*, 925 F.3d 73, 86 (2d Cir. 2019); *see also Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir.

2000) (holding that the medical need must be a "sufficiently serious" condition that "could result in further significant injury or the unnecessary and wanton infliction of pain."). Relatedly, where medical treatment was provided, but a complaint alleges that treatment was delayed or inadequate, the relevant concern is not the underlying medical condition, but the "particular risk of harm faced by a [pretrial detainee] due to the challenged deprivation of care." *See Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003) (explaining that "the District Court properly focused on the particular risks attributable to the missed HIV medication, rather than on [the plaintiff-appellant's] HIV-positive status alone, in evaluating the . . . fail[ure] to demonstrate a serious medical need.").

The Second Circuit and every district court within it have consistently found that missing a single dose—or even several doses—of medication is not sufficiently serious or actionable. *See, e.g., id.* at 188–89 (finding no constitutional violation because of two alleged episodes of missed HIV medication where the plaintiff failed to present evidence of permanent or on-going harm or an unreasonable risk of future harm stemming from missed doses); *Constantino v. DiStefano*, No. 18-cv-5730 (BMC)(LB), 2020 U.S. Dist. LEXIS 9855, at *15 (E.D.N.Y. Jan. 21, 2020) (dismissing deliberate indifference claim where plaintiff missed a single dose of a medication); *Schlosser v. Droughn*, No. 3:19-cv-1445 (SRU), 2020 U.S. Dist. LEXIS 1287, at *5 (D. Conn. Jan. 6, 2020) (same); *Youngblood v. Artus*, No. 10-cv-752 (MAD) (DRH), 2011 U.S. Dist. LEXIS 145470, at *18 (N.D.N.Y. Dec. 19, 2011) (dismissing deliberate indifference claim where the defendant "failed to give [the plaintiff] a single dose of his seizure medication" and the plaintiff did not specify resulting harm caused); *Ferguson v. Cai*, No. 11 Civ. 6181 (PAE), 2012 U.S. Dist. LEXIS 97049, at *12 (S.D.N.Y. Jul 12, 2012) (dismissing deliberate indifference claim where a single missed dose of insulin caused temporary blindness, pain, and leg swelling); *Bumpus v. Canfield*, 495 F. Supp. 2d 316, 322 (W.D.N.Y. 2007) (dismissing deliberate indifference claim

8

based on "a delay of several days" in providing plaintiff his medication absent evidence "the delay gave rise to a significant risk of serious harm"); *Evans v. Bonner*, 196 F. Supp. 2d 252, 256 (E.D.N.Y. 2002) (holding that an untimely provision of HIV medication did "not rise to a 'sufficiently serious' level). That a missed dose of medication is not actionable is true "even where the effect of missing a single dose is far more severe than plaintiff claims to have experienced." *See Constantino*, 2020 U.S. Dist. LEXIS 9855, at *5.

Here, Plaintiff alleges that, as a result of missing a single dose of medication for his "mild seizure disorder," he passed out and "woke up traumatized, dizzy," and "spitting saliva all over the place." (*See* SAC at 2.)  Thus, whether analyzed as a denial or delay of adequate medical care, Plaintiff's claim fails. As a denial of care claim, Plaintiff's claim fails because, by his own account, he did not suffer from a serious underlying medical condition, but only from a "mild … disorder," which is a far cry from death, degeneration, or extreme pain. Similarly, as a delay of care claim, Plaintiff's claim fails as the alleged risks attributable to his delayed or missed dosage of medication—feeling "dizzy" and "spitting saliva"—fall short of the requisite permanent or on-going harm or unreasonable risk of future harm needed to maintain a claim.

Thus, neither the alleged injury nor the risk of harm from missing a single dose of medication rises to a sufficiently serious level. Moreover, Plaintiff's underlying medical condition was, by his own account, only "mild." As a result, Plaintiff fails to establish that any inadequacy in medical care was sufficiently serious. Therefore, on this basis, too, Plaintiff's inadequate medical care claim fails and should be dismissed.

**B.     Plaintiff Fails To Establish That Defendants Had A Sufficiently Culpable State Of Mind.**

An official has a sufficiently culpable state of mind when he "knows that the [detainees] face a substantial risk of serious harm and disregards that risk by failing to take reasonable

measures to abate it." *Farmer*, 511 U.S. at 825. To adequately plead this element, a detainee "can allege either that the defendants *knew* that failing to provide the complained of medical treatment would pose a substantial risk to his health or that the defendants *should have known* that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health." *Darby v. Greenman*, 14 F.4th 124, 128 (2d Cir. 2021) (emphasis in the original).

