2024-065548
SF
M. FUTRAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
TONY HARISON,
        PLAINTIFF,

                                      **NOTICE OF MOTION:**
                                      **TO AFFIRMATIOIN IN**
                                      **OPPOSITION TO DEFENDANT'S**
                                      **MOTION TO DISMISS**
                                      **PLAINTIFF'S SECOND**
       -AGAINST-                       **AMENDED COMPLAINT**


DETECTIVE SANCHEZ,
DETECTIVE SGT. KENNEDY,
DETECTIVE MULHALL,                         DOCKET NO.#96-CV-1465 (PKC)(LB)
CORRECTIONAL OFFICER HODGE,
CORRECTIONAL OFFICER STEWARD,
        DEFENDANTS.
------------------------------------------------------X

    PLEASE TAKE NOTICE, that upon the annexed affirmation in opposition to defendant' motion to dismiss Plaintiff's Second Amended Complaint, Dated: June 6, 2025, and upon the Exhibits attached thereto, the accompanying Memorandum Of Law in support of this motion, and the pleadings herein, Plaintiff will move this Court before Hon. Pamela K. Chen, a United States District Judge, for an ORDER of all Defendants to finally answer Plaintiff's Second Amended Complaint, and proceed to trial.

    I, PLAINTIFF, TONY HARRISON, DECLARE UNDER THE PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT..

DATED: 7/31/25

                                                    RESPECTFULLY SUBMITTED,

                                                    Tony Harrison
                                                    PLAINTIFF TONY HARRISON

(1).

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
TONY HARISON,
        PLAINTIFF,

AFFIRMATION IN OPPOSITION:
TO DEFENDANT'S MOTION TO
DISMISS PLAINTIFF'S SECOND
AMENDED COMPLAINT....

-AGAINST-

DOCKET NO.#96-CV-1465 (PKC) (LB)

DETECTIVE SANCHEZ,
DETECTIVE SGT. KENNEDY,
DETECTIVE MULHALL,
CORRECTIONAL OFFICER HODGE,
CORRECTIONAL OFFICER STEWARD,
        DEFENDANTS.
----------------------------------------X

I, TONY HARRISON, AFFIRM UNDER PENALTY OF PERJURY THAT:

1. I, Tony Harrison, am the Plaintiff in above entitled action, and I respectfully submit this affirmation in opposition to the Defendant's motion to dismiss Plaintiff's Second Amended Complaint, Dated: June 6, 2025.]

2. I have personal knowledge of pleadings facts, which bear in this affirmation in opposition to Defendant;'s motion to dismiss Plaintiff's Second Amended Complaint, because I am the Plaintiff bearing the life-blood of the inadequate medical treatment, and the excessive force done by named Defendants in the Second Amended Complaint.

3. The Defendant's motion to dismiss Plaintiff's Second Amended Complaint should be denied, because it undermines the District Judge Hon. Pamela K. Chen ORDER TO PROCEED with Plaintiff's Second Amended Complaint for inadequate mendical treatment, and for excessive force against all named Defendants in the S.A.C., SEE:HON. PAMELA K. CHEN'S ORDER, ENTERED: 7/9/20¼, Defendant's motion to dismiss, also undermines the U.S.C. CONST. AMEND. 14.

(2).

CONT. AFFIRMATION IN OPPOSITION...

4. Inside the body of the Plaintiff's Affirmation In Opposition to Defendant's Motion to dismiss Plaintiff's Second Amended Complaint will show clear and convincing proof of a well pleaded Actual facts and constitutional law to proceed to pre-trial and trial...

BACKGROUND & PROCEDURAL HISTORY

5. On June 27, 2024, the court received the Plaintiff's Second Amended Complaint.

6. On July 9, 2024, Plaintiff's claims for inadequate medical treatment and claims for excessive force against named Defendants in Plaintiff's Second Amended Complaint was GRANTED to proceed, and the Clerk Of The Court was Directed to issue Amended Summons against all named Defendants in plaintiff's Second Amended Complaint.

7. On August 2, 2024, said named Defendants in Second Amended Complaint was served by U.S. Marshals with process by leaving copies of the Second Amended Complaint, and amended Summons at Defendants' usual place of business.

8. On August 23, 2024, an answer was due by all named Defendants in Second Amended Complaint, but that came to no avail, so Amended summons was unexecuted.

9. On November 12, 2024, The Court issued a Valentin Order, for Corporation Counsel to identify and each Defendant, so U.S. Marshals can properly serve every Defendant.

