UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
TONY HARRISON,

                      Plaintiff,

          -against-

DETECTIVE SANCHEZ, DETECTIVE SGT.
KENNEDY, DETECTIVE MULHALL,
CORRECTIONAL OFFICER, HODGE,
CORRECTIONAL OFFICER, STEWARD,
ET. AL. [sic],

                    Defendants.
------------------------------------------------------------ X

**REPORT & RECOMMENDATION**

96-CV-1465 (PKC) (SDE)

**SETH D. EICHENHOLTZ**, United States Magistrate Judge:

*Pro se* Plaintiff Tony Harrison brings claims of deliberate indifference and excessive force against New York City Police Department Detectives Sanchez, Kennedy, and Mulhall; and claims of excessive force against Department of Correction Officers Hodge and Steward in connection with Plaintiff's arrest and prosecution in 1995 and 1996. Presently before the undersigned, on referral from the Honorable Pamela K. Chen, United States District Judge, is Defendants Sanchez, Kennedy, and Mulhall's motion to dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons explained below, the undersigned respectfully recommends Defendants' motion be granted, except as to Plaintiff's claim that Defendant Sanchez used excessive force to obtain a court-authorized blood sample.

## BACKGROUND

### I.    Factual Background

The undersigned assumes Plaintiff's allegations are true for purposes of this motion. *See infra* p. 7. Plaintiff is currently an inmate at Sing Sing Correctional Facility serving a minimum 250-year sentence for rape and related crimes. (*See* Second Amended Complaint, ("2d Am.

Compl."), Dkt. No. 46, p. 5.)   The Second Amended Complaint describes Plaintiff's arrest by Defendants New York City Police Department ("NYPD") Detectives Sanchez, Mulhall, and Kennedy on the morning of September 16, 1995.  (*See* 2d Am. Compl. p. 2.)  Plaintiff was arrested after these Defendants accused him of following a woman near Prospect Park, Brooklyn, where a series of sexual assaults had been committed between November 1994 and June 1995.  (*See id.*)[1]

After Defendants transported Plaintiff to the 71st Precinct and placed him in a holding cell, he alleges that he could not take medication to treat a "mild seizure disorder" and, as a result, he became sick and lost consciousness.  (*Id.* p. 2.)  Plaintiff says that when he regained consciousness, Defendants Sanchez, Mulhall, and Kennedy rejected EMS workers' recommendation to take him to the hospital because they did not want to delay conducting line-ups.  (*Id.* p. 3.)  After conducting line-ups, officials with the NYPD announced Plaintiff's arrest as a suspect in their investigation of the assaults.  (*See id.*)  Plaintiff alleges that denying him the ability to take his medication or take him to the hospital prior to the lineups was done with deliberate indifference to his serious medical needs.  (*See* Plaintiff's Opposition to Defendant's Motion to Dismiss ("Pl. Opp."), Dkt. No. 110, pp. 8–9.)

Plaintiff was arraigned in Kings County Supreme Court and indicted in connection with two assaults.  (*See id.* p. 4.)   In prior pleadings, Plaintiff explained that the Assistant District Attorney sought and acquired a court order to obtain a blood sample for DNA testing to determine whether Plaintiff was responsible for any of the other assaults.  (*See* First Amended Complaint, ("1st Am. Compl."), Dkt. No. 8, p. 2.)

Plaintiff recounts how he was taken to Kings County Hospital sometime in February 1996

---

[1]  *See also Suspect Is Arrested In Brooklyn Rapes*. N.Y. TIMES, Sept. 17, 1995, Sec. 1 p. 44, https://www.nytimes.com/1995/09/17/nyregion/suspect-is-arrested-in-brooklyn-rapes.html.

to provide a blood sample which, he alleges, was directed "by orders of" Defendants Sanchez and Mulhall.  (2d Am. Compl. p. 4.)  He alleges Defendants New York City Department of Correction ("DOC") Officers Hodge and Steward, who have yet to appear in this matter, "shackled and handcuffed" him in preparation for the blood draw.  (*Id.* p. 4.)  He alleges that Defendant Sanchez struck him with a needle in his right arm nine times, and the needle ultimately broke off inside his arm.  (*Id.*)  Plaintiff also provides an x-ray report dated March 18, 1996 from Montefiore Medical Center, which appears to confirm a phlebotomy needle was found in the soft tissues of Plaintiff's right arm.  (*Id.* Appx. 2.)

In prior pleadings, Plaintiff alleged that he "refused to comply" with the blood draw and described how "a man in plain clothes" had the needle and stuck him in the arm "at least nine times" when he "could not catch a vein."  (Complaint, ("Compl."), Dkt. No. 2, p. 6; *see also* 1st Am. Compl p. 3.)  In his opposition to Defendants' motion, Plaintiff says he refused to have his blood drawn without his lawyer present and that Defendant Sanchez could not catch a vein.  (*See* Pl. Opp. p. 7.)  Plaintiff alleges that the force used to retrain him and take the blood sample was excessive.  (*See* Pl. Opp. pp. 10–12.)

In 1997, a Kings County jury found Plaintiff guilty of two counts of first-degree rape, two counts of first-degree sodomy, and first-degree harassment.  (*See* 2d Am. Compl. p. 5.)  He was sentenced to 250 years to life imprisonment.  (*See id.*)

## II.    Procedural Background

Plaintiff's original Complaint, filed on March 9, 1996, named 22 Defendants, including various New York City entities and law enforcement officers, two state court judges, attorneys, and witnesses, among others.  (Compl. p. 1.)  Plaintiff filed his First Amended Complaint on September 5, 1996.  (1st Am. Compl. p. 1)  On April 21, 1997, the Court dismissed Plaintiff's

claims against the state court judges for lack of subject matter jurisdiction and in light of their absolute immunity for acts in connection with their offices. (*See* Order Granting Mot. to Dismiss, Dkt. No. 17.) On November 4, 1998, the Court also dismissed Plaintiff's claims against New York State and the New York State Unified Court System under the Eleventh Amendment. (*See* Mem. & Order, Dkt. No. 31, pp. 2–4.)

