96-CV-1465 (PKC)(SDE)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

TONY HARRISON,

                                        Plaintiff,

-against-

CORRECTION OFFICER HODGE, Shield # 11923, CORRECTION OFFICER STEWARD; DETECTIVE SANCHEZ, 71st Pct.; DETECTIVE SGT. KENNEDY, and DETECTIVE MULHALL,

                                        Defendants.

**DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE SETH EICHENHOLTZ'S FEBRUARY 12, 2026 REPORT AND RECOMMENDATION**

STEVEN BANKS
*Corporation Counsel of the City of New York*
   *Attorney for Defendants Kennedy, Mulhall, and Sanchez*
   *100 Church Street*
   *New York, N.Y. 10007*

   *Of Counsel: John McLaughlin*
   *Tel: (212) 356-2670*
   *Matter No.: 2024-063548*

## TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ..................................................................................................... I

PRELIMINARY STATEMENT ......................................................................................... 1

STANDARD OF REVIEW .................................................................................................. 2

ARGUMENT .......................................................................................................................... 2

    POINT I .......................................................................................................................... 2

        THE R&R ERRED BY CREDITING PLAINTIFF'S CONTRADICTORY ALLEGATIONS REGARDING THE IDENTITY OF THE NEEDLE-WIELDER ................... 2

    POINT II ......................................................................................................................... 5

        THE R&R ERRED IN FINDING THAT PLAINTIFF'S RESISTANCE WAS NOT SUPPORTED BY THE PLEADINGS ....................... 5

    POINT III ....................................................................................................................... 7

        THE FORCE ALLEGED IN THE SAC WAS OBJECTIVELY REASONABLE AS A MATTER OF LAW ................... 7

CONCLUSION .................................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*2002 Lawrence R. Buchalter Alaska Trust v. Philadelphia Fin. Life Assur. Co.*,
  96 F. Supp. 3d 182 (S.D.N.Y. 2015) ............................................................................. 6

*Anthony v. City of New York*,
  339 F.3d 129 (2d Cir. 2003) ...................................................................................... 10

*Ashcroft v. al-Kidd*,
  563 U.S. 731 (2011) ................................................................................................... 11

*Barris v. Hamilton*,
  No. 98 Civ. 5765, 1999 WL 311813 (S.D.N.Y. May 17, 1999) ............................... 6

*Brooks v. 1st Precinct Police Dep't*,
  No. 12-cv-6066, 2014 WL 1875037 (E.D.N.Y. May 9, 2014) ................................. 4

*Callaway v. Travis County*,
  No. A-14-CA-979, 2016 WL 4371943 (W.D. Tex. Aug. 16, 2016) ......................... 9

*Carter v. Huterson*,
  831 F.3d 1104 (8th Cir. 2016) .................................................................................... 8

*Colliton v. Cravath*,
  Swaine & Moore LLP, No. 08 Civ. 400, 2008 WL 4386764 (S.D.N.Y. Sept. 24, 2008) ............ 3

*DiFolco v. MSNBC Cable L.L.C.*,
  622 F.3d 104 (2d Cir. 2010) ........................................................................................ 6

*Dodson v. Shaver*,
  No. 3:12-0262, 2013 WL 3305847 (M.D. Tenn. July 1, 2013) ................................. 9

*Gerhartz v. Richert*,
  779 F.3d 682 (7th Cir. 2015) ..................................................................................... 12

*Global Network Commc'ns, Inc. v. City of New York*,
  458 F.3d 150 (2d Cir. 2006) .................................................................................... 6, 7

*Hamilton v. Brown*,
  630 F.3d 889 (9th Cir. 2011) ...................................................................................... 9

*Hammer v. Gross*,
  884 F.2d 1200 (9th Cir. 1989) ................................................................................... 11

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982) ................................................................................................... 10

*Kisela v. Hughes*,
  584 U.S. 100 (2018) ................................................................................................... 10

