UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
TONY HARRISON,

                              Plaintiff,

            - against -

DETECTIVE SANCHEZ, *et al.*,

                              Defendants.
---------------------------------------------------------x

**ORDER ADOPTING REPORT &
RECOMMENDATION IN PART**
96-CV-1465 (PKC) (SDE)

PAMELA K. CHEN, United States District Judge:

On February 12, 2026, the Honorable Seth D. Eichenholtz, Magistrate Judge, issued a Report and Recommendation (the "R&R") on Defendants'[1] Motion to Dismiss Plaintiff's Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (R&R, Dkt. 113.)[2] The R&R recommends that Defendants' Motion to Dismiss be granted in part and denied in part. (*See id.* at 24.) Defendants timely filed objections to the R&R on February 26, 2026. (Defs.' Objs. ("Objs."), Dkt. 114.) Plaintiff, who is incarcerated and proceeding *pro se*, has not objected or responded to Defendants' objections, and the time for doing so has passed.

The Court has reviewed Judge Eichenholtz's thorough and well-reasoned R&R. For the reasons stated below, the Court adopts it in part and declines to adopt it in part. Defendants' Motion to Dismiss, (Dkt. 108), is denied in full.

---

[1] The motion is brought on behalf of the Defendants listed on the docket as Detective Sanchez, Sgt. Kennedy, and Detective Mullhall. (*See* Defs.' Mot. to Dismiss, Dkt. 108, at 2.) The two other Defendants that remain in this case, Correctional Officer Hodge and Correctional Officer Steward, have not appeared. (*See* R&R, Dkt. 113, at 6 n.2 (describing difficulties identifying and serving Defendants Hodge and Steward).)

[2] The R&R is reported online at *Harrison v. Sanchez*, No. 96-CV-1465 (PKC) (SDE), 2026 WL 472555 (E.D.N.Y. Feb. 12, 2026).

**BACKGROUND**

The factual and procedural history of this case are set forth in detail in the R&R. (*See* R&R, Dkt. 113, at 1–6.) The Court incorporates the R&R's discussion and recites only the background necessary for this Order.

This case was initiated in 1996, and Plaintiffs' claims against the majority of Defendants were dismissed in 1997 and 1998 by the then-assigned district judge. (*See* Mem. & Order, Dkt. 17[3]; Mem. & Order, Dkt. 31.) Then, despite the absence of a court order dismissing the remaining Defendants, the Clerk of Court issued a final judgment dismissing the entire case. (J., Dkt. 34.) Plaintiff timely appealed. (Notice of Appeal, Dkt. 35.) In May 1999, the U.S. Court of Appeals for the Second Circuit issued a mandate, noting that the district court's orders had disposed of the claims against only some of the Defendants, and directing the district court to dispose of the claims against the remaining Defendants. (Mandate of U.S.C.A., Dkt. 37.) The case inadvertently remained closed until February 2024, when Plaintiff filed a motion to vacate the Clerk's judgment, (Mot. to Vacate, Dkt. 39), at which point the case was re-assigned to the undersigned, (*see* 2/20/2024 Dkt. Order Reassigning Case).

On March 29, 2024, the Court denied Plaintiff's motion to vacate the judgment and *sua sponte* dismissed Plaintiff's claims against the remaining Defendants, which had never been addressed, pursuant to 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B). (Mem. & Order, Dkt. 43.) However, the Court granted Plaintiff leave to amend his claims alleging inadequate medical treatment, excessive force, and violation of his religious freedom. (*See id.* at 24–25.) Plaintiff filed an amended complaint on June 27, 2024. (SAC, Dkt. 46.) Based on the allegations in that

---

[3] This Memorandum & Order is reported online at *Harrison v. N.Y.C. Dep't of Corr.*, No. 96-CV-1465 (SJ), 1997 WL 218211 (E.D.N.Y. Apr. 21, 1997).

complaint, the Court allowed Plaintiff's claims for inadequate medical treatment and excessive force to proceed. (7/09/2024 Dkt. Order.)

Plaintiff's two remaining claims are both under 42 U.S.C. § 1983 ("Section 1983"), for alleged violations of his constitutional rights in 1995 and 1996 while he was incarcerated pre-trial. (*See* R&R, Dkt. 113, at 1–3.) First, Plaintiff claims that Defendants Sanchez, Mullhall, and Kennedy,[4] all of whom the Court presumes are New York City Police Department ("NYPD") officers,[5] violated his rights under the Fourteenth Amendment by acting with deliberate indifference to his serious medical needs in connection with Plaintiff's arrest in September 1995. (*See id.* at 9–17.) Plaintiff alleges that he was unable to take his seizure medication after his arrest, that he suffered a seizure while in custody, and that Defendants Sanchez, Mullhall, and Kennedy prevented him from being taken to the hospital immediately thereafter. (*See id.*) Second, Plaintiff claims that Defendants Sanchez, Hodge, and Steward[6] violated his rights under the Fourteenth Amendment by using excessive force while administering a court-ordered blood draw in February 1996, while Plaintiff was in pre-trial detention. (*See id.* at 2–3, 17–24.)

---

[4] The Second Amended Complaint does not provide the first names of any of the remaining Defendants. (*See* SAC, Dkt. 46, at ECF 1.) Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[5] (*See* SAC, Dkt. 46, at ECF 1–2 (identifying each of these Defendants' precinct and describing Plaintiff's arrest in Prospect Park in Brooklyn, New York).)