Here, even assuming, *arguendo*, that Plaintiff faced a substantial risk of serious harm, as explained in Point I.A, *see supra*, the Defendants took reasonable measures to abate any apparent or potential harm by calling EMTs and allowing Plaintiff to contact his mother so he could obtain his seizure medication. Thus, Plaintiff's allegations fail to establish that the Defendant Detectives possessed any *mens rea* that could plausibly be construed as disregarding a substantial risk of harm. Therefore, Plaintiff's inadequate medical care claim must be dismissed.

## C.    Plaintiff Fails To Allege Personal Involvement By Individual Defendants In The Alleged Medical Deprivation.

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Jones v. Parmley*, 714 F. App'x 42, 46 (2d Cir. 2017) (summary order) (quoting *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006)). A plaintiff must demonstrate that each named defendant was personally involved in the constitutional violation alleged. *Id.* "As a corollary to the personal-involvement rule, complaints that . . . 'fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim.'" *Johnson v. City of New York*, No. 15 Civ. 8195, 2017 U.S. Dist. LEXIS 81359, at *26 (S.D.N.Y. May 26, 2017) (quoting *Adamou v. Cty. of Spotsylvania, Va.*, No. 12 Civ. 7789 (ALC), 2016 U.S. Dist. LEXIS 32505, at *11 (S.D.N.Y. Mar. 14, 2016)) (collecting cases).

Here, Plaintiff's allegations regarding the alleged delay in medical treatment employ vague, collective references to "Defendant Detectives" and "these detectives" without differentiating the specific conduct of Detective Sanchez, Detective Sergeant Kennedy, or Detective Mullhall. (SAC at 3.) Plaintiff generally alleges that "Defendant Detectives" summoned Emergency Medical Services but instructed EMS workers to wait while they conducted a lineup. (*Id.*) However, Plaintiff fails to specify which individual defendant made the decision to delay medical treatment, communicated with EMS personnel, or was otherwise personally involved in the alleged constitutional deprivation, as required by well-established law. *See, e.g.*, *Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Because Plaintiff has failed to allege facts establishing the personal involvement of each defendant in the alleged medical deprivation, this claim fails and should be dismissed pursuant to Rule 12(b)(6).

## POINT II

### PLAINTIFF'S EXCESSIVE FORCE CLAIM SHOULD BE DISMISSED BECAUSE THE BLOOD DRAW AND THE AMOUNT OF FORCE USED TO CONDUCT THE BLOOD DRAW WERE REASONABLE

Excessive force allegedly used prior to arraignment is analyzed under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 394 (1989); *Lemmo v. McKoy*, No. 08-CV-4264 (RJD), 2011 U.S. Dist. LEXIS 23075, at *10 (E.D.N.Y. Mar. 8, 2011). In contrast, excessive force allegedly used after arraignment but before conviction is analyzed under the Fourteenth Amendment. *Lemmo*, 2011 U.S. Dist. LEXIS 23075, at *10 (citations omitted). Here, whether analyzed under the Fourth or Fourteenth Amendment, Plaintiff's excessive force claim fails

11

because the blood draw and the amount of force used to conduct it were objectively reasonable in light of the facts and circumstances.

## A.    Plaintiff's Blood Draw Was Reasonable Under The Fourth Amendment.

Blood tests are searches under the Fourth Amendment. *See Skinner v. Ry. Lab. Executives' Ass'n*, 489 U.S. 602, 618 (1989). "The Fourth Amendment's touchstone is reasonableness, and a search's reasonableness is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed to promote legitimate governmental interests." *United States v. Knights*, 534 U.S. 112, 112-13 (2001) (citations omitted).

"A blood test at the direction of law enforcement with probable cause, exigent circumstances, and a reasonable examination procedure is not unreasonable." *Luck v. Westchester Med. Ctr.*, No. 17-cv-9110 (NSR), 2020 U.S. Dist. LEXIS 18988, at *30-32 (S.D.N.Y. Feb. 4, 2020) (citations omitted) (dismissing a plaintiff's Fourth Amendment claim where the blood draw was conducted with probable cause and thus reasonable); *see also Schmerber v. California*, 384 U.S. 757, 759 (1966) (dismissing Fourth Amendment claim where the blood test was performed in a reasonable manner—"taken by a physician in a hospital environment according to accepted medical practices"); *Breithaupt v. Abram*, 352 U.S. 432, 452-53 (1957) (dismissing Fourth Amendment claim against a blood draw and explaining that community living "requires" police to use all available "scientific methods of crime detection lest the public go unprotected.").