10. On February 11, 2025, the Hon. District Judge Pamela K. Chen ordered a motion for pre-motion conference to Magistrate judge Hon. Lios Bloom.

11. On June 6, 2025, The Hon. District Judge Pamela K. Chen ordered the Corporation Counsel to file further status regarding the identification of one of Defendants named in Plaintiff's Second Amended Complaint as well as also named in Defendant's Motion to dismiss.

(3).

CONT. AFFIRMATION IN OPPOSITION

WELL PLEADED FACTS OF
CLAIMS INSIDE THE S.A.C.

12. On September 16, 1995, at 5:10 a.m., while Plaintiff, Tony Harrison, was on his way to Prospect Park in Brooklyn New York, (located a few blocks away from Plaintiff's apartment), for his morning workout, Plaintiff was ambushed by Defendants, detective Sanchez, detective Mulhall, and detective Sgt. Kennedy. These detectives accused Plaintiff of folling a woman.

13. There was no woman in front or behind Plaintiff, and from this staged allegations by these detectives, Plaintiff was dragged down Union street, (between Prospect Park West and Plaza street), and illegally detained against Plaintiff's will; in front of some woman. This is when Plaintiff asked this woman, "did I do anything to you," and this woman replied "no," with a nod of the head.

14. These detectives then ordered Plaintiff to "shut up," and then shoved Plaintiff against a car. These the defendant detective Sachez, starting speaking to this woman in another language; and this when Plaintiff became frustrated, and inquired, "what is going on?

15. These detectives only response was for Plaintiff to shut up. These detectives then turned Plaintiff around, and proceeded to handcuff Plaintiff with other law enforcement, that suddenly appeared out of no-where; and then they aggressively grabbed Plaintiff by his neck and arms, and then threw Plaintiff in the back of a police truck, taken -------- to the 71st precinct.

16. Upon the arrival at the 71st precinct, Plaintiff was placed in a holding cell without knowing what these detectives put me in there for. Plaintiff began to get

(4).

CONT. AFFIRMATION IN OPPOSITION

CONT. WELL PLEADED FACTS OF THE CLAIMS INSIDE OF THE S.A.C.

real sick, because plaintiff was never allowed to take his seizure medication, (in which plaintiff took every morning, because of a seizure disorder); as a result of plaintiff not taken this medication, plaintiff passed out, and then plaintiff woke up traumatized, dizzy, and plaintiff was spitting saliva up all over the place.

17. E.M.S. workers and detectives Sanchez, Mulhall, Sgt. Kennedy were standing over Plaintiff hassling Plaintiff with questions about crimes that Plaintiff knew nothing about. The E.M.S. workers had demanded that Plaintiff be taken to the hospital, due to Plaintiff just coming out a seizure, but the detectives Sanchez, Mulhall, Sgt. Kennedy just said to the E.M.S. workers, "that if we allow you to take our suspect tot the hospital, that process would take all day, so we are going to conduct several line ups first."

18. This is when a bunches of detectives just dragged Plaintiff into an interrogation room, and then said detectives just on proceed in placing a real sick plaintiff in seven(7) unduly suggestive illegal line ups, and these said detectives finally coerced one complainant witness to pick Plaintiff out, out of line ups; then this when detectives allowed E.M.S. to take Plaintiff to hospital.

19. Being that the Corporation Counsel, (the defendants counsel), want to over-characterize my illegal arrest in their motion to dismiss; stating, in their Preliminary Statement, that plaintiff was arrested in connection to a series of rapes that terrorized Brooklyn in 1995. But the Corporation counsel fails to mention after Plaintiff's illegal arrest, that these same crimes, with same M.O.

(5).

**CCONT.AFFIRMATION IN OPPOSITION**

**CONT. WELL PLEADED FACTS OF THE CLAIMS INSIDE OF THE S.A.C.**

with same description continued to happen in same community in Brooklyn in 1995. SEE: THE NEW YORK TIMES & NY DAILY NEWS ARTICLES FROM 1995... EXHIBIT (A)

20. Also Corporation Counsel failed to mention in their motion to dismiss, that plaintiff's illegal arrest just consist of one complainant witness who was coerced to pick Plaintiff out of line ups, and that this same complainant witness also picked someone out of line up and a photo array almost two months prior to Plaintiff's illegal arrest; and this person that this complainant witness pick out prior to Plaintiff's illegal arrest, looked nothing like the Plaintiff..