On January 21, 1999, Plaintiff moved for default judgment against the DOC; the NYPD; Correction Officers Steward, Nelson, and Hodge; the District Attorney and Assistant District Attorney; the City of New York; and Correction Officers Kennedy and Mulhall, all of whom had been served with summonses but had not responded. (*See* Request for Default Judgment, Dkt. No. 33.) On February 1, 1999, with that motion pending, the Clerk of Court issued final judgment dismissing the case. (Judgment, Dkt. No. 34.) Plaintiff filed a timely Notice of Appeal. (*See* Notice of Appeal, Dkt. No. 35.) The Court of Appeals for the Second Circuit issued a mandate on May 13, 1999, noting that the District Court's orders had disposed of the claims against only four of the Defendants and directing the District Court to dispose of the claims against the remaining Defendants. (Mandate of USCA, Dkt. No. 37, p. 1.) After a substantial period of time with no activity in the case, on February 14, 2024, Plaintiff filed a motion for reconsideration of the Court's April 21, 1997 Order under Federal Rule of Civil Procedure 60(b). (Motion to Vacate, Dkt. No. 39.)

On March 29, 2024, the Court denied Plaintiff's motion. (Mem. & Order, Dkt. No. 43.) The Court found most of Plaintiff's claims barred by *Heck v. Humphrey*, 512 U.S. 477 (1994) and dismissed them pursuant to the Prison Litigation Reform Act, 28 U.S.C. §§ 1915A(b) and (e)(2)(B)(ii). (*See id.* p. 24.) However, the Court granted Plaintiff leave to amend his claims alleging inadequate medical treatment, excessive force, and religious freedom within 30 days,

naming only the specific defendants involved.  (*Id.*)

On June 27, 2024, Plaintiff filed his Second Amended Complaint, naming only Defendants Sanchez, Kennedy, Mulhall, Hodge, and Steward as defendants.  (*See* 2d Am. Compl. p. 1) Plaintiff persisted in his allegations that, among other things, challenged his conviction and arrest, and also described his allegations regarding his alleged deprivation of medication and the blood draw order. (*See id.* pp. 2–6.)  After reviewing that Complaint, the Court allowed Plaintiff's claims for inadequate medical treatment against Defendants Sanchez, Kennedy, and Mulhall; and for excessive force against Defendants Sanchez, Hodge, and Steward to proceed.  (Order dated Jul. 9, 2024).

On September 25, 2024, the Court issued an order pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997), requiring Corporation Counsel of the City of New York to provide current service addresses for all named law enforcement officer Defendants.  (Order, Dkt. No. 54, p. 2.) Corporation Counsel was initially able to ascertain last known addresses for all named Defendants other than Hodge and Steward.  (*See* Second Mot, for Extension of Time, Dkt. No. 57, p. 2.)

On December 17, 2024, Plaintiff moved for default judgment against Defendants Sanchez, Mulhall, Kennedy, Hodge, and Steward, which was denied because Plaintiff did not demonstrate proper service.  (*See* Motion for Judgment by Default, Dkt. No. 66; Order, Dkt. No. 70, p. 1.) United States Magistrate Judge Lois Bloom, who was then assigned to this matter, found Defendants Kennedy, Mulhall, and Sanchez were properly served and ordered them to respond to Plaintiff's Complaint.  (*Id.*)  But Magistrate Judge Bloom ordered Corporation Counsel to continue efforts to respond to the Court's *Valentin* Order on behalf of Defendants Hodge and Steward.  (*Id.*) To date, Defendant Hodge has not appeared, and Corporation Counsel has been unable to identify

Defendant Steward.[2] (*See* Order, Dkt. No. 105.)

Thereafter, on February 7, 2025, Defendants Kennedy and Sanchez requested leave to file a motion to dismiss the Second Amended Complaint. (*See* Motion for Pre-Motion Conference, Dkt. No. 75; Order Referring Motion dated Feb. 11, 2025.) That request, and the subsequent motion, were referred by Judge Chen to Magistrate Judge Bloom. (*See* Orders dated Feb. 11, 2025 & Sept. 22, 2025.) After the Court granted leave to file that motion, Defendant Mulhall appeared and joined in the motion. (*See* Orders, Dkt. Nos. 81, 93.) Defendants Sanchez, Kennedy, and Mulhall served Plaintiff with their motion on June 6, 2025. (*See* Letter, Dkt. No. 99.) On July 21, 2025, this case was reassigned to the undersigned. (Dkt. Entry dated Jul. 21, 2025.) Defendants Kennedy, Mulhall and Sanchez's motion to dismiss was fully briefed on September 22, 2025. (*See* Dkt. Nos. 108–111.)