*Malley v. Briggs*,
  475 U.S. 335 (1986) ................................................................................................... 12

| **Cases** | **Pages** |
|---|---|

*Nelson v. Smith*,
    618 F. Supp. 1186 (S.D.N.Y. 1985) .................................................................................. 2

*Palm Beach Strategic Income*, LP *v. Salzman*,
    No. 10-cv-495, 2011 WL 1655575 (E.D.N.Y. May 2, 2011) ......................................... 4, 8

*Repinec v. Fincher*,
    No. 2:14-cv-01641, 2016 WL 4059356 (D. Nev. July 27, 2016) ...................................... 10

*Schmerber v. California*,
    384 U.S. 757 (1966) ..................................................................................................... 9, 11

*Streit v. Bushnell*,
    424 F. Supp. 2d 633 (S.D.N.Y. 2006) ................................................................................ 5

*Trump v. Simon & Schuster, Inc.*,
    791 F. Supp. 3d 470 (S.D.N.Y. 2025) ................................................................................ 3

*Wallace v. N.Y.C. Dep't of Corr.*,
    No. 95 Civ. 4404, 1996 WL 586797 (E.D.N.Y. Oct. 9, 1996) ............................................ 3

*Wang v. Delphin-Rittmon*,
    747 F. Supp. 3d 336 (D. Conn. 2024) .............................................................................. 11

*Wood v. Bexar County*,
    147 F.4th 534 (5th Cir. 2025) ............................................................................................ 9

**Statutes**

28 U.S.C. § 636 ........................................................................................................................ 1, 2

**Rules**

Fed. R. Civ. P. 11 ......................................................................................................................... 3
Fed. R. Civ. P. 12 ......................................................................................................................... 8
Fed. R. Civ. P. 72 ...................................................................................................................... 1, 2

# PRELIMINARY STATEMENT

Defendants Kennedy, Mulhall, and Sanchez ("Defendants"), by their attorney, Steven Banks, Corporation Counsel of the City of New York, respectfully submit these objections to the Report and Recommendation ("R&R") of Magistrate Judge Seth D. Eichenholtz, dated February 12, 2026 (ECF No. 111), and request *de novo* review by this Court pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b).

The R&R recommends permitting Plaintiff's excessive force claim against Detective Sanchez to proceed, denying qualified immunity at the pleading stage.. These recommendations should be rejected for three independently sufficient reasons.

***First***, the R&R fails to account for the fact that Plaintiff's Second Amended Complaint ("SAC") directly contradicts his prior sworn pleadings regarding the identity of the person who performed the blood draw. Plaintiff's Amended Complaint ("FAC") explicitly identified a "man in plain clothes"—not Detective Sanchez—as the person who wielded the needle. This Court credited that account in its March 29, 2024 screening Order (ECF No. 43). The SAC's substitution of Sanchez as the needle-wielder is a blatant contradiction that should be rejected under established Second Circuit precedent.

***Second***, the R&R erroneously found that Plaintiff's resistance to the blood draw was "not supported by the allegations in the Second Amended Complaint." (R&R at 7). To the contrary, both the SAC itself and Plaintiff's prior pleadings—which the R&R selectively relied upon in Plaintiff's favor elsewhere—establish that Plaintiff refused to comply with the court-ordered blood draw. This Court expressly found as much in its March 2024 Order.

***Third***, even accepting the SAC's allegations as true, the force described does not constitute excessive force as a matter of law. Plaintiff's own allegations establish that the repeated needle insertions resulted from a medical difficulty—his "snap back veins"—not from any intent

to inflict harm. The restraints employed were standard measures uniformly approved by federal courts for effectuating compulsory blood draws. Furthermore, Detective Sanchez is entitled to qualified immunity because no clearly established law in 1995–1996 prohibited using reasonable restraints or making multiple needle attempts to effectuate a court-ordered blood draw against a non-compliant subject where prior needle attempts failed to draw blood.