[6] Defendant Hodge has not appeared in this action, and the Corporation Counsel of the City of New York has not yet been able to identify and serve Defendant Steward. (*See* R&R, Dkt. 113, at 5–6 & n.2.)

**LEGAL STANDARD**

## I.    Review of Report & Recommendation

A district court can refer a dispositive pretrial motion to a magistrate judge for an R&R under 28 U.S.C. § 636(b)(1)(B).  Once the R&R is filed and served, the parties have 14 days to object to any of the R&R's proposed findings and recommendations.  *Id.* § 636(b)(1)(C).  If a party objects, the other party has another 14 days to respond to that objection.  Fed. R. Civ. P. 72(b)(2).  The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

When a party properly objects to an R&R, the district court must review the objected-to portions of the R&R *de novo*.  *Id.* § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3).  For portions of the R&R to which no party objects, the Court "need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment; *Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) (summary order); *see also Thomas v. Arn*, 474 U.S. 140, 153 (1985) ("Congress would not have wanted district judges to devote time to reviewing magistrate's reports except to the extent that such review is requested by the parties or otherwise necessitated by Article III of the Constitution.").

## II.    Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,'

but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In addressing the sufficiency of a complaint, courts are required to accept the well-pleaded factual allegations contained in the complaint as true. *See Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 123 (2d Cir. 2010) (citing *Iqbal*, 556 U.S. at 662), *aff'd*, 569 U.S. 108 (2013); *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009) (citing *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009)). Courts also must draw all reasonable inferences in the plaintiff's favor. *See N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 709 F.3d 109, 119–20 (2d Cir. 2013); *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012). However, the Court "need not credit conclusory statements unsupported by assertions of facts or legal conclusions and characterizations presented as factual allegations." *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 404 (S.D.N.Y. 2001) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

*Pro se* complaints are held to less stringent standards than pleadings drafted by attorneys, so the Court reads a plaintiff's *pro se* complaint liberally and interprets it to raise the strongest arguments and claims it suggests. *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (citing *Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009)); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (per curiam) ("This policy of liberally construing *pro se* submissions is driven by the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent

5

forfeiture of important rights because of their lack of legal training.'" (alteration in original) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983))).[7]

## DISCUSSION

### I.    Plaintiff's Deliberate Indifference Medical Treatment Claim

The R&R recommends that the Court dismiss Plaintiff's Fourteenth Amendment inadequate medical treatment claim.  (*See* R&R, Dkt. 113, at 10–17.)  Because no party has objected to this recommendation, the Court reviews it for clear error.  The Court finds no clear error in the R&R's conclusion that Plaintiff sufficiently alleged the personal involvement of Defendants Sanchez, Mullhall, and Kennedy.  (*See id.* at 10–12.)  However, as discussed below, the Court concludes that the R&R erred by finding that Plaintiff has not alleged a sufficiently serious medical need.

#### A.    Legal Standard

As set forth in the R&R, Plaintiff's claim for inadequate medical treatment is based on the Due Process Clause of the Fourteenth Amendment because the events occurred while Plaintiff was detained pending arraignment and trial.  (*See id.* at 13 (citing *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).)[8]  To state a claim for inadequate medical treatment under the Due Process Clause,

---

[7] Additionally, "[o]n a motion to dismiss, the Court may consider allegations that are contained in a *pro se* plaintiff's opposition papers" in addition to the allegations in the complaint. *Kauffman v. N.Y. Presbyterian Hosp.*, 762 F. Supp. 3d 309, 314 n.5 (S.D.N.Y. 2025) (citing *Burgess v. Goord*, No. 98-CV-2077 (SAS), 1999 WL 33458, at *1 n.1 (S.D.N.Y. Jan. 26, 1999) (collecting cases)).

[8] In contrast, deliberate indifference claims by individuals detained post-conviction are governed by the Eighth Amendment's Cruel and Unusual Punishment Clause. *See Darnell*, 849 F.3d at 29.  A pre-trial detainee's rights under the Fourteenth Amendment are "at least as great as the Eighth Amendment protections available to a convicted prisoner," *id.* (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)), if not greater, *see id.* at 35 (explaining that "[a] pretrial detainee may not be punished *at all* under the Fourteenth Amendment," unlike those detained post-conviction (emphasis added)).  While the Court cites cases from the Eighth

6

Plaintiff must establish that Defendants were "deliberately indifferent" to his "serious medical needs." *Charles v. Orange County*, 925 F.3d 73, 85 (2d Cir. 2019) (collecting cases). That requires pleading two elements: that (1) Plaintiff had a sufficiently serious medical need; and (2) "Defendants acted with deliberate indifference" to that need. *See id.* at 86 (citing *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Darnell*, 849 F.3d at 29).

### 1.    Serious Medical Need

For the first element, there is no clear rule delineating when a plaintiff's medical needs are sufficiently "serious." *See Smith v. Carpenter*, 316 F.3d 178, 187 (2d Cir. 2003) ("[I]t is difficult to formulate a precise standard of 'seriousness' that is adequately sensitive (in the sense of capturing those medical conditions properly within the realm of [constitutional] concern) yet appropriately specific (i.e., excluding those conditions that are not)." (citation modified) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997))). Thus, "the relevant 'medical need' can only be identified in relation to the specific factual context of each case," and "the severity of the alleged denial of medical care should be analyzed with regard to all relevant facts and circumstances." *Id.* (citing *Chance v. Armstrong*, 143 F.3d 698, 702–03 (2d Cir. 1998)).