Here, Plaintiff's blood was drawn by a medical professional, pursuant to a court order supported by probable cause. (*See* SAC at 5 (incorporating a particular portion of the Court's March 29, 2024 Order (ECF No. 43), which notes that "probable cause existed to grant the order for drawing blood and DNA testing"); *see also* ECF No. 8 at 4 (Plaintiff admitting his blood collection was pursuant to a court order.)) The minor intrusion of a court-ordered blood draw

supported by probable cause to determine Plaintiff's involvement in a series of rapes that terrorized Brooklyn far outweighs Plaintiff's Fourth Amendment interests. Thus, Plaintiff's blood draw was reasonable.

**B.    The Amount Of Force Used Against Plaintiff In Conducting His Blood Draw Was Not Objectively Unreasonable Under The Fourth Or Fourteenth Amendment.**

Regardless of "whether the Fourth or Fourteenth Amendment provides the proper basis for a claim of excessive force . . . a court must determine whether the force was objectively unreasonable in light of the 'facts and circumstances' of each particular case." *Lombardo v. City of St. Louis, Missouri*, 594 U.S. 464, 467 n.2 (2021) (internal quotation marks omitted; citing *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)).

Determining whether the force used to effect a search or seizure was objectively reasonable "turns on the facts and circumstances of each particular case." *See Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015); *Graham*, 490 U.S. at 396-97 (quotations omitted). Courts "cannot apply this standard mechanically," *Kingsley*, 576 U.S. at 397, as it "requires a careful balancing of the nature and quality of the intrusion … against the countervailing governmental interests at stake," *Graham*, 490 U.S. at 396 (citations omitted; cleaned up).

However, common factors courts consider include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley*, 576 U.S. at 397.

In general, a blood test "involves virtually no risk, trauma, or pain." *Schmerber*, 384 U.S. at 771. As such, courts across the country generally hold that excessive force claims are not actionable where a plaintiff's injuries are the result of their own resistance during a blood test. *See*

13

*e.g., Carter v. Huterson*, 831 F.3d 1104, 1109-10 (8th Cir. 2016) (affirming dismissal of plaintiff's Fourth Amendment excessive force claim where defendants conducted a warrantless collection of blood and plaintiff's injuries "resulted from his resistance to the defendants' efforts to obtain a blood sample"); *Larez v. Tafoya*, No. 99-CV-880 (MV) (KBM), 2000 U.S. Dist. LEXIS 24311, at *5 (D.N.M. July 25, 2000) ("It is well-settled law that officers are entitled to use force to secure the fingerprints or blood of an arrestee who is resisting. Only when the level of force is objectively unreasonable under all of the circumstances will the force amount to a constitutional violation"); *Duran v. Mandujano*, No. 15-CV-2745 (DMS) (WVG), 2017 U.S. Dist. LEXIS 229908, at *11-12 (S.D. Cal. Jan. 31, 2017) (dismissing plaintiff's Fourth and Eighth Amendment excessive force claims, where defendants forcibly restrained plaintiff and collected his blood pursuant to a search warrant because plaintiff failed to show that the amount of force used was excessive when the plaintiff actively resisted), *R. & R. adopted*, 2017 U.S. Dist. Lexis 29915 (S.D. Cal. Mar. 2, 2017).

Here, the amount of force used was not objectively unreasonable under the circumstances. First, as this Court has already noted, Plaintiff conceded that he was actively resisting and "refused to comply" during the blood draw. (*See* ECF No. 43 at 19-20; FAC (ECF No. 8) at 4.) As Plaintiff makes clear, it was in that context that the phlebotomist had to repeatedly attempt to find his vein and a needle fragment allegedly fractured into Plaintiff's arm. (*See* SAC at 4; FAC at 5; *see also* ECF No. 43 at 20.) Thus, Plaintiff's injuries were the result of his own resistance to an otherwise generally painless procedure.

Second, Defendants made an array of efforts to temper or limit the amount of force necessary. For instance, as Plaintiff also makes clear, he was first "handcuffed and shackled" when he refused to comply. (*See* SAC at 4; FAC at 5; *see also* ECF No. 43 at 20.) Likewise, as a result of Plaintiff's resistance, and his sheer size, "multiple officers and/or hospital personnel" also

attempted "to restrain [him] in order to forcibly collect his blood pursuant to the court authorization." (*See* ECF No. 43 at 20.)