21. Also, The Corporation Counsel failed to mention in their motion to dismiss, that Plaintiff was arraigned and Indicted in front of a judge, who so happens to live in the same community these rapes allegedly occurred and this same judge refused to see that there was something wrong with my arrest, and this same judge just allowed the A.D.A. and the detectives involved in my arrest go on a fishing expedition for additional uncharged crimes.

22. This is when a court order was issued to draw Plaintiff's blood, and on February 15, or 25 Of 1996, Plaintiff was chained up, shackled up and handcuffed by two correctional officers, DEFENDANTS, named Hodge and Steward; and these correctional officers Hodge and Steward transported to Kings County Hospital Prison Ward; and when we arrived at this prison ward, arresting officers Det. Sanchez and Det. Mulhall was waiting to draw Plaintiff's blood. Det. Sanchez had shown the two(2) C.O.s the Court's order to draw Plaintiff's blood, and then Det. Sanchez told the two C.O.s, being that Plaintiff is refusing to have his

(6).

CONT. AFFIRMATION IN OPPOSITION

CONT. WELL PLEADED FACTS OF THE CLAIMS INSIDE OF THE S.A.C.

blood drawn without his lawyer present. Detective Sanchez told these two(2) Correctional officer Hodge and Steward to keep Plaintiff chained up, shackled up and handcuffed; and him while he stuck Plaintiff up nine(9) times with a needle, and this Detective Sanchez could not catch Plaintiff's snap back veins, and this needle broke off in plaintiff's right arm, SEE: TWO(2) HOSPITAL X-RAYS, THAT WILL BE ATTACH AS EXHIBIT (B).

23. Finally, The Corporation Counsel also failed to mention in their motion to dismiss, that this blood was drawn from Plaintiff in order to indict Plaintiff for an un-charged crime; because a complainant witness involved in those seven(7) line ups (during Plaintiff's illegal arrest), never picked plaintiff out that day. So this blood was drawn from plaintiff to orchestrate forensic evidence, to eventually charge and indict Plaintiff on junk and trump up DNA, and this indictment was also consolidated to the original indictment that had no Forenic DNA, this consolidation of indictments--- strengthen---prosecution's theory of plaintiff having this alleged M.O., that an identical man had commited these crimes in these downtown Brooklyn committies.

## CONCLUSION

WHEREFORE, THIS TRAVESTY OF INJUSTICE OF INADEQUATE MEDICAL TREATMENT, DURING PLAINTIFF'S ILLEGAL ARREST, AND THE EXTREME EXCESSIVE FORCE IN ORDER TO OBTAIN FORENSIC EVIDENCE, LED UP TO PLAINTIFF'S CIVIL RIGHTS TO BEING VIOLATED AS A AMERICAN DETAINEE CITIZEN. THE DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT MUST BE DENIED AND ORDER DEFENDANT'S TO PROCEED PRE-TRIAL & TRIAL.

I, TONY HARRISON, DECLARE UNDER THE PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

DATED: 7/31/25                                    *Tony Harrison* X

CONT. AFFIRMATION IN OPPOSITION

MEMORANDUM OF LAW OF
INADEQUATE MEDICAL TREATMENT
AS A PRETRIAL DETAINEE

When Plaintiff, Tony Harrison needed medical attention, he was a prearraigned, preindicted, pretrial detainee, not a person who had been convicted, and the rights of one who had not been convicted are protected by the Due Process Clause; and while the U.S. Supreme Court has not precisely limned the duties of a custodial official under the Due Process Clause to provide needed medical treatment a pretrial detainee, it is plain that a unconvicted detainee's rights are at least as those of a convicted prisoner, SEE: City of Revere V. Massachusetts General Hospital, 53 U.S. at 244, & Bryant V. Maffucci, 923 F.2d at 983.

Thus, the official custodian of a pretrial detainee may be found liable for violating the detainee's due process rights if the official denied treatment needed to remedy a serious medical condition and did so because of his deliberate indifference to need, SEE: Lisco V. Warren, 901 F.2d 274-277.

Deliberate indifference, in this context, may be shown by evidence that the detective acted with reckless disregard for the substantial risk posed by the detainee's serious medical condition. Acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the recklessly disregarding that risk.

Thus, in order to establish deliberate indifference, a Plaintiff must show "something more than mere negligence", but proof of intent is not required, for the deliberate indifference standard "is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm wil reslt." SEE: Eselle V. Gamble, 429 U.S. 97.

(8).