---

[2] Given the age of this case, efforts to identify and serve Defendants Hodge and Steward have been difficult. When service at Defendant Hodge's last known address was unsuccessful, Defendants sought authorization to serve a subpoena on the New York City Employees' Retirement System ("NYCERS") to obtain a valid address. (Letter, Dkt. No. 89, p. 2.) Magistrate Judge Bloom endorsed that subpoena on April 1, 2025, and NYCERS responded by providing an out-of-state address for Defendant Hodge. (Order, Dkt. No. 90; Status Rep, Dkt. No. 94, pp. 1–2.) Corporation Counsel confirmed that Defendant Hodge responded to requests for information from NYCERS at that address, and that public records confirm he is the current owner of the property at that address (Dkt. No. 94, pp. 1–2.) But someone at that address refused Defendants' correspondence. (*Id.*) Magistrate Judge Bloom ordered the Court to issue amended summons to Defendant Hodge at that address on May 19, 2025. (Order, Dkt. No. 97; Summons, Dkt. No. 98.) That summons was not responded to, and Defendant Hodge has not appeared in this case.

With respect to Defendant Steward, Corporation Counsel was initially unable to identify any correctional officers that met Plaintiff's description. (Status Rep., Dkt. No. 72, p.1.) Among other measures, the Law Department conducted a review of DOC records, held calls with Plaintiff to gather more information, and identified all correctional officers employed in 1996 with names similar to "Steward" and characteristics similar to those Plaintiff described. (*See* Status Reps., Dkt. Nos. 91, 94, 100.) Ultimately, Corporation Counsel was not confident any of those officers were the Defendant Steward. (Status Rep., Dkt. No. 104, p. ii.) Recognizing Corporation Counsel's significant efforts to identify Defendant Steward, the Court has determined it more appropriate to address Defendants' motion to dismiss before requiring Corporation Counsel to take any more identification efforts.

## LEGAL STANDARDS

### I.    Rule 12(b)(6) Motion to Dismiss

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the court must accept the factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff.  *See, e.g.*, *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir. 1996).  "Consideration is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991).  When a plaintiff is proceeding *pro se*, the Court will also deem the factual allegations contained in their briefs to supplement the factual allegations in the complaint.  *See, e.g.*, *Johnson v. Wright*, 234 F. Supp. 2d 352, 356 (S.D.N.Y. 2002).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft*, 556 U.S. at 678.  Under this pleading standard, "'labels and conclusions,'" or "'a formulaic recitation of the elements of a cause of action will not do.'"  *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Instead, a plaintiff must provide enough factual support that, if true, would "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

Where the plaintiff appears *pro se*, the complaint "[is] held 'to less stringent standards than formal pleadings drafted by lawyers.'"  *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  Courts construe a *pro se* plaintiff's complaint "liberally and

interpret it 'to raise the strongest arguments that it suggests.'" *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (quoting *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir.2010)).  A court is "obligated to draw the most favorable inferences" the complaint supports but "cannot invent factual allegations that [plaintiff] has not pled." *Chavis*, 618 F.3d at 170.  "This is particularly so when the *pro se* plaintiff alleges that [his] civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).  When challenged by a 12(b)(6) motion to dismiss for failure to state a claim, a *pro se* complaint "should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hughes*, 449 U.S. at 10.

## II.    Prior Inconsistent Pleadings

The question of whether a court should also consider allegations from earlier pleadings when resolving a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) in a case with a *pro se* plaintiff is a complicated one.  "There is authority supporting the notion that a court may disregard amended pleadings when they directly contradict facts that have been alleged in prior pleadings." *Kilkenny v. L. Off. of Cushner & Garvey, L.L.P.*, 08-CV-588, 2012 WL 1638326, at *5 (S.D.N.Y. May 8, 2012); *see also Colliton v. Cravath, Swaine & Moore LLP*, 08-CV-400, 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008) ("Where 'a plaintiff blatantly changes his statement of the facts in order to respond to the defendant['s] motion to dismiss . . . [and] directly contradicts the facts set forth in his original complaint,' a court is authorized 'to accept the facts described in the original complaint as true.'") *aff'd*, 356 F. App'x 535 (2d Cir. 2009); (quoting *Wallace v. New York City Dep't of Corr.*, 95-CV-4044, 1996 WL 586797, at *2 (E.D.N.Y. Oct. 9, 1996).

Importantly, "many courts in this Circuit have held otherwise, and note that '[p]rior inconsistent pleadings, though admissible . . . are controvertible, not conclusive, admissions.'"

*Bernadotte v. New York Hosp. Med. Ctr. of Queens*, 13-CV-965, 2014 WL 808013, at *5 (E.D.N.Y. Feb. 28, 2014) (quoting *The Limited, Inc. v. McCrory Corp.*, 683 F. Supp. 387, 395 n.5 (S.D.N.Y. 1988) and collecting cases). These cases have recognized that "in a typical case, a prior inconsistent pleading should not trump the Court's obligation under Rule 12(b)(6) to accept a complaint's allegations as true." *Palm Beach Strategic Income, LP v. Salzman*, 10-CV-61, 2011 WL 1655575, at *6 (E.D.N.Y. May 2, 2011); *see also Streit v. Bushnell*, 424 F. Supp. 2d 633, 640 n.4 (S.D.N.Y. 2006) ("It would be a harsh rule of law indeed if a litigant were to change a statement in an amended pleading to repair a weakness cited by an adversary or by the Court, only to have the case dismissed because the conforming change in some way may conflict with an allegation in the earlier pleadings.").

## DISCUSSION

As described in the Court's prior order regarding the Second Amended Complaint, Plaintiff alleges that his constitutional rights were violated during two separate incidents involving different groups of Defendants: (i) an alleged denial of medical treatment by Defendants Sanchez, Kennedy, and Mulhall after Plaintiff's arrest and confinement at the 71st Precinct; and (ii) excessive force by Defendants Sanchez, Hodge, and Steward in connection with the blood draw. (*See* Mem. & Order, Dkt. No. 43; Order dated Jul. 9, 2025.)