## STANDARD OF REVIEW

In evaluating a Magistrate Judge's recommended disposition with respect to a pretrial matter that is dispositive of a claim or defense of a party, a district court shall, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure and the Federal Magistrates Act, 28 U.S.C. 636(b)(1), review the recommendation *de novo*. Rule 72(b)(3) instructs the district judge to "determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." *Id.*; *see also* 28 U.S.C. §636(b)(1)(C); *Nelson v. Smith*, 618 F. Supp. 1186, 1190 (S.D.N.Y. 1985). The district judge's review may be based on the entire record. *See* FED. R. CIV. P. 72(b). Further, Rule 72 states that the "the district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." FED. R. CIV. P. 72(b)(3).

## ARGUMENT

### POINT I

**THE R&R ERRED BY CREDITING PLAINTIFF'S CONTRADICTORY ALLEGATIONS REGARDING THE IDENTITY OF THE NEEDLE-WIELDER**

The R&R's central error is its uncritical acceptance of the SAC's allegation that Detective Sanchez personally "stuck Plaintiff in the right arm nine (9) times" (SAC ¶ 5), without addressing the fact that this allegation directly contradicts Plaintiff's prior sworn pleading. In the

2

FAC, Plaintiff explicitly distinguished between "Detective Hector L. Sanchez . . . *and* a man in plain clothes, who had a needle," and stated that "[t]he man in plain clothes could not catch a vein." (Am. Compl., ECF No. 8, at PDF p. 5) (emphasis added). This Court credited that account in its March 2024 Order, finding that "a 'man in plain clothes' tried nine times to 'catch a vein.'" (ECF No. 43 at 19–20).

The SAC's substitution of Sanchez as the person who wielded the needle is not a clarifying amendment—it is a blatant contradiction of Plaintiff's original account. The FAC's use of the conjunction "and" unmistakably identified two separate individuals: Sanchez (a detective) and the man in plain clothes who held the needle. By now attributing the needle sticks to Sanchez, Plaintiff has done precisely what Second Circuit courts have condemned: "blatantly change[d] his statement of the facts in order to respond to the defendant's motion to dismiss." *Wallace v. N.Y.C. Dep't of Corr.*, No. 95 Civ. 4404, 1996 WL 586797, at *2 (E.D.N.Y. Oct. 9, 1996).

Under the *Wallace* standard, where a "plaintiff blatantly changes his statement of the facts in order to respond to the defendant's motion to dismiss . . . [and] directly contradicts the facts set forth in his original complaint," a court is authorized "to accept the facts described in the original complaint as true." *Id.* This principle has been consistently applied throughout the Second Circuit. *See Colliton v. Cravath, Swaine & Moore LLP*, No. 08 Civ. 400, 2008 WL 4386764, at *7 (S.D.N.Y. Sept. 24, 2008) (contradictory pleadings warrant rejection and may support Rule 11 sanctions); *Trump v. Simon & Schuster, Inc.*, 791 F. Supp. 3d 470 (S.D.N.Y. 2025) ("litigation is not a game, and where . . . a complaint's allegations directly contradict allegations set forth in earlier pleadings, courts may disregard the contradictory allegations in resolving a motion to dismiss").

3

Courts carefully distinguish between "blatant or directly contradictory allegations" and "allegations that can be described as clarifying but inconsistent." *Palm Beach Strategic Income, LP v. Salzman*, No. 10-cv-495, 2011 WL 1655575, at *4 (E.D.N.Y. May 2, 2011); *see also Brooks v. 1st Precinct Police Dep't*, No. 12-cv-6066, 2014 WL 1875037, at *3 (E.D.N.Y. May 9, 2014). Plaintiff's change is not a clarification—it is a wholesale substitution of the identity of the person who performed the complained-of conduct. The FAC could not have been clearer: Sanchez was present, but a different person—"a man in plain clothes"—held the needle. This Court relied on that distinction in screening the complaint. The SAC's reversal should be rejected.