The Second Circuit has stated at times that "[t]he serious medical needs standard contemplates a condition of urgency such as one that may produce death, degeneration, or extreme pain." *Charles*, 925 F.3d at 86 (citing *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)). At other times, however, the Second Circuit has made clear that something less than "extreme pain" or a "degenerative condition" can suffice to meet the legal standard. *See Brock v. Wright*, 315 F.3d 158, 163 (2d Cir. 2003) (vacating district court's grant of summary judgment on Eighth

---

Amendment context throughout this discussion, it does so because those cases set forth a standard that serves as a floor below which the protections of the Fourteenth Amendment should not fall.

Amendment deliberate indifference claim because the district court erroneously required plaintiff to show that his facial scar and keloid[9] caused him "extreme pain" or constituted a degenerative condition, and explaining that "[w]e will no more tolerate prison officials' deliberate indifference to the chronic pain of an inmate than we would a sentence that required the inmate to submit to such pain").

### 2. Mental State Requirement

The second element of a deliberate indifference claim is essentially a "*mens rea*," or mental state, requirement. *Darnell*, 849 F.3d at 29. Under the Fourteenth Amendment, this prong requires a showing "either that the defendant *knew* that failing to provide the complained of medical treatment would pose a substantial risk to [the plaintiff's] health or that the defendant *should have known*" it would pose such a risk. *Charles*, 925 F.3d at 87.[10] Whether a defendant "knew or should have known of the substantial risk of harm . . . is a question of fact." *Id.*

### B. Plaintiff Plausibly States a Claim for Deliberate Indifference

Here, Plaintiff alleges that he has a seizure disorder, he was unable to take his medication on the day of his arrest, he consequently suffered a seizure (or seizures) and lost consciousness while in custody, emergency medical service workers demanded that he be taken to the hospital due to the seizures, and Defendants Sanchez, Mullhall, and Kennedy prevented Plaintiff from being taken to the hospital because they believed that that "process would take all day" and they needed to "conduct several line ups first." (SAC, Dkt. 46, at ECF 2–3.) Plaintiff asserts that he

---

[9] A keloid is a painful "abnormal overgrowth[] of fibrous tissue that, when triggered by a skin injury, typically extend[s] beyond the location of the original wound." *Brock*, 315 F.3d at 161.

[10] In contrast, deliberate indifference claims under the Eighth Amendment require showing that the defendant actually knew of and disregarded the risk. *See Darby v. Greenman*, 14 F.4th 124, 128 (2d Cir. 2021) (contrasting standards under Eighth and Fourteenth Amendments).

was placed in seven line-ups before Defendants allowed emergency medical services to take him to the hospital.  (Pl.'s Opp'n Defs.' Mot. to Dismiss ("Opp'n"), Dkt. 110, at ECF 5.)

Taking these facts as true and construing Plaintiff's claims liberally, the Court concludes that Plaintiff has plausibly alleged that he had a sufficiently serious medical need.[11]  Courts in this Circuit have routinely recognized that a seizure disorder (i.e., epilepsy) is a serious medical condition, and that a denial of care or delay in care for that condition can form the basis for a deliberate indifference claim.  *See, e.g.*, *Williams v. M.C.C. Institution*, No. 97-CV-5352 (LAP), 1999 WL 179604, at *10 (S.D.N.Y. Mar. 31, 1999) ("There can be no question that epilepsy, and in particular an epileptic fit that runs unchecked, is a serious medical condition, even if for a half-hour."), *aff'd sub nom. Williams v. Cohen*, 101 F. App'x 862 (2d Cir. 2004) (summary order); *Boomer v. Lanigan*, No. 00-CV-5540 (DLC), 2001 WL 1646725, at *3 (S.D.N.Y. Dec. 17, 2001) ("*Boomer I*") (denying motion to dismiss deliberate indifference claim and holding that "[e]pilepsy, or an epileptic seizure, is a serious condition" (citing *Williams*, 1999 WL 179604,

---

[11]  In the Court's Memorandum & Order *sua sponte* dismissing Plaintiff's claims under 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B), the Court stated that Plaintiff's allegations in the First Amended Complaint were "insufficient to show that Plaintiff was 'actually deprived of adequate medical care,' or that he suffered any serious or permanent injuries as a result of any action or inaction by police officers." (Mem. & Order, Dkt. 43, at 16 (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006)).)  However, upon review of Plaintiff's Second Amended Complaint, the Court permitted Plaintiff's deliberate indifference claim to proceed.  (*See* 7/09/2024 Dkt. Order.)  The Second Amended Complaint more clearly alleges that Defendants themselves deprived Plaintiff of medical treatment. (*Compare* First Am. Compl. ("FAC"), Dkt. 8, at ECF 3 (alleging only that "the officers" told emergency medical personnel they could not take Plaintiff to the hospital immediately), *with* SAC, Dkt. 46, at ECF 3 (alleging specifically that "detectives Sanchez, Mullhall, and Sgt. Kennedy" told the emergency medical personnel they could not take Plaintiff to the hospital).)  And while the Court stated that Plaintiff had not alleged that he suffered any serious or permanent injuries, (Mem. & Order, Dkt. 43, at 16), the Court did not hold that such actual injuries are *required* to state a deliberate indifference claim; they are simply "highly relevant," *Smith*, 316 F.3d at 187.  The Court also now holds that a seizure itself is an actual and serious injury, *see infra*, and, to the extent the Court's prior Memorandum & Order suggested it was not, that suggestion was in error.