Third, and finally, nothing in Plaintiff's SAC—nor any other Court filing—indicates that the amount of force used was greater than necessary to overcoming his resistance or that the amount of force used to collect his blood pursuant to a court order was unreasonable under the circumstances.

Thus, Plaintiff fails to demonstrate that the amount of force used by Defendants was objectively unreasonable. As such, Plaintiff's claim for excessive force should be dismissed.

## C.    Plaintiff Fails To Allege Personal Involvement By Individual Defendants In The Alleged Excessive Use Of Force.

The personal involvement requirement applies equally to excessive force claims under § 1983. *See Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006); *cf.* Point I.C, *supra*. Each defendant must be personally involved in the alleged constitutional violation.

While Plaintiff alleges that Detective Sanchez "stuck Plaintiff in the right arm nine times" during the blood draw procedure, (SAC at 4), this allegation not only exceeds the bounds of plausibility and common sense, but also contradicts his earlier assertions. First, it is implausible to suggest that an NYPD detective—accompanied and surrounded by trained medical personnel in a hospital setting—would personally conduct a medical procedure traditionally reserved for licensed professionals. Second, this allegation contradicts Plaintiff's FAC, in which he alleges that a "man in plain clothes could not catch [his] vein" and "was stuck at least nine times" while "Sanchez . . . stood in the background laughing." (*See* FAC at 2, 3; *accord* Complaint (ECF No. 1 at 7) ("a man in plain clothes who had a needle stick [sic] me in right arm as many as he wanted.").

Moreover, even accepting Plaintiff's contradictory allegations as true, Plaintiff provides no factual allegations establishing the personal involvement of Detective Sergeant Kennedy or

15

Detective Mullhall in this alleged use of force. The SAC contains no allegations that these defendants participated in, directed, or supervised the blood draw procedure itself. Nor does it contain allegations regarding what these defendants observed during the blood draw, whether they had the opportunity to intervene, or what specific actions they could have taken to prevent the alleged constitutional violation. The SAC therefore fails to plead sufficient facts to establish personal involvement for these defendants. *See Johnson*, 2017 U.S. Dist. LEXIS 81359, at *25–32 (dismissing a false arrest claim for "fail[ing] to specify which defendant or defendants were involved.").

Accordingly, the excessive force claim must be dismissed as to any defendant for whom personal involvement has not been adequately alleged.

## POINT III

### DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY FROM PLAINTIFF'S CLAIMS

**A.    Legal Standard For Qualified Immunity.**

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A right is clearly established only when a plaintiff can point either to "cases of controlling authority in [the] jurisdiction at the time of the incident" or to a "consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quotation omitted).

Clearly established law should not be defined "at a high level of generality," *al-Kidd*, 563 U.S. at 742, but instead must be "'particularized' to the facts of the case." *White v. Pauly*, 580 U.S.

73, 79 (2017) (per curiam) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (quotation omitted).

Because qualified immunity requires that the officer had fair notice that their conduct was unlawful, "reasonableness is judged against the backdrop of the law at the time of the conduct." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). "If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation." *Id.*

Critically, qualified immunity provides immunity from suit rather than just a defense to liability. *Lynch v. Ackley*, 811 F.3d 569, 576 (2d Cir. 2016). It is therefore necessary that qualified immunity questions "be resolved at the earliest possible stage of litigation." *Id.* (quotation omitted).

## B.    Defendants Are Entitled To Qualified Immunity On The Deliberate Indifference To Medical Needs Claim.

At a minimum, the Defendant Detectives are entitled to qualified immunity on Plaintiff's deliberate indifference claim because, at the time of the incident in September 1995, no clearly established law would have put them on notice that their conduct violated the Constitution.

In 1995, the law governing deliberate indifference claims required a plaintiff to prove that a defendant official had subjective knowledge of and disregard for a substantial risk of serious harm. In *Farmer*, decided one year earlier, the Supreme Court emphasized that "[t]he Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" 511 U.S. at 837. A "punishment" being an intentional act, the Court reasoned that an official "c[ould not] be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official kn[ew] of and disregard[ed] an excessive

17

risk to inmate health or safety[.]" 511 U.S. 825, 837 (1994). This subjective standard—requiring proof that the official actually knew of and consciously disregarded a substantial risk—governed deliberate indifference claims in this Circuit for both convicted prisoners and pretrial detainees until 2017. *See Darnell v. Pineiro*, 849 F.3d 17, 32-35 (2d Cir. 2017) (overruling *Caiozzo v. Koreman*, 581 F.3d 63 (2d Cir. 2009), and adopting semi-objective standard for pretrial detainees).