CONT. AFFIRMATION IN OPPOSITION

CONT. MEMORANDUM OF LAW OF
INADEQUATE MEDICAL TREATMENT
AS A PRETRIAL DETAINEE

In the context of a claim under the Eighth Amendment, the standard for assessing deliberate indifference is a objective one, requiring a determination as to whether the official knew of the risk to an inmate's heath or safety.

Although the U.S. Supreme Court has not stated whether the same standard should be applied in the due process context, this Court in Liscio V. Warren used an objective standard, requiring determination of what the official knew or should have known, SEE: e.g., 901 F.2d at 276-77 (despite pretrial detainee's failure to mention his alcoholism, physician was "on notice" that detainee might be suffering from alcohol withdrawal because the exhibited symptoms commonly associated with such withdrawal). Under either standard, the state of the defendant's knowledge is normally a question of fact to be determine after trial.

In the present case, the record reveals the existence of material issues to be tried as to plaintiff's claim of deliberate indifference. Viewed in the light most favorable to Plaintiff as the party opposing Defendant's motion to dismiss, the record permits the inferences that, following plaintiff's arrest, Plaintiff Tony Harrison woke up traumatized, dizzy and spitting saliva up all over the ball pen, that EMS acknowledged that Plaintiff was suffering from some type of seizure disorder, in which EMS also recognized that plaintiff was in sufficiently poor physical condition to cause the EMS workers to suggest taking Plaintiff to the hospital immediately.

But nevertheless, detectives instructed these EMS worker to wait until after the detectives place Plaintiff in several line ups, in which these detectives denied Plaintiff's medical attention throughout the period of seven(7) line ups. In sum, the facts must be taken in the favorable to the plaintiff.

(9).

CONT. AFFIRMATION IN OPOSITION

## MEMORANDUM OF LAW OF EXCESSIVE FORCE CLAIM

IN addressing an excessive force claim that Plaintiff under his Second Amended Complaint analysis begin by identifying the specific constitutional right allegedly infringed by the challenged application of force, SEE: Graham V. Connor, 490 U.S. 386, 394, (citing Baker V. McCollan, 443 U.S. 137,140).

Now in the Well pleaded facts in Plaintiff's Second Amended Complaint, the right infringed will fall under the Fourteenth Amendment's prohibition against unreasonable intrusion of the Plaintiff's body, which is the primary source of constitutional protection against physical abusive seizure of DNA profiling by arresting officer and correctional officers.

Nonetheless, "the right of an pretrial detainee is to be free from excessivee force amounting to extreme punishment when plaintiff was executing his fundamental constitutional rights from body intrusion, which is duly protected by the due process clause of the Fourteenth Amendment, SEE: United States V. Walsh, 194 F.3d 37,47, (quoting Graham V. Connor, 490 U.S. 386,392 n. 6.

Even though, there was an Court Order for the drawing of Plaintiff's blood; the Question stills remains, Whether the Defendants applied force in good effort to maintain or restore DNA evidence for an un-charged crime; and also a Question still remains in Plaintiff's Second Amended Complaint was the arresting officers and the Correctional Officers maliciously sadistically causing Plaintiff harm in way the drawing of Plaintiff's had took place, SEE: Hudson V. McMillan, 503 U.S. 1, 6-7, Alternatively, the objective component in the Second Amended Complaint focuses on is the use of force was sufficiently too serious or harmful enough, SEE: Walsh, 194 F.3d at 50.

(10).

CONT. AFFIRMATION IN OPOSITION

CONT. MEMORANDUM OF LAW OF
EXCESSIVE FORCE CLAIM

This determination is "contextual and responsive to contemporary standards of decency," SEE: Hudson, 503 U.S. at 8, (quoting Estelle V. Gamble, 429 U.S. 97,103). "An excessive force claim may be established even where Plaintiff does not suffers a seriuos or significant injury, provided that it is shown that the amount of force used is more than deminimis or the use of the force is repugnant to the conscience of mankind, SEE: Gashi V. City Of Wwestchester, 2007 WL 749684 at 5, 9quoting Walsh, 194 F3d at 47-48). A defendant's "malicious use of foirce to cause harm" always violates comptemporary standards of decency and therefore triggers a per se constitutional violation, SEE: Blyden V. Mancusi, 186 F.3d 252,253, (citing Hudson, 503 V. 5-9).