These claims of deliberate indifference to his serious medical needs and of excessive force are brought pursuant to Section 1983 of the Civil Rights Act of 1871, codified at 42 U.S.C. § 1983, which allows individuals to sue and obtain monetary damages from state and local government officials for violations of federal constitutional rights. *See* 42 U.S.C. § 1983. Section 1983 "'is not itself a source of substantive rights,'" but "merely provides 'a method for vindicating federal rights elsewhere conferred'" by federal law. *Patterson v. Cnty. of Oneida, New York*, 375 F.3d

206, 225 (2d Cir. 2004) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  A § 1983 claim has two essential elements: (i) the defendant acted under color of state law; and (ii) as a result of the defendant's actions, the plaintiff suffered a denial of their federal statutory or constitutional rights.  *See, e.g.*, *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998).

Here, there is no dispute that Defendants acted under color of state law when engaged in the conduct alleged.  Defendants do dispute, however, whether each individual Defendants' conduct, as alleged, deprived Plaintiff of his constitutional rights.  Defendants further argue that they are entitled to qualified immunity. (*See* Mot., Dkt. No. 109.)  For the reasons discussed below, Defendants' motion to dismiss is granted except as to Plaintiff's allegation of excessive force by Detective        Sanchez        in        attempting        to        draw        Plaintiff's        blood.

### I.    Plaintiff's Claim of Deliberate Indifference to Serious Medical Needs

The undersigned first considers Plaintiff's claim that he was unable to take his seizure medication, and that Defendants allegedly prevented him from going to the hospital.  As detailed below, the question of whether these allegations would violate Plaintiff's constitutional rights ultimately turns on whether each Defendant denied plaintiff care in a way that exhibited deliberate indifference to Plaintiff's serious medical needs.

### A.    Personal Involvement of Each Defendant

Plaintiff alleges that Defendants Sanchez, Mulhall, and Kennedy collectively denied EMS workers' recommendation that he be taken to the hospital after he lost consciousness when he was unable to take his seizure medication.  (*See* 2d Am. Comp. p. 3.)  He describes how "Sanchez, Mulhall, and Kennedy were standing over [him] hassling him with questions" when he awoke and says that all three of these Defendants told EMS workers they did not want to delay line ups to take Plaintiff to the hospital.  (*Id.*)  Defendants contend that these allegations are insufficient in

that they fail to "differentiat[e] the specific conduct" of Defendants Sanchez, Mulhall, and Kennedy.  (Mot. pp. 10–11, 15–16.)

The undersigned must consider the personal involvement of each defendant, as alleged by the Plaintiff.  To plausibly bring a claim against an individual defendant under § 1983, a plaintiff must plead facts showing that defendant's personal involvement in the allegedly unconstitutional conduct through their own individual acts.  *Green v. Bauvi*, 46 F.3d 189 (2d Cir. 1995); *see also Iqbal*, 556 U.S. at 676.  Vicarious liability is not enough to establish liability under § 1983.  *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999).  Rather, "because § 1983 imposes liability only upon those who actually cause a deprivation of rights, 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  *Barratt v. Joie*, 2002 WL 335014, *6 (S.D.N.Y. Mar. 4, 2002) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).

To establish personal involvement, a plaintiff must show that:

> "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation . . . , failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring."

*Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013).  "Direct participation" has been defined as 'personal participation by one who has knowledge of the facts that rendered the conduct illegal,' or indirect participation, such as 'ordering or helping others to do the unlawful acts.'"  *Nardoni v. City of New York*, 331 F. Supp. 3d 116, 122–23 (S.D.N.Y. 2018) (quoting *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001)).

Here, Defendants maintain that Plaintiff's Second Amended Complaint "relie[d] entirely

on impermissible group pleading and fail[ed] to specify which defendant or defendants were involved." (*Id.* p. 11, 16) (quoting *Johnson v. City of New York*, 15-CV-8195, 2017 WL 2312924, at *10 (S.D.N.Y. May 26, 2017).) But the Second Amended Complaint does not rely entirely on group pleading. It sometimes groups the Defendants together when it refers to them as "detectives" or NYPD personnel but does not do so throughout. Moreover, Plaintiff specifies which Defendants were involved in the conduct and how. (*See* 2d Am. Compl. p. 3.) Plaintiff alleges that all three told EMS workers they did not want to delay a lineup by taking Plaintiff to the hospital. (*Id.*) The undersigned finds those allegations are enough to plead these three Defendants' personal involvement at this stage. *See Maldonado v. Town of Greenburgh*, 460 F. Supp. 3d 382, 399 (S.D.N.Y. 2020) (denying motion to dismiss detective for lack of personal participation in indifference to medical needs because, *inter alia*, complaint plausibly alleged defendant was present at the scene after plaintiff became limp and unresponsive); *cf. Green v. Garcia*, 18-CV-174, 2020 WL 1467359, at *5 (S.D.N.Y. Mar. 25, 2020) ("if Plaintiff were to state . . . the names of each person 'who was present . . . , and that these defendants either directly participated . . . or failed to intervene,' such allegations would be sufficient to allege personal involvement") (quoting *Snoussi v. Bivona*, 05-CV-3133, 2010 WL 3924255, at *3 (E.D.N.Y. Feb. 17, 2010)), *report and recommendation adopted by* 2010 WL 3924683 (E.D.N.Y. Sept. 29, 2010).

**B.    Whether Each Defendants' Actions, As Alleged, Constitute Deliberate Indifference to Plaintiff's Serious Medical Needs**

Next, the undersigned must consider whether the allegations against each individual defendant constituted deliberate indifference to Plaintiff's serious medical needs. For the reasons detailed below, the undersigned concludes that they do not.