The SAC's revisions are not limited to the identity of the needle-wielder. Plaintiff's original Complaint and FAC both framed the multiple needle sticks as caused by the failure to locate a vein—not as an act of force. The original Complaint stated: "The man in plain clothes could not catch a vein; *so* I was stuck at least nine times." (Compl. at 6) (emphasis added). The FAC repeated the same causal account: "The man in plain clothes could not catch a vein, *so* I was stuck at least nine times; in which the needle popped and broke off in my arm." (Am. Compl., ECF No. 8 at 5) (emphasis added). And Plaintiff's sworn opposition—styled as an affidavit—confirmed the same causal narrative, stating that "Detective Sanchez could not catch Plaintiff's snap back veins, and the needle broke off in plaintiff's right arm." (Opp. at 7).

Thus, in three of Plaintiff's four sworn recitations of the facts—the original Complaint, the FAC, and the opposition affidavit—Plaintiff consistently described the multiple needle sticks as a medical consequence of difficult venous access. The SAC is the sole outlier: it strips out both the identity of the medical professional who performed the blood draw *and* the causal framing that explained why multiple attempts were necessary. This is not a clarifying amendment—it is a strategic reconstruction of the factual narrative designed to manufacture an

4

excessive force claim where none existed. The R&R cited *Streit v. Bushnell*, 424 F. Supp. 2d 633, 640 n.4 (S.D.N.Y. 2006), for the proposition that amended pleadings may "change a statement in an amended pleading to repair a weakness cited by an adversary or by the Court." But the SAC's omission of the causal language is the opposite of repairing a weakness—it is the deliberate removal of an admission that defeats Plaintiff's claim.

This Court should accept the FAC's account as true, consistent with *Wallace* and its progeny, and consistent with the factual recitations in Plaintiff's Opposition, and find that Plaintiff has failed to state an excessive force claim against Sanchez because, on Plaintiff's own original account, a medical professional—not Sanchez—performed the blood draw, and the multiple needle sticks resulted from a medical difficulty, not the application of excessive force.

## POINT II

### THE R&R ERRED IN FINDING THAT PLAINTIFF'S RESISTANCE WAS NOT SUPPORTED BY THE PLEADINGS

The R&R concluded that Defendants' characterization of Plaintiff as having "resisted" or "refused to comply" with the court-ordered blood draw was "not supported by the allegations in the Second Amended Complaint." (R&R at 7). This finding is clearly erroneous and reflects an impermissible asymmetry in the R&R's treatment of Plaintiff's prior pleadings.

This Court has already found—based on Plaintiff's own allegations—that Plaintiff "refused to comply" with the court-ordered blood draw. (ECF No. 43 at 4–5, 19–20). The March 2024 Order recounted that Plaintiff "was informed that he had a court order for blood to be drawn" and that when the blood draw was attempted, Plaintiff resisted such that restraints were necessitated. (*Id.* at 4–5). The SAC itself incorporates these proceedings by reference, and Plaintiff's opposition papers confirmed his non-compliance. (Opp. at 6–7 ("Plaintiff is refusing to have his blood drawn without his lawyer present.")).

5

The R&R's treatment of Plaintiff's prior pleadings is internally inconsistent. The R&R relied on Plaintiff's prior pleadings to supplement the SAC's factual allegations in Plaintiff's favor—consistent with the *Johnson v. Wright* principle of liberal construction of *pro se* pleadings. But the R&R simultaneously refused to credit those same prior pleadings when they established Plaintiff's resistance and non-compliance. This asymmetric treatment is impermissible. *See 2002 Lawrence R. Buchalter Alaska Trust v. Philadelphia Fin. Life Assur. Co.*, 96 F. Supp. 3d 182 (S.D.N.Y. 2015) (courts should not selectively consider portions of prior pleadings); *Barris v. Hamilton*, No. 98 Civ. 5765, 1999 WL 311813 (S.D.N.Y. May 17, 1999) (courts should accept superseded pleadings but "allow the factfinder to consider the earlier pleadings as admissions in due course").

Moreover, the SAC itself supports the finding of resistance. The SAC alleges that Plaintiff was "handcuffed," "pinned down," and had his "arm held" during the blood draw. (SAC ¶¶ 4–5). These allegations are consistent only with a scenario in which, in his own words, "Plaintiff [was] refusing to have his blood drawn without his lawyer present"—compliant subjects do not require handcuffing, pinning, and arm-holding during a routine blood draw. (Opp. at 6–7). The restraints alleged in the SAC are themselves evidence of resistance.