9

at *10)); *Boomer v. Lanigan*, No. 00-CV-5540 (DLC), 2002 WL 31413804, at *7 (S.D.N.Y. Oct. 25, 2002) ("*Boomer II*") (denying summary judgment on deliberate indifference claim and holding that "[i]gnoring requests for medical care made by a prisoner known to be an epileptic may constitute deliberate indifference to serious medical needs"); *Bennet v. Hunter*, No. 9:02-CV-1365 (FJS) (GHL), 2006 WL 1174309, at *3 (N.D.N.Y. May 1, 2006) (explaining that "[d]epending on the precise nature of the disease," a seizure disorder is generally a "serious medical need[]," and holding that plaintiff's seizure disorder established a serious medical need for purposes of deliberate indifference claim on summary judgment); *Thomas v. Tisch*, No. 08-CV-0400 (JFB) (WDW), 2009 WL 701009, at *7 (E.D.N.Y. Mar. 11, 2009) (denying motion to dismiss deliberate indifference claim where plaintiff alleged he was denied access to his medication for epilepsy and diabetes for 20 hours); *Miller v. Winchelle*, No. 9:13-CV-1405 (DNH), 2015 WL 200248, at *4–5 (N.D.N.Y. Jan. 14, 2015) (denying motion to dismiss deliberate indifference claim where plaintiff alleged that defendant "refused to allow plaintiff to see a doctor" for his seizure disorder and "refused to provide him with adequate medications or treatment for his condition," and rejecting defendant's argument that the court could conclude that "plaintiff's seizures do not constitute a 'serious' medical condition" at the motion to dismiss stage); *Tardif v. City of New York*, No. 13-CV-4056 (KMW), 2017 WL 3634612, at *6 (S.D.N.Y. Aug. 23, 2017) (declining to reconsider prior denial of summary judgment on deliberate indifference claim because factual disputes remained over defendants' "decision to not immediately attend to [p]laintiff's seizure," including disputes over "how and when the [defendant] officers responded" to the seizure and "whether [p]laintiff's epilepsy was sufficiently serious as to warrant certain medical care").

10

Plaintiff has also plausibly alleged that Defendants acted with the requisite mental state, because he alleges facts showing that Defendants deliberately ignored the advice of medical personnel.  (*See* SAC, Dkt. 46, at ECF 3 (alleging that emergency medical workers "demanded that Plaintiff be taken to the hospital" but Defendants stated that that "would take all day" and they wanted to "conduct several line ups first").)  These allegations are sufficient to withstand a motion to dismiss.  *Cf. Johnson v. Wright*, 412 F.3d 398, 404–06 (2d Cir. 2005) (vacating summary judgment on Eighth Amendment deliberate indifference claim and explaining that "a deliberate indifference claim can lie where prison officials deliberately ignore the medical recommendations of a prisoner's treating physicians" (citing *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987))).

Defendants' arguments for why the Court should dismiss this claim are unavailing.  First, Defendants argue that Plaintiff was "not actually deprived of adequate medical care, but received appropriate and reasonable care in light of his particular situation."  (Defs.' Mem. Supp. Mot. to Dismiss ("Mem."), Dkt. 109, at 7.)  However, whether the care Plaintiff received was appropriate and reasonable in light of the particular situation is a factual question, and given the extent and nature of Plaintiff's allegations in the Second Amended Complaint, the Court declines to rule on that question based on the pleadings alone.  *See Tardif*, 2017 WL 3634612, at *6 (holding that factual disputes precluded summary judgment where questions remained over the nature of defendants' response to plaintiff's seizure and the seriousness of plaintiff's epilepsy).[12]

―――――――――――――

[12] Additionally, as the R&R correctly points out, Defendants' argument that they provided adequate care relies on facts not directly stated in the operative complaint.  (*Compare* Mem., Dkt. 109, at 7 (arguing that Defendants allowed Plaintiff to call his mother to request his seizure medication, and that Defendants summoned emergency medical technicians during Plaintiff's seizure), *with* R&R, Dkt. 113, at 15 (explaining that the statement that Plaintiff was allowed to call his mother to request his medication was present only in a prior pleading, not the operative Second Amended Complaint, and concluding that even if the Court properly considered Plaintiff's prior pleading, "there are [still] no facts to establish he was able to *obtain* that medication" (emphasis added), *and id.* at 14 (noting that nowhere in any of Plaintiff's pleadings "does he say that any of