In *Darnell*, this Circuit held that for pretrial detainees, "the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35. This standard modified the *mens rea* requirement from purely subjective (what the official actually knew) to include an objective component (what the official "should have known").

Under this subjective standard, or indeed under any standard, a reasonable officer in September 1995 could have believed that the Detectives' conduct was lawful. As detailed in Point I.A, *supra*, the Detectives: (1) allowed Plaintiff to call his mother to request his medication; and (2) summoned EMS, who were already present and evaluating Plaintiff when he regained consciousness. Under the subjective deliberate indifference standard, these actions definitively establish that the Detectives did not consciously disregard any risk to Plaintiff's health—they actively responded to his medical needs. To find that these actions constituted "punishment" under *Farmer* would require believing that the Detectives intended to punish Plaintiff by calling medical professionals to assist him and facilitating family contact for his medication. Rather, the Detectives' response reflects a deliberate effort to address Plaintiff's medical situation while balancing their duty to conduct a critical lineup for violent crimes that had terrorized Brooklyn.

**C.    Defendants Are Entitled To Qualified Immunity On The Excessive Force Claim.**

At a minimum, Defendants are entitled to qualified immunity on Plaintiff's excessive force claim. As explained in Point II, *supra*, executing a court-ordered blood draw supported by probable cause—even against a non-compliant suspect—was clearly constitutional under *Schmerber v. California*, 384 U.S. 757 (1966), and its progeny.

Even assuming *arguendo* that the force used somehow violated Plaintiff's constitutional rights, qualified immunity applies because, at minimum, a reasonable officer in February 1996 could have believed that using restraints to effectuate a court-ordered blood draw against an admittedly non-compliant suspect was lawful. *See Stephenson v. Doe*, 332 F.3d 68, 77 (2d Cir. 2003) (qualified immunity protects officers navigating "'the sometimes hazy border between excessive and acceptable force'") (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)).

Moreover, even with respect to Plaintiff's implausible allegation concerning the blood draw procedure itself, Plaintiff's own contradictory pleadings establish that any such conduct was performed by medical personnel, not law enforcement officers. No clearly established law in 1996 would have required officers to intervene in or second-guess the medical judgment of licensed healthcare providers executing a court-authorized procedure. Indeed, such intervention would undermine the very judicial mandate the officers were lawfully executing and would constitute an impermissible intrusion into medical decision-making. *See Schmerber*, 384 U.S. at 771 (noting that blood tests "involve[] virtually no risk, trauma, or pain" when conducted by medical professionals). Accordingly, no clearly established law in 1996 would have put Defendants on notice that their conduct—using minimal restraints to enable medical professionals to execute a judicial mandate in a rape investigation—violated the Constitution.

## CONCLUSION

For the foregoing reasons, Defendants Detective Sanchez, Detective Sgt. Kennedy, and Detective Mullhall respectfully request that this Court dismiss Plaintiff's SAC with prejudice, and order any other and further relief that it deems just and proper.

Dated:  New York, New York
        June 06, 2025

<div style="margin-left: 40%;">

**MURIEL GOODE-TRUFANT**
Corporation Counsel of the City of New York
*Attorney for Defendants Detective Sanchez,*
*        Detective Kennedy, and Detective Mullhall*
100 Church Street
New York, New York 10007
T: (212) 356-2657

By:     /s/ *Joseph Zangrilli*
        Joseph Zangrilli, Esq.
        *Senior Counsel*
        Special Federal Litigation

</div>

Cc:     Tony Harrison
        97-A-1299
        SING SING CORRECTIONAL FACILITY
        354 Hunter Street
        Ossining, NY 10562
        *Pro se Plaintiff*

## <u>CERTIFICATION</u>

In accordance with Local Civil Rule 7.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, I hereby certify that the total number of words in the foregoing Memorandum of Law, inclusive of point headings and footnotes, is 6,658. I have relied on the word count function of Microsoft Word to prepare this certification.

Dated:          New York, New York
                June 06, 2025

                                        MURIEL GOODE-TRUFANT
                                        Corporation Counsel of the City of New York
                                        *Attorney for Defendant City of New York*
                                        100 Church Street
                                        New York, NY  10007
                                        (212) 356-2657
                                        jzangril@law.nyc.gov


                                  By:   *Joseph Zangrilli /s/*
                                        JOSEPH ZANGRILLI

21