In Graham, the Supreme Court determined that excessive force claims that arise "in the context of an arrest or investigatory stop of a free citizen" are most properly characterized as...invoking the protections of the fourteenth Amendment."490 U.S. at 394, The Court declined to decide 'whether the Fourteenth Amendment continues to provide individuals with protection against the deliberate use of excessive force beyond the point at which arrest ends and pretrial detention begins." Id. at 395 n. 10,

Nonetheless, the Second Circuit, has indicated that "the fourteenth Amendment standard probably should be applied at least to the period prior to the time when the person arrested is arraigned or formally charged, and remains in the custody (sole or joint) arresting officer." SEE: Powell V. Gardner, 891 F.2d 1039.1044,

Under the Fourteenth Amendment, the Court must engage in an exclusively objective analysis of the reasonableness of the defendant's actions, merely assessing "whether the officers acted reasonably in light of the facts and

(11).

CONT. AFFIRMATION IN OPPOSITION

CONT. MEMORANDUM OF LAW OF
EXCESSIVE FORCE CLAIM

and circumstances of the situation they faced, without regard to their underlying motives or subjective intent toward the suspect," SEE: Anderson V. Branen, 17 F.3d 552,559, citing Graham, 490 U.S. at 397.

However, in recitation of undisputed well pleaded facts in Plaintiff's Second Amended Complaint that in February of 1996, after Plaintiff's arrest in September of 1995, Plaintiff was handcuffed chained up and shackled up, and then taken from detention center (C-95), on Rikers Island, by two(2) correctional officers named C.O. Hodge and C.O. Steward; to an prison ward at Kings County Hospital, for an force order to draw Plaintiff's blood.

Where, they had arresting officers Detective Sanchez and Mulhall was waiting to draw Plaintiff's blood, and being that plaintiff was refusing to have his blood draw without a his lawyer being present; Det. Sanchez order these two(2) named correctional officer to keep Plaintiff chained up shackled up and handcuffed while Det. Sanchez stuck Plaintiff in right arm nine(9) times in order to catch a vein, that a needle broke off in Plaintiff's right arm. SEE: X-RAYS, EXHIBITED AS EXHIBIT (B).

Wherefore, also notably, "the objective reasonableness standard [the fourteenth Amendment analysis] established in Graham applies [equally] to actions taken with respect t a person who asserts ... a claim for excessive force after [the person] has been arrested and detained, but prior to the time when [the person] is arraigned or formally charged, and remains in custody (sole or joint) of the arresting officer." SEE: Cugini V. City Of New York, 941 F.3d 604,612, (quoting Powell V. Gardner, 891 F.2d 1039, 1044. Therefore, "if there is a dispute concerning the amount of force used and reasonable of the force used, the matter becomes a question of fact for a jury to decide," SEE: Frederique V. City of Nassau, 168 F.Supp.3d 455,472.

(12).

## MEMORANDUM OF LAW OF QUALIFIED IMMUNITY

In general, public officials may be entitled to qualified immunity if, (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights, SEE: e.g., Anderson V. Creighton, 483 U.S. 635, 638-39. The availability of the defense depends on whether "'a reasonable officer could have believed'" his action"'to be lawful, in light of clearly established law and hte information [he] possessed.'" SEE: Hunter V. Bryant, 502 U.S. 224, 227, (quoting Anderson V. Creighton, 483 U.S. at 641. But Qualified immunity does not protect those who are "plainly incompetent or those who knowingly violate the law.'" SEE: Malley V. Briggs, 475 U.S. 335, 341.

At the time of the events in this present case, legal principles governing defendants' conduct, discussed in the facts of this Affirmation in opposition above, are all well established in Plaintiff's Second Amended Complaint. The matter of whether it was reasonable for Defendants to believe their actions met the standard set by those principles depends on whether one believes their versions of the facts. That version is sharply disputed, and the matter of the Defendants' qualified immunity therefore can not be resolved as a matter of law.

## CONCLUSION

WHEREFORE, PLAINTIFF REQUEST THAT THIS COURT ALLOW PLAINTIFF'S INADEQUATE MEDICAL, EXCESSIVE FORCE AND DELIBERATE INDIFFERENCE CLAIMS BE ANSWERED BY DEFENDANTS, AND BE ALLOWED TO PROCEED TO TRIAL WITH ALL DEFENDANTS NAMED IN SECOND AMENDED COMPLAINT. WHEREAS, ALSO FOR THE REASONS STATED HEREIN IN PLAINTIFF'S AFFIRMATION IN OPPOSITION, DEFENDANTS" MOTION TO DISMISS MUST BE DENIED, AS IT UNDERMINES THE FOURTEENTH AMENDMENT DUE PROCESS CLAUSE OF THE UNITED STATES.

(13).