Claims of deliberate indifference to medical needs are protected by either the guarantee against cruel and unusual punishment in the Eighth Amendment or the Due Process Clause of the

Fourteenth Amendment, depending on whether the plaintiff is a pre-trial detainee or serving a criminal sentence. *See, e.g.*, *Benjamin v. Fraser*, 343 F.3d 35, 49–50 (2d Cir. 2003), (citing *Bell v. Wolfish*, 441 U.S. 520, 536 (1979), *overruled on other grounds by Caiozzo v. Koreman*, 581 F.3d 63 (2d Cir. 2009)). Because the conduct at issue here occurred when Plaintiff was detained pending arraignment and trial, his claims fall within the Due Process Clause of the Fourteenth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) ("A pretrial detainee's claims are evaluated under the Due Process Clause because, '[p]retrial detainees have not been convicted of a crime and thus may not be punished in any manner—neither cruelly and unusually nor otherwise.'") (quoting *Iqbal v. Hasty*, 490 F.3d 143, 168 (2d Cir. 2007)). Although the source of a pretrial detainee's constitutional protection may be different, "[a] detainee's rights are 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'" *Darnell*, 849 F.3d at 29 (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244, (1983)).

To sufficiently state a claim of deliberate indifference to medical needs under the Fourteenth Amendment, a plaintiff must prove two overall elements: (i) an objective element that the plaintiff had a serious medical need; and (ii) a subjective element that the defendants acted with deliberate indifference to that need. *See, e.g.*, *Charles v. Orange County*, 925 F.3d 73, 86 (2d Cir. 2019). To prove the objective element, a plaintiff must establish that (1) they were deprived of medical care and (2) that their medical need was sufficiently serious. *See id.*

### 1.    Objective Component

#### a.    Denial of Care

Plaintiff's Second Amended Complaint asserts that because Plaintiff was not able to take medication after he was arrested and placed in a holding cell, he suffered a seizure. (2d Am. Compl. p. 2.) He further asserts that when he regained consciousness, Defendants Sanchez,

Mulhall, and Kennedy refused EMS workers' recommendation to take him to a hospital because they did not want to delay line-ups for possible identification by victims of the assaults.  (*Id.*) These allegations plainly establish the first aspect of the objective element:  a denial of care.

Defendants counter that they provided reasonable care by summoning EMS workers to evaluate Plaintiff when he regained consciousness and by allowing Plaintiff to call his mother to request his medication.  (*See* Mot. pp. 6–7.)  However, none of these allegations are present in the Second Amended Complaint, which only describes how EMS workers were standing over Plaintiff when he awoke.  (2d Am. Compl. p. 2.)  Defendants assert that the Court should consider additional allegations that, they contend, Plaintiff included in his prior filings but not his Second Amended Complaint.  (*See* Mot. p. 7.)  Defendants also note some of these are referenced in the Court's Order denying Plaintiff's First Amended Complaint.  (*See* Mem. & Order, Dkt. No. 43, p. 2. (citing 1st Am. Compl. pp. 3–4).)

The Court can rely on allegations contained in prior complaints in limited circumstances. *See supra* pp.8–9.  However, even if the undersigned were to consider Plaintiff's prior allegations in assessing the present complaint, nowhere in Plaintiff's original or First Amended Complaint does he say that any of Defendants *summoned* EMS personnel to aid Plaintiff.  The original Complaint does not include any allegations about the events that occurred at the 71st Precinct after Plaintiff's initial arrest.  Like the Second Amended Complaint, the First Amended Complaint only describes how "EMS personnel and several officers were standing over [Plaintiff]" when he awoke.  (1st Am. Compl. p. 1.)  Because no allegations in any of Plaintiff's pleadings support Defendants' argument that they summoned medical care, that argument cannot prevail at the motion to dismiss stage.  *See, e.g.*, *N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp.*, 709 F.3d 109, 121 n.5 (2d Cir. 2013) ("[E]ven crediting the Defendants-Appellants' explanations,

14

the [plaintiff's] inference of liability remains reasonable.").

The First Amended Complaint does recount how Plaintiff asked and was allowed by an officer to call his mother to request his medication.  (1st Am. Compl. p. 1.)  That allegation is absent from the Second Amended Complaint.  Again, even if it were appropriately considered, at this stage the undersigned must construe those facts in Plaintiff's favor.  *See supra* p. 8 (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)).  Doing so still compels a finding of a denial of medical care.  Even if the undersigned assumed that Plaintiff was allowed to call his mother to request his medication, there are no facts to establish he was able to obtain that medication.  (Mem. & Order, Dkt. No. 43, pp. 2–3.)   And even if Plaintiff was permitted to obtain and take his medication, there is still a question of whether a subsequent medical need arose when Plaintiff lost consciousness and was allegedly denied the ability to go to the hospital.  On that final fact, the Second Amended Complaint clearly alleges that each defendant prevented him from doing so.  Thus, the undersigned finds that Plaintiff's allegations, if true, sufficiently establish that all three Defendants deprived Plaintiff of medical care.