This Court's prior finding—that Plaintiff "refused to comply"—is entitled to significant deference. The SAC incorporates the March 2024 Order by reference, and under the incorporation by reference doctrine, the contents of incorporated documents may be considered on a motion to dismiss. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010); *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006). When the SAC references and relies upon this Court's Order, it incorporates the Order's recitation of facts, including the finding that Plaintiff refused to comply with the blood draw.

6

The R&R's finding that resistance was "not supported" is thus contradicted by: (1) this Court's own prior findings; (2) Plaintiff's prior pleadings; (3) Plaintiff's opposition papers; and (4) the SAC's own allegations of restraints. The Court should reject this finding on *de novo* review.

## POINT III

### THE FORCE ALLEGED IN THE SAC WAS OBJECTIVELY REASONABLE AS A MATTER OF LAW

**A. The Force Alleged in the SAC Was Objectively Reasonable**

Even crediting the SAC's allegations and setting aside the contradictions addressed in Point I, the force described in the operative pleading does not state a constitutional violation. The R&R concluded that "stabbing Plaintiff with a needle nine times would be excessive on its face if there was no justification to do so." (R&R at 7). But the R&R's own framing—"if there was no justification"—reveals the analytical error: Plaintiff's own allegations supply the justification.

As detailed in Point I, *supra*, Plaintiff has consistently framed the repeated needle insertions not as gratuitous violence, but as a direct consequence of the failure to successfully draw blood. The original Complaint stated: "The man in plain clothes could not catch a vein; *so* I was stuck at least nine times." (Compl., ECF No. 1, at PDF p. 6) (emphasis added). The FAC repeated this causal account. (Am. Compl., ECF No. 8, at PDF p. 5 ("The man in plain clothes could not catch a vein, *so* I was stuck at least nine times; in which the needle popped and broke off in my arm." (emphasis added))). And Plaintiff's sworn opposition confirmed that "Detective Sanchez could not catch Plaintiff's snap back veins, and the needle broke off in plaintiff's right arm." (Pl. Opp., ECF No. 110 at 7). In three of Plaintiff's four sworn recitations, including the most recent

7

one, he attributes the multiple needle sticks to a medical difficulty—not to any intent to inflict harm. This is dispositive of the excessive force inquiry.[1]

The R&R characterized the conduct as "stabbing" Plaintiff nine times and concluded this "could constitute excessive force *if it was not necessary* to do so." (R&R at 7) (emphasis added). But Plaintiff's own account answers the "necessity" question: the repeated attempts were necessary *because the objective of the court-ordered blood draw had not yet been achieved*. When force is directed at accomplishing a lawful objective—here, executing a valid court order—and repeated applications of that force are required because earlier attempts failed to accomplish the objective, the force is "necessary" by definition. The concept of "more force than necessary" presupposes that the objective could have been achieved with less force. Where Plaintiff himself concedes that the phlebotomist "could not catch" his veins, each successive attempt was a continuation of the effort to achieve the lawful objective, not an escalation of force beyond what was needed.

This is analogous to the principle recognized in *Carter v. Huterson*, 831 F.3d 1104, 1109–10 (8th Cir. 2016), where the Eighth Circuit affirmed dismissal because plaintiff's injuries "resulted from his resistance to the Defendants' efforts to obtain a blood sample." Here, Plaintiff's own allegations demonstrate that whatever discomfort he experienced resulted from the medical

---

[1] The proposition cited in *Palm Beach Strategic Income, LP v. Salzman*, No. 10-CV-61, 2011 WL 1655575, at *6 (E.D.N.Y. May 2, 2011) that "in a typical case, a prior inconsistent pleading should not trump the Court's obligation under Rule 12(b)(6) to accept a complaint's allegations as true" is inapposite on this point. *Palm Beach* addresses the situation in which a court is asked to credit *earlier* pleadings over the *current* operative complaint. Here, Plaintiff's most recent sworn statement—his opposition affidavit—is not a "prior inconsistent pleading" but a *subsequent* sworn statement that *confirms* the causation account in the prior pleadings and contradicts the SAC's implicit framing. The operative complaint is bracketed on both sides by consistent sworn statements describing the needle sticks as caused by the inability to locate a vein.