Second, Defendants argue that Plaintiff's condition could not have constituted a serious medical need because Plaintiff characterized his seizure disorder as "mild." (Mem., Dkt. 109, at 9; *see also* SAC, Dkt. 46, at ECF 2 (Plaintiff stating that he took seizure medication every morning "because of a mild seizure disorder").)    But that characterization cannot bear the weight Defendants put on it.    It is a question of fact—and expert medical opinion—whether a self-described "mild" seizure disorder could lead, in some instances, to a "serious" medical event. *See Dumel v. Westchester County*, No. 19-CV-2161 (KMK), 2021 WL 738365, at *13 (S.D.N.Y. Feb. 25, 2021) (noting the difficulty of judging the adequacy of medical care or the seriousness of medical risk, "especially at the motion-to-dismiss stage where courts lack the benefit of expert opinion"); *Smith*, 316 F.3d at 188 n.14 (acknowledging that the "seriousness" determination will often be "ill-suited for resolution at the pleading stage and will have to await summary judgment proceedings, at which point a fully developed medical record will inform the court as to the nature of the inmate's condition" (quoting *Gutierrez*, 111 F.3d at 1372 n.7)).    Furthermore, given that the Court must accept Plaintiff's non-conclusory factual allegations, the Court takes into account his statement that he got "real sick" during the event in question—a claim that is, at a minimum, not contradicted by his alleged seizure condition.    (SAC, Dkt. 46, at ECF 2.)

Third, Defendants argue that "[t]he Second Circuit and every district court within it have consistently found that missing a single dose—or even several doses—of medication is not sufficiently serious or actionable." (Mem., Dkt. 109, at 8.)    This mischaracterizes both Plaintiff's claims and the case law.    Plaintiff alleges not just that he suffered a *risk* of harm from missing a dose of his medication, but that he actually *suffered* harm because he experienced one or more

---

Defendants *summoned* [emergency medical] personnel to aid Plaintiff," only that those personnel were standing over him when he awoke from his seizure).)

seizures due to missing a dose of his medication. *See Bilal v. White*, 494 F. App'x 143, 145–46 (2d Cir. 2012) (summary order) (noting that epilepsy is "arguably" a "serious underlying condition[]" for purposes of Eighth Amendment deliberate indifference claim, and contemplating that a "grand mal seizure" during the period of delayed treatment *could have been* a "consequential injurious effect," but affirming grant of summary judgment against plaintiff because, *inter alia*, plaintiff "[did] not claim to have had [a grand mal seizure] during the period of delay" in receiving his epilepsy medication); *see also Smith*, 316 F.3d at 187 (noting that "in most cases, the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm"). And Plaintiff's allegations encompass not just the missed medication, but also Defendants' refusal to allow medical workers to take Plaintiff to the hospital after his seizure. (*See* SAC, Dkt. 46, at ECF 2–3.) Courts in this Circuit have recognized that allegations like these are sufficient to state a claim for deliberate indifference. For example, in *Youngblood v. Artus*, No. 9:10-CV-00752 (MAD) (DR), 2011 WL 6337774 (N.D.N.Y. Dec. 19, 2011), a case cited by Defendants, (*see* Mem., Dkt. 109, at 8), the court found that the plaintiff had failed to allege harm from missing a dose of his seizure medication when the seizure he suffered happened *nearly three months later*. *Youngblood*, 2011 WL 6337774, at *7–8. But, in the very next section, the court found that the defendants' failure to respond to the plaintiff's request for emergency medical care *on the day he suffered the seizure* was sufficient to state a claim for deliberate indifference. *See id.* at *8.

The R&R's recommendation to dismiss Plaintiff's deliberate indifference medical treatment claim hinged on its finding that Plaintiff had not alleged a sufficiently serious medical need. (*See* R&R, Dkt. 113, at 16 (finding Plaintiff's allegations "insufficient to establish a

13

sufficiently serious deprivation of medical care"); *id.* at 17 (concluding as a result that Defendants could not have acted with deliberate indifference because "any medical risk to Plaintiff was low").) Because the Court now finds otherwise upon clear error review, it respectfully declines to adopt the R&R's recommendation with respect to this claim.[13] Defendants' motion to dismiss Plaintiff's deliberate indifference medical treatment claim is therefore denied.

## II.    Plaintiff's Excessive Force Claim

The R&R recommends that Plaintiff's excessive force claim be permitted to proceed. (*See id.* at 17–22.) Defendants object to this recommendation, (*see* Objs., Dkt. 114), and the Court has accordingly reviewed the R&R *de novo.* Upon that *de novo* review, the Court agrees with the R&R's recommendation and adopts it in full.

### A.    Legal Standard

As set forth in the R&R, Plaintiff's excessive force claim also arises under the Fourteenth Amendment. (R&R, Dkt. 113, at 20 (citing *Lemmo v. McKoy*, No. 08-CV-4264 (RJD), 2011 WL 843974, at *4 (E.D.N.Y. Mar. 8, 2011)).) "To establish excessive force, a plaintiff must show that (i) 'the use of force is deliberate—i.e., purposeful or knowing'—or reckless; and (ii) that the amount of force used is objectively unreasonable under the circumstances." (*Id.* at 20–21 (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015)).) Considerations that courts should weigh include, but are not limited to, "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; . . . and whether the plaintiff was actively resisting." *Kingsley*, 576

---

[13] Indeed, as previously discussed, the R&R's conclusion is in line with the Court's own finding when it dismissed Plaintiff's deliberate indifference claim in the First Amended Complaint, in which the Court erroneously suggested that Plaintiff's seizure was not sufficiently serious. *See supra* n.11 (discussing Mem. & Order, Dkt. 43).