### b.      Sufficiently Serious Medical Need

The undersigned next considers the question of whether Plaintiff was experiencing a sufficiently serious need for care when Defendants allegedly denied him that care.  A serious medical need arises when there is "a condition of urgency such as one that may produce death, degeneration, or extreme pain."  *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996); *see also Acevedo v. City of New York*, 24-CV-558, 2025 WL 2802764 (S.D.N.Y. Oct. 1, 2025) (decision to discharge plaintiff with excruciatingly painful gunshot wound to foot after giving him cane, orthopedic shoe, and instructions to take over-the-counter medication constituted sufficiently serious deprivation of medical care).  Courts in this Circuit consider factors such as whether a reasonable doctor or patient would find the injury important and worthy of treatment, whether the

medical condition significantly affects an individual's daily activities, and whether the illness or injury inflicts chronic and substantial pain. *See, e.g.*, *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

In the Second Amended Complaint, Plaintiff alleges that as a result of missing his medication to treat his "mild seizure disorder," he "passed out, . . . woke up traumatized, dizzy; and . . . spitting saliva all over the place." (2d Am. Compl. p. 2; *see also* Pl. Opp. p. 5.) Other than the loss of consciousness, confusion, dizziness, and spitting Plaintiff describes, the Second Amended Complaint includes no allegations about any risk of permanent or on-going future harm to Plaintiff that could result from missing his medication. Even assuming Plaintiff could have experienced additional seizures or other consequences as a result of missing his medication, Plaintiff himself describes his seizure disorder as "mild[,]" suggesting a more limited risk. (2d Am. Compl. p. 2.) These allegations are insufficient to establish a sufficiently serious deprivation of medical care. *See, e.g.*, *Smith v. Carpenter*, 316 F.3d 178, 188–89 (2d Cir. 2003) (finding no constitutional violation when plaintiff missed two doses of HIV medication but failed to present evidence or risk of permanent, on-going harm or future harm); *Youngblood v. Artus*, 10-CV-752, 2011 WL 6337774, at *7 (N.D.N.Y. Dec. 19, 2011) (granting motion to dismiss deliberate indifference claim for defendant's alleged failure to give plaintiff single dose of seizure medication and plaintiff did not specify resulting harm caused). Accordingly, the undersigned finds that Plaintiff's allegations cannot establish the objective component of a claim for his claim based in the alleged denial of care.

### 3. Subjective Component

Finally, the undersigned must consider the subjective component of the claim—whether Plaintiff alleged that the Defendants acted with deliberate indifference to his serious medical need

16

when they denied him care. This subjective element requires that "the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006); *see also Charles v. Orange Cnty..*, 925 F.3d 73, 87 (2d Cir. 2019) ("A plaintiff can prove deliberate indifference by showing that the defendant official 'recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to [the plaintiff's] health or safety.'") (quoting *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017)). "If a defendant consciously chose to disregard a nurse or doctor's directions in the face of medical risks, then he may well have exhibited the necessary deliberate indifference." *Johnson v. Wright*, 234 F. Supp. 2d 352, 361 (S.D.N.Y. 2002) (quoting *Zentmyer v. Kendall Cnty., Ill.*, 220 F.3d 805, 812 (7th Cir. 2000)). But this subjective standard still requires that the state official be subjectively aware of a serious, substantial or excessive risk. *Id.*

Here, even though Plaintiff alleges that Defendants Sanchez, Mulhall, and Kennedy denied him care, he does not plausibly allege that the Defendants acted with the requisite unreasonableness because any medical risk to Plaintiff was low. As described above, there was no excessive risk to Plaintiff for allegedly missing one dose of medication to treat a mild seizure disorder.

In sum, as the allegations in Plaintiff's Second Amended Complaint do not establish either prong of a constitutional violation related to a denial of care, the undersigned recommends that this claim be dismissed against Defendants Sanchez, Mulhall and Kennedy.

## II.    Excessive Force During the Court-Ordered Blood Draw

The undersigned now evaluates Plaintiff's claim of excessive force against Defendants

Sanchez, Hodge, and Steward in relation to the court-ordered blood draw.[3]  Before addressing the substance of these allegations, the undersigned notes they include claims against Defendants Hodge and Steward, who have not appeared in this action and have not sought dismissal.  *See supra* p. 6 n.2.  Despite this, "'where, as here, a motion to dismiss has been made by some but not all defendants, the Court can (and arguably should, so as to prevent piecemeal adjudication) consider the viability of the plaintiff's remaining claims as well, including those asserted against unserved named defendants.'"  *Cruz v. Hastings*, 20-CV-4392, 2022 WL 1050795, at *7 n.10 (S.D.N.Y. Jan. 31, 2022)); *see also Williams v. Novoa*, 19-CV-11545, 2022 WL 161479, at *10–13 (S.D.N.Y. Jan. 18, 2022) (considering viability of claims against unserved defendants on a motion to dismiss made by served defendants "[i]n the interest of judicial economy").  Accordingly, the undersigned finds it appropriate to evaluate Plaintiff's allegations regarding excessive force as to moving Defendant Sanchez and non-appearing Defendants Hodge and Steward.

For the reasons set forth below, the undersigned recommends that Defendant Sanchez's motion be denied as to this claim and that Plaintiff's excessive force claim also proceed against Defendants Sanchez, as well as Defendants Hodge and Steward, should they appear in this action.