8

difficulty of locating his veins—a difficulty he himself identifies—not from any use of force exceeding what was needed to execute the court's order.

Moreover, the allegation that the "needle broke off" is itself evidence of a medical complication, not punitive conduct. Needles break during blood draws due to patient movement, difficult venous access, or defective equipment—not because the person drawing blood intends to cause harm. No reasonable inference of malicious or sadistic intent can be drawn from a needle breaking during a difficult venipuncture procedure.

The remaining force alleged in the SAC—handcuffing, holding, and pinning—constitutes standard restraint measures that courts have uniformly held to be constitutionally permissible during court-ordered blood draws on non-compliant subjects. *Schmerber v. California*, 384 U.S. 757, 771 (1966), established that blood tests involve "virtually no risk, trauma, or pain" when properly conducted. Federal courts have consistently applied this principle to uphold the use of reasonable restraints during compulsory blood draws. *See Wood v. Bexar County*, 147 F.4th 534 (5th Cir. 2025) (force during warranted blood draw not excessive where officers "did not use greater force than necessary" and detainee "actively resisted"); *Hamilton v. Brown*, 630 F.3d 889, 895 (9th Cir. 2011) (handcuffing and restraining prisoner in chair for forced blood draw did not violate the Eighth Amendment); *Callaway v. Travis County*, No. A-14-CA-979, 2016 WL 4371943 (W.D. Tex. Aug. 16, 2016) (restraint chair as "last resort" for blood draw on persistently refusing subject was "neither excessive nor clearly unreasonable"); *Dodson v. Shaver*, No. 3:12-0262, 2013 WL 3305847 (M.D. Tenn. July 1, 2013) ("such temporary restraint is consistent with the nature of compulsory blood draws").

Cases finding excessive force during blood draws have involved materially different conduct—not standard restraints, but disproportionate methods such as chokeholds and

9

using batons as pry bars. *See Repinec v. Fincher*, No. 2:14-cv-01641, 2016 WL 4059356 (D. Nev. July 27, 2016). The SAC alleges none of these disproportionate methods. The restraints described—handcuffing, holding, and pinning—are precisely the type of standard measures that courts have approved for effectuating compulsory blood draws against resisting subjects.

Taken together, Plaintiff's allegations describe a lawful procedure: a court-ordered blood draw, conducted in a medical setting, in which standard restraints were employed to overcome Plaintiff's non-compliance, and multiple needle insertions were required due to a medical difficulty that Plaintiff himself identifies. These allegations do not state an excessive force claim as a matter of law.

### B. Even if the Allegations State an Excessive Force Claim, Detective Sanchez is Entitled to Qualified Immunity

Even if this Court concludes that the SAC's allegations could state an excessive force claim, Detective Sanchez is independently entitled to qualified immunity because no clearly established law in 1995–1996 would have put a reasonable officer on notice that the conduct alleged violated constitutional standards.

Qualified immunity shields government officials from liability unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine provides that "even where the plaintiff's federal rights and the scope of the official's permissible conduct are clearly established, the qualified immunity defense protects a government actor if it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act." *Anthony v. City of New York*, 339 F.3d 129, 138 (2d Cir. 2003) (quoting *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995)). Specificity "is especially important" in the Fourth Amendment context. *Kisela v. Hughes*, 584 U.S. 100, 104 (2018). To defeat qualified immunity, existing precedent must

10

have "dictated or clearly foreshadowed" that the defendant's actions violated the plaintiff's rights "as defined at the appropriate level of specificity." *Wang v. Delphin-Rittmon*, 747 F. Supp. 3d 336, 355 (D. Conn. 2024) (collecting Second Circuit authority).