U.S. at 397.  Generally, "courts should only grant motions to dismiss on excessive force claims when 'it is because the force used was objectively reasonable as a matter of law.'" *Lewis v. Slaiby*, No. 3:23-CV-0231 (VAB), 2025 WL 821039, at *14 (D. Conn. Mar. 14, 2025) (quoting *Palm v. Brooks*, No. 22-CV-9729 (VB), 2024 WL 1908388, at *5 (S.D.N.Y. May 1, 2024)).

### B.    Plaintiff Plausibly States a Claim for Excessive Force

Defendants first assert that the R&R erred in its treatment of Plaintiff's allegedly inconsistent statements throughout his various filings regarding the alleged facts of his excessive force claim.  (*See* Objs., Dkt. 114, at 2–7.)  But the R&R correctly analyzed whether and how the Court should consider inconsistencies in Plaintiff's pleadings.  (*See* R&R, Dkt. 113, at 8–9 (collecting cases), 19–20.)  The Court agrees with the R&R's conclusion that here, Plaintiff's inconsistent statements "are controvertible, not conclusive, admissions."  (*Id.* at 8 (quoting *Bernadotte v. N.Y. Hosp. Med. Ctr. of Queens*, No. 13-CV-0965 (MKB), 2014 WL 808013, at *5 (E.D.N.Y. Feb. 28, 2014).)  "Defendants may employ any contradictions to their advantage as prior inconsistent statements on summary judgment or at trial," (*id.* at 19), but at the motion to dismiss stage, the Court does not find Plaintiff's inconsistent statements to be determinative, especially in light of Plaintiff's *pro se* status.  And while the cases Defendants cite clearly establish that the Court has the authority to disregard contradictory allegations in the Second Amended Complaint, the Court is "under no obligation" to do so, "given the diverging approaches to dealing with contradictory allegations within this circuit."  *Robles v. Medisys Health Network, Inc.*, No. 19-CV-6651 (ARR) (RML), 2020 WL 3403191, at *5 (E.D.N.Y. June 19, 2020).

Defendants also assert that Plaintiff's excessive force claim fails because the force alleged in the Second Amended Complaint is objectively reasonable as a matter of law.  (Objs., Dkt. 114, at 7–10.)  That is because, Defendants argue, Plaintiff was actively resisting, and multiple needle insertion attempts were necessary to draw blood.  (*Id.*)  But to agree with Defendants' argument,

15

the Court must draw inferences against Plaintiff, which, at this stage, the Court cannot do. Plaintiffs' submissions do not make clear whether he was actively and *physically* resisting the blood draw. Plaintiff's statement about being restrained because he was "refusing to have his blood drawn without his lawyer present," (Opp'n, Dkt. 110, at ECF 6–7), could plausibly mean that he was resisting with all of his physical might, or it could plausibly mean that Plaintiff verbally resisted, i.e., he said that he did not consent to the procedure. (*See* Compl., Dkt. 2, at ECF 6 (describing Plaintiff voicing his objection to the blood draw without an Iman because it was Ramadan and without his lawyer because Plaintiff "did not know what was going on").) Similarly, Plaintiffs' submissions do not make it clear whether it was *necessary* for Defendants to insert the needle into his arm nine times. The Second Amended Complaint could plausibly be interpreted to allege that Defendant Sanchez stuck him with the needle nine times *in order* to draw blood, but it could also plausibly be interpreted to allege that he stuck him with the needle multiple times unnecessarily *after* drawing blood. (*See* SAC, Dkt. 46, at ECF 4 ("[B]y orders of the arresting detec[t]ives Sanchez and Mulhall, a needle was stuck in Plaintiff's [arm] by arresting Sanchez, and blood was drawn, after this same arresting Sanchez stuck Plaintiff in the right arm nine times, a needle was broke off in Plaintiff right arm.")[14] Faced with multiple plausible interpretations, the Court adopts the one most favorable to Plaintiff at this stage of the proceedings. *See N.J. Carpenters Health Fund*, 709 F.3d at 119–20 (reviewing dismissal of complaint under Rule

---

[14] Plaintiffs' prior pleadings are inconsistent and thus do not compel any particular interpretation. (*See* Compl., Dkt. 2, at ECF 6 (alleging that the correctional officers "allowed arresting officer Detective Sanchez and a man in plain clothes who had a needle stick me in right arm as many [times] as he wanted," suggesting a possible infliction of unnecessary pain, while also alleging that "the man in plain clothes could not catch a vein; so I was stuck at least nine times," suggesting that the multiple attempts were intended only to draw blood successfully); FAC, Dkt. 8, at ECF 4 (alleging that Defendants "withdrew blood nine times in the same arm," which could suggest either that they needed nine full samples of blood for testing or, alternatively, that they drew blood more times than necessary).)

12(b)(6) and "drawing all reasonable inferences in favor of the plaintiff" (quoting *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 715 (2d Cir. 2011))); *Graziano*, 689 F.3d at 114 (same (citing *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010))); *Hill*, 657 F.3d at 122 (stating that courts must read a plaintiff's *pro se* complaint liberally and interpret it to raise the strongest arguments and claims it suggests). Thus, reading Plaintiff's allegations to raise the strongest arguments and claims they suggest, the Court understands Plaintiff to claim that he was *not* physically resisting and that he was stuck with the needle more times than necessary to effectuate the blood draw. Thus, the Court cannot conclude that Defendants' actions were objectively reasonable as a matter of law.