## A.    Personal Involvement of the Individual Defendants

The undersigned first addresses whether Plaintiff adequately alleges personal participation by Defendants Sanchez, Hodge, and Steward.  *See supra* pp. 10–12.  Focusing on the allegations

---

[3]  Defendants argue that Plaintiff's excessive force claims against Kennedy and Mulhall should be dismissed because they did not participate in, direct, or supervise the blood draw procedure.  (*See* Mot. pp. 15–16.)  Even if the Second Amended Complaint could be construed to allege excessive force claims against these Defendants, the Court only allowed Plaintiff's excessive force claim to proceed against Defendants Sanchez, Hodge, and Steward.  (Order dated Jul. 9, 2024.)  Thus, the undersigned finds it need not address potential allegations of excessive force against any other Defendants.

in the Second Amended Complaint, the undersigned finds Plaintiff sufficiently alleged Defendant Sanchez's direct participation by naming him as the one who stuck him with the needle nine times. The allegations in the Second Amended Complaint regarding non-appearing Defendants Hodge and Stewart's participation, if true, are also sufficient to proceed on a claim of excessive force against them. Plaintiff alleges they were both present at the scene of the blood draw and directly participated in the alleged use of excessive force by restraining him. (2d Am. Compl. p. 4.) That is enough. *Cf. Messina v. Mazzeo*, 854 F. Supp. 116, 125–28 (E.D.N.Y. 1994) (denying dismissal and finding facts sufficient to establish personal participation when plaintiff named all law enforcement officers who restrained him during group arrest).

Defendant Sanchez argues that Plaintiff's current allegations stating he was involved in the blood draw contradict facts in Plaintiff's prior pleadings, which described how "a man in plain clothes" was the individual who stuck him in the arm at least nine times because he "could not catch a vein." (*Id.* (quoting 1st Am. Compl. pp. 2–3).) At this stage, however, the Court must focus on the facts as alleged in the Second Amended Complaint. *See supra* pp. 8–9. Any inconsistencies between the Second Amended Complaint and Plaintiff's prior pleadings are not so "blatantly contradictory" to warrant disregard of the most recently pled version of events at the motion to dismiss stage. *See supra* p. 8 (quoting *Colliton v. Cravath, Swaine & Moore LLP*, 08-CV-400, 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008)). Plaintiff did not proactively amend any of his allegations in response to arguments in Defendants' motion to dismiss; the Second Amended Complaint was filed more than a year before. Moreover, if inconsistencies do exist, the proper remedy in the undersigned's view is not wholesale dismissal. Defendants may employ any contradictions to their advantage as prior inconsistent statements on summary judgment or at trial. *See Barris v. Hamilton*, 96–CV–9541, 1999 WL 311813, at *2 (S.D.N.Y. May 17, 1999) ("While

there may be a rare occasion to disregard the contradictory and manipulated allegations of an amended pleading . . . the more usual and benevolent option is to accept the superseded pleadings but allow the factfinder to consider the earlier pleadings as admissions in due course.").  As such, the undersigned finds that Plaintiff adequately establishes personal involvement by Defendants Sanchez, Hodge, and Steward.

### B.    Whether the Conduct, As Alleged, Constitutes Excessive Force

Next, the undersigned considers whether the conduct as alleged in the Second Amended Complaint could constitute excessive force.

Here, because the blood draw occurred after Plaintiff's arraignment but before his conviction, the right to be free from excessive force claim is derived from the Fourteenth Amendment.[4]  *See Lemmo v. McKoy*, 08-CV-4264, 2011 WL 843974, at *4 (E.D.N.Y. Mar. 8, 2011).  ("If excessive force was allegedly used before arraignment, the Fourth Amendment standards govern.  If the alleged violation occurs after arraignment but before conviction, then the Fourteenth Amendment applies.  Allegations of excessive force occurring after conviction are subject to an Eighth Amendment analysis.")

The substantive due process component of the Fourteenth Amendment protects pretrial detainees from unconstitutional conditions of confinement, including use of excessive force. *Darnell*, 849 F.3d at 29.  Determining whether the force used was objectively reasonable "turns on the facts and circumstances of each particular case." *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015).  To establish excessive force, a plaintiff must show that (i) "the use of force is deliberate—i.e., purposeful or knowing"—or reckless; and (ii) that the amount of force used is

---

[4]  Defendants assert that drawing Plaintiff's blood was reasonable under the Fourth Amendment because it was drawn according to a court order supported by probable cause. (*See* Mot. pp. 11–13.)  But the undersigned finds it unnecessary to address any Fourth Amendment arguments because Plaintiff's blood draw occurred after arraignment.

objectively unreasonable under the circumstances.  *Id.*  Factors a court may consider include:

> "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting."

*Id.*

Construing the allegations in the Second Amended Complaint in Plaintiff's favor, stabbing Plaintiff with a needle nine times would be excessive on its face if there was no justification to do so.  *Cf. Sawyer v. New York State Dep't. of Corr. Servs.*, 11-CV-152, 2015 WL 6644112 (W.D.N.Y. June 30, 2015) (finding allegation that prison guard deliberately pricked plaintiff twice with needle sufficient to support Eighth Amendment excessive force claim), *report and recommendation adopted in part, rejected in part sub nom.*, 2015 WL 6641471 (W.D.N.Y. Oct. 28, 2015).  Defendant Sanchez argues that he cannot be liable for excessive force because it is "implausible" that he "would personally conduct a medical procedure reserved for licensed professionals."  (Mot. p. 15.)  Defendant Sanchez also argues that the amount of force used was not objectively unreasonable under the circumstances because Plaintiff actively resisted and refused to comply during the blood draw.  (*See* Mot. p. 14.)  However, the undersigned cannot consider these defenses at the motion to dismiss stage, where it must give deference to Plaintiff's allegations as set forth in the Second Amended Complaint and construe them in Plaintiff's favor.  To that end, the presence of a professional does not make it implausible that Defendant Sanchez might engage in excessive force and the resistance to the blood draw is not supported by the allegations in the Second Amended Complaint.  As such, Plaintiff sufficiently alleges excessive force to allow the claim to proceed to discovery and Defendant Sanchez can renew these arguments on summary judgment or at trial.