The R&R denied qualified immunity by reasoning that "even if Defendant Sanchez was facilitating a court-ordered blood draw, that does not authorize him to use more force than necessary." (R&R at 7). This analysis states the excessive force standard at a level of generality that the Supreme Court has repeatedly held insufficient for qualified immunity purposes. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011) (rejecting reliance on general propositions that excessive force is unlawful). The proper question is whether clearly established law in 1995–1996 prohibited the *specific* conduct alleged: using physical restraints and repeated needle attempts to facilitate a court-ordered blood draw on a non-compliant subject in a medical setting, where prior needle attempts failed to catch a vein. No such authority existed.

To the contrary, *Schmerber v. California*, 384 U.S. 757 (1966), clearly established that court-ordered blood draws are constitutionally permissible. A reasonable officer in 1995–1996, armed with a valid court order and confronted with a subject who refused to comply, would have understood that using standard physical restraints to facilitate the procedure was lawful—and, indeed, that failing to execute the court's order would have been derelict. *See Hammer v. Gross*, 884 F.2d 1200, 1205 (9th Cir. 1989) ("[t]he use of force or physical restraint bears on the reasonableness of the manner in which the blood test was carried out").

Moreover, to the extent the claim is based on the number of needle insertions, no case in 1995–1996 clearly established that multiple attempts to locate a vein during a compulsory blood draw constituted excessive force. To this day, no federal appellate court has so held when the repeated attempts are medically necessitated by difficult venous access—the very circumstance

11

Plaintiff describes. A reasonable officer would not have known that allowing a phlebotomist to make multiple attempts to locate a difficult vein violated constitutional rights. Subsequent legal developments cannot retroactively establish clearly established law for qualified immunity purposes. *See Gerhartz v. Richert*, 779 F.3d 682, 688–89 (7th Cir. 2015) (officers entitled to qualified immunity for blood draw because no clearly established law existed at the time of the incident, even where the Supreme Court later clarified the applicable standard).

The implications of the R&R's analysis underscore its error. As demonstrated in Point III, *supra*, Plaintiff's own allegations establish that the repeated needle insertions occurred because earlier attempts failed to achieve the lawful objective of drawing blood. To sustain an excessive force claim on these facts, this Court would have to hold that when standard methods of executing a court order prove unsuccessful, officers must abandon the effort altogether rather than persist in accomplishing what the court has commanded. No clearly established law has ever imposed such a requirement. To the contrary, a reasonable officer presented with a valid court order would understand that the order must be executed, and that continued efforts to accomplish the court-ordered objective—using the same standard methods—remain lawful so long as those methods are not themselves disproportionate or punitive. A rule requiring officers to cease execution of a court order whenever initial efforts prove difficult would effectively render court orders unenforceable against non-compliant subjects—a result that no authority supports and that would be fundamentally incompatible with the rule of law.

Qualified immunity exists precisely to protect officers who make reasonable judgments under uncertain circumstances. *Malley v. Briggs*, 475 U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"). Detective Sanchez's conduct in facilitating a court-ordered blood draw through standard restraint

measures was neither plainly incompetent nor a knowing violation of the law. The R&R's denial of qualified immunity should be reversed.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court reject the R&R insofar as it recommends denial of defendants' motion to dismiss, and grant defendants' motion to dismiss in its entirety together with such costs, fees and other further relief as the Court deems just and proper.

Dated:    New York, New York
             February 26, 2026

                                  STEVEN BANKS
                                  Corporation Counsel of the City of New York
                                  *Attorney for Defendants Kennedy, Mulhall, and Sanchez*
                                  100 Church Street
                                  New York, New York 10007
                                  (212) 356-2670

                                  By:  /s/ *John McLaughlin*
                                         John McLaughlin
                                         *Assistant Corporation Counsel*
                                         Special Federal Litigation

cc:    **VIA FIRST CLASS MAIL**
        Tony Harrison
        97-A-1299
        Sing Sing Correctional Facility
        354 Hunter Street
        Ossining, NY 10562
        *Plaintiff Pro Se*