### III.   Qualified Immunity

The R&R concludes that Defendants Sanchez, Mulhall, and Kennedy are entitled to qualified immunity on Plaintiff's deliberate indifference claim because the R&R concludes that they did not violate Plaintiff's rights in the first place. (*See* R&R, Dkt. 113, at 23.) Having concluded that Plaintiff does allege a viable claim for deliberate indifference, the Court considers *de novo* whether Defendants are entitled to qualified immunity on this claim. Regarding Plaintiff's second claim, for excessive force, the R&R concludes that Defendants are not entitled to dismissal on the grounds of qualified immunity. (*Id.* at 23–24.) Defendants object to that conclusion. (*See* Objs., Dkt. 114, at 10–13.) The Court finds on *de novo* review that dismissing either of Plaintiff's claims on the grounds of qualified immunity would be premature.

#### A.   Legal Standard

"Officers are entitled to qualified immunity unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Edrei v. Maguire*, 892 F.3d 525, 532 (2d Cir. 2018) (internal quotation marks omitted) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). The

second prong is meant to "ensure[] that the official being sued had fair warning that his or her actions were unlawful," and, "because officers cannot have fair warning of rights that are not yet established," the Court must look to "precedent in existence at the time of the events." *Id.* at 539 (first quoting *Terebesi v. Torreso*, 764 F.3d 217, 230 (2d Cir. 2014); and then citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). The Court does not consider Defendants' actual knowledge or intent, but whether a "reasonable officer[]" would have known that the actions alleged violated the law. *See id.* at 540.

"To find that a right is clearly established, courts generally 'need to identify a case where an officer acting under similar circumstances . . . was held to have violated' the Constitution." *Zorn v. Linton*, 607 U.S. ----, 2026 WL 795469, at *2 (Mar. 23, 2026) (per curiam) (quoting *Escondido v. Emmons*, 586 U.S. 38, 43 (2019) (per curiam)). However, "[p]recedent 'directly on point' is not required for law to be clearly established, and '[i]t is not necessary, of course, that the very action in question has previously been held unlawful.'" *Sabir v. Williams*, 52 F.4th 51, 63 (2d Cir. 2022) (second alteration in original) (internal citations omitted) (first quoting *District of Columbia v. Wesby*, 583 U.S. 48, 64 (2018); and then quoting *Ziglar v. Abbasi*, 582 U.S. 120, 151 (2017)). Rather, the existing law must make the unlawfulness of the officer's conduct "apparent," *Ziglar*, 582 U.S. at 151 (quoting *Anderson*, 483 U.S. at 640), such that the officer "could have 'read' the relevant precedent beforehand and 'know[n]' that it proscribed their specific conduct," *Zorn*, 2026 WL 795469, at *2 (alteration in original) (quoting *City & County of San Francisco v. Sheehan*, 575 U.S. 600, 616 (2015)).

"The Supreme Court has 'repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'" *Sabir*, 52 F.4th at 63 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). "But there is an obvious, if rarely expressed, corollary to that

18

principle: The immunity question cannot be resolved *before* the earliest possible stage, i.e., prior to ascertainment of the truth of the plausible factual allegations on which a finding of qualified immunity is premised." *Id.* (quoting *Chamberlain v. City of White Plains*, 960 F.3d 100, 110 (2d Cir. 2020)).  At the motion to dismiss stage, "[n]ot only must the facts supporting the [qualified immunity] defense appear on the face of the complaint," but "the motion may be granted only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (citation modified).  "Thus, the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *Id.*; *accord Matzell v. Annucci*, 64 F.4th 425, 434 (2d Cir. 2023).  As a result, the Second Circuit has explained, "advancing qualified immunity as grounds for a motion to dismiss is almost always a procedural mismatch." *Sabir*, 52 F.4th at 64 (quoting *Chamberlain*, 960 F.3d at 111).

**B.      Defendants Are Not Entitled to Qualified Immunity at This Stage**

Having found, *supra*, that Plaintiff pleaded facts sufficient to state a claim that Defendants violated his constitutional rights, the Court turns directly to the second prong of the qualified immunity analysis: whether the rights were "clearly established at the time of the challenged conduct." *See Edrei*, 892 F.3d at 532 (citing *al-Kidd*, 563 U.S. at 735).

1.      Deliberate Indifference

First, with respect to Plaintiff's deliberate indifference claim, controlling precedent clearly provided, at the time of the incident at issue here, that inmates have a right to medical observation immediately after they suffer an epileptic seizure, and that failing to provide that medical observation constitutes deliberate indifference.  In *Todaro v. Ward*, 431 F. Supp. 1129 (S.D.N.Y. 1977), *aff'd*, 565 F.2d 48 (2d Cir. 1977), the district court entered judgment in favor of incarcerated plaintiffs on their Section 1983 deliberate indifference claim related to their prison's "sick wing."