The undersigned also finds Plaintiff's allegations against Defendants Hodge and Steward are sufficient to proceed. If true, Plaintiff's allegations that they restrained him with chains, handcuffs, and shackles could constitute excessive force if it was unreasonable to do so, and discovery is needed to test those allegations. *See, e.g.*, *Jumpp v. Simonow*, 20-CV-138, 2020 WL 4059850 (D. Conn. July 20, 2020) (allowing excessive force claim to proceed against officer who allegedly used unreasonable amount of force without legitimate justification).

For these reasons, the undersigned recommends that Defendants Sanchez's motion to dismiss be denied in part as to his claim for excessive force. As such, the undersigned recommends that this one claim against Defendants Sanchez, Hodge, and Steward move forward to discovery on the very narrow inquiry of whether they used excessive force in connection with the blood draw.

## III. Defendants' Qualified Immunity Defense

The undersigned also considers whether the moving Defendants are entitled to qualified immunity at this stage. For the reasons below, the undersigned concludes that they are, except as to the claim for excessive force against Defendant Sanchez.[5]

"Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) (citing *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007)); *see also Hunter v. Bryant*, 502 U.S. 224, 229 (1991) ("The qualified

---

[5] As Defendants Hodge and Steward have not appeared and, thus, have not moved on the basis of qualified immunity, the undersigned does not consider whether they are entitled to qualified immunity. *See Bell v. City of New York*, 13-CV-5317, 2013 WL 6268083, at *3 (E.D.N.Y. Dec. 4, 2013) (declining to address qualified immunity defense against unidentified, non-appearing, nonmoving officers at motion to dismiss stage despite district court's inherent powers).

immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law."). The defendant bears the burden of showing the objective reasonableness of the acts in question. *See Tellier v. Fields*, 280 F.3d 69, 84 (2d Cir. 2000).

"Usually, the defense of qualified immunity cannot support the grant of a [Rule] 12(b)(6) motion for failure to state a claim upon which relief can be granted." *Green v. Maraio*, 722 F.2d 1013, 1018 (2d Cir. 1983); *see also McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) ("'Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground of dismissal'") (quoting *Jacobs v. City of Chicago*, 215 F.3d 758, 775 (7th Cir. 2000)). A defendant presenting a qualified immunity defense on a Rule 12(b)(6) motion "faces a formidable hurdle . . . and is usually not successful." *Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 191–92 (2d Cir. 2006). "The defense will succeed only where entitlement to qualified immunity can be established 'based [solely] on facts appearing on the face of the complaint.'" *Barnett v. Mount Vernon Police Dep't*, 523 F. App'x 811, 813 (2d Cir. 2013) (quoting *McKenna*, 386 F.3d at 436).

As an initial matter, the undersigned finds Defendants Sanchez, Mulhall, and Kennedy would be entitled to qualified immunity as to Plaintiff's claim of deliberate indifference to medical needs because, as explained above, they did not violate Plaintiff's constitutional rights. *See supra* pp. 20–22, *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001) (holding whether officers conduct violated a constitutional right is a "threshold question" in determining entitlement to qualified immunity).

Moving Defendant Sanchez argues he is entitled to qualified immunity as to Plaintiff's excessive force claims because a reasonable law enforcement officer at the time would have believed using restraints to effectuate a court-ordered blood draw against a noncompliant detainee

23

was lawful.  (*See* Mot. p. 19.)  He also reasserts that the blood draw was performed by medical personnel.  (*See id.*)

But the Second Amended Complaint does not claim solely that the use of restraints constituted excessive force.  It also alleges that sticking Plaintiff with a needle nine times such that it broke in his arm.  (*See* 2d Am. Compl. p. 4.)  That could constitute excessive force if it was not necessary to do so.  *See supra* pp. 20–21.  Even if Defendant Sanchez was facilitated a court-ordered blood draw, that does not authorize him to use more force than necessary.  Moreover, as previously discussed, crediting Defendant Sanchez's assertion that he did not perform the blood draw is not an appropriate defense at this stage where the undersigned must accept Plaintiff's allegations as true—that defense may be considered at a later stage of litigation.  *See supra* p. 19.  Accordingly, the undersigned cannot find, at least at this stage, that Defendant Sanchez is entitled to qualified immunity for conduct related to the blood draw.

## CONCLUSION

For the reasons set forth above, the undersigned respectfully recommends Defendants' motion to dismiss be granted in part and denied in part.  The undersigned respectfully recommends that the Court dismiss the Second Amended Complaint against Defendants Mulhall, and Kennedy, and against Defendant Sanchez as it relates to a claim of deliberate indifference to Plaintiff's serious medical needs.  The undersigned respectfully recommends that the Court deny Defendant Sanchez's motion to dismiss as it relates to excessive force during the court-authorized blood draw.

## OBJECTIONS

Any objections to this Report and Recommendation must be filed within 14 days after service.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days).  Counsel for the Defendants are directed to serve this Report

and Recommendation on Plaintiff and file proof of service on the docket sheet. Any requests for an extension of time for filing objections must be directed to Judge Chen.

Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010) (("[A] party [forfeits] appellate review of a decision in a magistrate judge's Report and Recommendation if the party fails to file timely objections designating the particular issue."); *Thomas v. Arn*, 474 U.S. 140, 148–49 (1985) (finding Federal Magistrates Act does not forbid court of appeals from adopting rule conditioning appeal from district court's judgment that adopts magistrate judge's recommendation upon filing of objections to magistrate judge's report identifying those issues on which further review is desired).

**SO ORDERED.**

Dated: Brooklyn, New York
February 12, 2026

/S/ *SETH D. EICHENHOLTZ*
SETH D. EICHENHOLTZ
United States Magistrate Judge
Eastern District of New York