*See id.* at 1139–41.  Among those taken to the sick wing were patients who "had epileptic seizures within the previous twenty-four hours." *Id.* at 1139.  Although nurses made twice-daily rounds of the sick wing and corrections officers made rounds every half hour, or every fifteen minutes for patients in need of closer observation, the court concluded that there was a "serious lack of communication and medical observation in [the] sick wing" because patients were not monitored "more or less continuously" and did not have a means by which they could communicate to a medical provider.  *Id.* at 1139–40.  The court explained, specifically regarding the inmates who had suffered seizures, that this failure to provide more continuous medical observation caused "a grave risk that while in [the] sick wing[,] the patient will suffer a subsequent seizure that will go unobserved," which the court held, in light of the defendants' knowledge of this gap in medical observation, "constitutes deliberate indifference." *Id.* at 1140–41.  The Second Circuit affirmed, concluding that "[t]he record le[ft] no doubt" that the prison's practices "were constitutionally infirm."  565 F.2d at 52–53.  The Circuit agreed with the district court that the deliberate indifference claim did not require "wait[ing] until an epileptic chokes to death on her tongue, in the absence of proof that such a catastrophe had actually occurred," because the failure to provide medical monitoring post-seizure "subjected inmates to grave and unnecessary risks."  *Id.* at 51 (internal quotation marks omitted).

The Court concludes that a reasonable officer who had read the Second Circuit's opinion in *Todaro* would have known that it was unlawful not to provide immediate medical observation to an inmate who had just suffered a seizure, which is what Plaintiff alleges here.  Plaintiff therefore had a clearly established right to be free from the risk of serious harm attendant with being denied medical observation/care in the hours immediately following his seizure, and Defendants are not entitled to qualified immunity on his deliberate indifference claim at this stage.

20

*See also Kaminsky v. Rosenblum*, 929 F.2d 922, 926 (2d Cir. 1991) (finding a clearly established right to be free from deliberate indifference to medical needs, and holding that an issue of fact as to whether an inmate's medical provider recommended immediate hospitalization but the prison delayed hospitalizing him precluded summary judgment on qualified immunity); *Archer v. Dutcher*, 733 F.2d 14, 17 (2d Cir. 1984) (reversing grant of summary judgment where, though the inmate eventually received medical attention, there was a question as to whether a prison official's five-hour delay in securing that attention constituted deliberate indifference); *Lowrance v. Coughlin*, 862 F. Supp. 1090, 1098 (S.D.N.Y. 1994) (explaining that "[i]n the Second Circuit, it has been clearly established since 1977 that a prison official's denial of access to medical care or interference with prescribed treatment constitutes cruel and unusual punishment" (citing *Todaro*, 565 F.2d at 52)); *McKenna*, 386 F.3d at 436–38 (denying qualified immunity at the motion to dismiss stage for a claim alleging deliberate indifference with respect to medical treatment).

    2.    Excessive Force

Second, with respect to Plaintiff's excessive force claim, controlling precedent also clearly provided that inmates have a constitutional right to be free from the malicious and sadistic use of force by prison officials.[15]  *See Whitley v. Albers*, 475 U.S. 312, 319 (1986) (explaining that the "unnecessary and wanton infliction of pain" is unconstitutional under the Eighth Amendment); *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) ("When prison officials maliciously and sadistically

---

[15] Although Defendants style the question as whether "clearly established law in 1995–1996 prohibited . . . using physical restraints and repeated needle attempts to facilitate a court-ordered blood draw on a non-compliant subject in a medical setting, where prior needle attempts failed to catch a vein," (Objs., Dkt. 114, at 11), that framing "puts not one but two thumbs on the scale in favor of [D]efendants," *see Edrei*, 892 F.3d at 539.  It "focuses on the officers' professed objective" while "ignoring the degree of force that the officers allegedly used," and assumes that Plaintiff was non-compliant and that prior attempts failed to achieve the blood draw, which, based on the pleadings, is "arguable."  *See id.*

use force to cause harm, contemporary standards of decency always are violated." (citing *Whitley*, 475 U.S. at 327)).

As discussed above, the Court construes Plaintiff's allegations to be that Defendants stuck him with a needle nine times where at least some of those jabs were unnecessary. Taking Plaintiff's allegations as true and construing them in the light most favorable to him, the force alleged was not applied "in a good-faith effort" to comply with the court-ordered blood draw, but instead was applied "maliciously and sadistically to cause harm." *See Hudson*, 503 U.S. at 7. The Court therefore cannot conclude, at the motion to dismiss stage, that Defendants are entitled to qualified immunity on Plaintiff's excessive force claim, because any reasonable officer would have known at the time that inmates have a right to be free from the malicious and sadistic use of force to cause harm.

*    *    *

This case is no exception to the usual rule that "advancing qualified immunity as grounds for a motion to dismiss is almost always a procedural mismatch." *Sabir*, 52 F.4th at 64 (quoting *Chamberlain*, 960 F.3d at 111). While Defendants are not entitled to qualified immunity at this stage, they are, of course, free to "renew their qualified immunity defense upon a motion for summary judgment." *Barnett v. Mt. Vernon Police Dep't*, 523 F. App'x 811, 814 (2d Cir. 2013) (summary order).

22

**CONCLUSION**

For the reasons stated above, Magistrate Judge Seth D. Eichenholtz's Report & Recommendation, (Dkt. 113), is adopted in part and not adopted in part. Defendants' Motion to Dismiss, (Dkt. 108), is denied in its entirety. Plaintiff's claims for deliberate indifference to the need for medical treatment against Defendants Sanchez, Mullhall, and Kennedy and for excessive force against Defendants Sanchez, Hodge, and Steward shall proceed.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: April 7, 2026
Brooklyn, New York